**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02325-CMA-NYW

**RIVERSIDE STORAGE AND RECYCLING CENTER**, a Colorado Limited Liability Corporation;
**CRAIG SHRIVER**, individually;
**KEVIN COX**, individually;
**JOHN HOOD**, individually; and
**KIMBERLY HILLS MOBILE HOME PARK**, a Foreign Limited Liability Company

Plaintiffs,

v.

**CITY OF FEDERAL HEIGHTS**, a Colorado Municipal Corporation;
**KEN EKROSS**, in his individual capacity;
**JACQUELINE HALBURNT**, in her individual capacity; and
**STEVEN DURIAN**, in his individual capacity,

Defendants.

---

### DEFENDANTS' MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT

---

Defendants, the City of Federal Heights, Ken Ekross, Jacqueline Halburnt, and Steven Durian, by and through their respective undersigned counsel, submit their Motion for Summary Judgment.[1]  In support of this Motion, Defendants state as follows:

### JURISDICTIONAL STATEMENT

This Court has jurisdiction over this case due to the federal claim asserted.

---

[1] While not specifically required, the undersigned conferred with Plaintiffs' counsel regarding this Motion and was advised that all parts of it are opposed.

<u>**STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>[2]

In order to present a reasonably coherent factual background, the undisputed material facts are presented chronologically in this section. The facts will also be referenced in subsequent sections as required by CMA Civ. Practice Standard 7.1E. Despite the extensive factual context presented, the undisputed material facts compel summary judgment in favor of Defendants.

***The September 2013 Flooding at the City of Evans***

1.      In September 2013, there was flooding of the City of Evans that caused a lot of damage. [Movant's Appx., p. 2, Ratkai Depo., 10:15-12:8].

2.      The flood was unprecedented in its magnitude for Colorado. [Movant's Appx., p. 4, Shriver Depo. 191:3-14; Movant's Appx., pp. 5-14, 9News Report (Depo. Ex. 4), Movant's Appx., p. 2, Ratkai Depo., 10:15-12:8].

3.      The flooding broke a berm along mobile home parks in Evans. [Movant's Appx., p. 2, Ratkai Depo., 10:15-12:8].

4.      These affected the mobile homes in the parks, which sat in flood-water for at least six days. [Movant's Appx., p. 2, Ratkai Depo., 10:15-12:8].

5.      Destruction in Evans was so extensive that the owner of a relevant mobile home park in Evans passed out upon observing the conditions and was taken to the hospital. [Movant's Appx., pp. 16-17, Cowan Depo., 84:7-86:16].

6.      The flooding also occurred in an area with potential of water contamination

_____

[2] For this Motion only, the Defendants accept Plaintiffs' allegations, which are supported by competent evidence, as opposing to unsupported, conclusory, self-serving allegations, as true. Many of these allegations will be hotly contested at trial.

including open lagoons used to treat sewage as well as oil and gas facilities that [Movant's Appx., p. 422-423, Ratkai Depo., 12:25-16:10]

7. After the flooding subsided somewhat, the City of Evans was able to bring in inspectors to determine the extent of the damage. [Movant's Appx., p. 2, Ratkai Depo., 10:15-12:8].

8. International Code Council (ICC) inspectors surveyed the damage to the mobile homes and determined they were unsafe. [Movant's Appx., pp. 19-20, Ratkai Depo., 18:10-21:5].

9. The ICC inspectors determined that reasonable attempts to repair mobile homes would be futile and therefore the mobile homes should be destroyed and removed. [Movant's Appx., pp. 19-20, Ratkai Depo., 18:10-21:5].

10. Under authority of the Colorado Department of Public Health and Environment (CDPHE), Evans' Building Official, Zach Ratkai, de facto Building Official for Evans, declared mobile homes as Tier 1 debris and a danger to public health. [Movant's Appx., pp. 19-20, Ratkai Depo., 18:10-21:5; Movant's Appx., pp. 21-22, Letter from Ratkai, (Depo. Ex. 63)].

11. Mr. Ratkai declared the homes uninhabitable and unsafe, advising the homes were dangerous and in need of destruction. [Movant's Appx., pp. 19-20, Ratkai Depo., 18:10-21:5; Movant's Appx., pp. 23-24, Letter from Ratkai, (Depo. Ex. 40); Movant's Appx., p. 45, Shriver Depo. 120:19-23].

12. The City of Evans did not contact other jurisdictions about the order, unless requested. [Movant's Appx., p. 47, Ratkai Depo., 32:15-23].

13.     Mr. Ratkai expected anyone moving the homes to know they were unsafe. [Movant's Appx., p. 47, Ratkai Depo., 32:10-14].

14.     During the Spring of 2014, an owner of Eastwood Village Mobile Home Park hired Mr. Shriver and his company, Riverside Storage, to clean up the mobile home park.  [Movant's Appx., p. 49, Cowan Depo. 39:12-14].

15.     During that same time period, an owner of Bella Vista Mobile Home Park allowed Mr. Shriver to take mobile homes from that mobile home park as well. [Movant's Appx., p. 51, Shriver Depo 64:1-20].

16.     Plaintiff, Riverside Storage, is owned and run by Plaintiff, Mr. Shriver. [Movant's Appx., p. 53, Shriver Depo. 9:2-5].

17.     Rather than destroying and disposing of all of the homes that had been designated by the City of Evans, Mr. Shriver destroyed some mobile homes and removed others he believed could be resold.  [Movant's Appx., pp. 57-61, Shriver Depo, 63:19-65:11, 67:9-78:12; Movant's Appx., pp. 62-63 (Depo. Ex. 28)].

18.     The mobile homes Mr. Shriver took to be resold he obtained for free. [Movant's Appx., p. 57, Shriver Depo, 64:12-20.].

19.     Mr. Shriver took the homes and tried to rehabilitate them by various means to take out all damaged and unsafe portions of the homes.  [Movant's Appx., pp. 65-67, Shriver Depo II, 336:8-343:4].

20.     Despite this attempt to make the homes safe for habitation, at least one home was found to still contain dangerous and potentially deadly bacteria when it was placed in another jurisdiction.  [Movant's Appx., pp. 69-71, Shriver Depo II, 358:11-

364:4; Movant's Appx., pp. 72-77 (Depo. Ex. 171)]

21.     Mr. Shriver and his attorney, Mr. Nimtz, believed that the homes were never properly ordered destroyed because the City of Evans did not follow the proper procedure.  [Movant's Appx., p. 82, Nimtz Depo., 20:2-21:20].

22.     Despite this belief, Mr. Nimtz attempted to work with the City Attorney for the City of Evans to get the condemnation and order for destruction lifted.  [Movant's Appx., p. 84, Nimtz Depo, 74:8 -19; Movant's Appx., pp. 85-88, Nimtz Email to Krob (Depo. Ex. 38)].

23.     Mr. Nimtz informed the City of Evans that their order prevented Mr. Shriver from placing the homes in other jurisdictions in the State.  [Movant's Appx., pp. 89-117].

***Homes Being Moved into Federal Heights***

24.     Mr. Shriver moved some of these mobile homes into the City of Federal Heights and applied for some set permits with the City, which were granted.  [Movant's Appx., pp. 119-121, Shriver Depo. 192:23-201:6; Movant's Appx., pp. 122-128 (Depo. Ex. 52); Movant's Appx., pp. 129-139, (Depo. Ex. 53); Movant's Appx., pp. 140-149, (Depo. Ex. 54)]

25.     Mr. Shriver disclosed that the homes had been affected by a flood but did not disclose to the City of Federal Heights their status as Tier 1 debris.  [Movant's Appx., pp. 151-152, Shriver Depo. 72:16-73:9; 209:25-210:19].

26.     On July 24, 2014, the City of Federal Heights wrote a letter to mobile home parks and setters stating that it had come to their attention that certain flood-affected mobile homes were being brought into Federal Heights.  [Movant's Appx., pp.

154-155, 2nd Supplemental Response to Federal Heights Discovery, p. 10; Movant's Appx., pp. 156-157, July 24, 2014 Letter].

27.     The letter made no mention of the City of Evans condemnation order or the homes' Tier 1 debris status.  [Movant's Appx., pp. 156-157, July 24, 2014 Letter (Depo. Ex. 87)]

28.     Furthermore, Federal Heights' Building Inspector, Ken Ekross, inspected homes in July 2014, and while he was informed they were from the City of Evans and affected by flood water, he was not informed of their Tier 1 designation or that they had been ordered to be destroyed by Evans.  [Movant's Appx., pp. 158-159, 2nd Supplemental Response to Federal Heights Discovery, p. 8; Movant's Appx., pp. 151-152, Shriver Depo. 72:16-73:9; 209:25-210:19].

29.     Around August 19th, the City of Federal Heights began discovering the true nature of the City of Evans' homes.  [Movant's Appx., p. 161, Fed. Hts. Depo. 185:25-186:2].

30.     This included learning of letters written by Mr. Ratkai regarding the Tier 1 designation.  [Movant's Appx., p. 163, Fed. Hts. Depo. 165:23-166:9, Movant's Appx., p. 164-165, (Depo. Exs. 41)].

31.     After finding out about the mobile homes having been declared Tier 1 debris by the City of Evans, Mr. Ekross traveled to Evans to discuss the declaration with the City of Evans' Building Official, Zack Ratkai.  [Movant's Appx., pp. 158-159, 2nd Supplemental Response to Federal Heights Discovery, p. 8;  Movant's Appx., p. 167, Deposition of Ken Ekross 13:1 – 16:18].

32.     Mr. Ekross was also tasked with finding out about any potential flood damaged homes in Federal Heights.  [Movant's Appx., pp. 169-170, Fed. Hts. Depo. 123:10-126:14].

33.     Mr. Durian removed State of Colorado mobile home insignias from City of Evans mobile homes after learning the interiors had not been inspected.  [Movant's Appx., pp. 172-173, Deposition of Steven Durian 204:4–208:20.

34.     The set permits that Mr. Shriver applied for were revoked for failure to disclose the condition of the homes, and out of concerns for public health, safety, and welfare.  [Movant's Appx., p. 175, Fed. Hts. Depo. 163:7-16].

35.     These revocations were accomplished with two Notices and Orders for Removal dated September 3, 2014 and September 19, 2014 citing the City's authority under the International Residential Code.  [Movant's Appx., pp. 176-195, (Depo. Exs. 11 and 30)].

36.     As of September 3, 2014, City Manager Jacqueline Halburnt did not see or specifically approve the letters before they went out.  [Movant's Appx., pp. 197-198, Halburnt Depo.60:10-63:11]

37.     The September 3rd Notice was to two mobile home parks in Federal Heights (including Kimberly Hills) stating that the city had learned that the parks contained homes that were contaminated, dangerous, and had toxic flood debris. [Movant's Appx., p. 200, Fed. Hts. Depo. 87:3-88:2].

38.     The September 19 letter was intended to inform individual home owners or setters of their responsibilities.  [Movant's Appx., p. 202, Fed. Hts. Depo. 229:11 –

231:15].

39.     Mr. Shriver received this September 19th Notice and Order for Removal Packet for each of the seven mobile homes that he set.  [Movant's Appx., p. 204, Shriver Depo., 92:22-93:15; Movant's Appx., pp. 177-195, (Depo. Ex. 30)].

40.     After Mr. Shriver chose to leave one home in the City, Mr. Shriver received a municipal citation issued under the International Residential Code (IRC).  [Movant's Appx., pp. 206-207, Shriver Depo., 101:24-102:25; Movant's Appx., pp. 208-214, (Depo. Ex. 34)]

41.     The City cited its authority under the IRC because it believed that the International Property Maintenance Code (IPMC) did not apply since the IPMC only covers changes to structures that were previously within City limits.  [Movant's Appx., pp. 216-217, Fed. Hts. Depo. 209:2-216:11].

42.     Mr. Nimtz challenged the citation. [Movant's Appx., pp. 219-224, Nimtz Depo. 41:1-58:3; Movant's Appx., pp. 225-311, Depo. Ex. 129].

43.     He alleged that the Notice was invalid under the IPMC.  This was despite the IPMC not mentioning manufactured homes or being included as a basis for the citation.  [Movant's Appx., pp. 219-224, Nimtz Depo. 41:1-58:3; Movant's Appx., pp. 225-311, Depo. Ex. 129].

44.     Mr. Shriver was successful in challenging the citation in municipal court for the single home he left in Federal Heights.  [Movant's Appx., pp. 313-314, Shriver Depo. 85:23-86:13].

45.     Mr. Shriver believes he won the municipal court case because the notice

for destruction and removal was a recommendation and not a requirement.  [Movant's Appx., p. 316, Shriver Depo., 255:17-256:7]

***Additional Facts***

46.     Plaintiffs, Mr. Shriver and Riverside Storage, did not own any of the homes that they brought into Federal Heights, but were simply hired to move, set, and refurbish the homes.  [Movant's Appx., p. 318, Shriver Depo., 108:25-109:16; Movant's Appx., p. 320, Fed. Hts. Depo. 97:9-98:9].

47.     Plaintiff, Mr. Shriver, does not have a dealer's license to sell mobile homes, but believes he can rent mobile homes to make income.  [Movant's Appx., pp. 322-323, Shriver Depo., 13:22-14:14].

48.     Plaintiff, Mr. Shriver, sold nine City of Evans mobile homes to Michael Wilson.  [Movant's Appx., p. 325, Shriver Depo., 232:2-12].

49.     Mr. Shriver states he was deprived revenue from the rental properties when he was not allowed to keep the City of Evans' homes in Kimberly Hills Mobile Home Park, which is in the City of Federal Heights.  [Movant's Appx., p. 327, Shriver Depo., 24:11-23].

50.     Despite winning in municipal court, he voluntarily removed the City of Evans' homes from Kimberly Hills and no longer wishes to do business in Federal Heights.  [Movant's Appx., p. 329, Shriver Depo., 26:21-27:7].

51.     Despite having counsel who knew or should have known of the ability to appeal the decision to the Board of Adjustment, Mr. Shriver did not appeal the Notice and Order for Removal.  [Movant's Appx., pp. 331-332, Shriver Depo., 32:13-34:23;

Movant's Appx., p. 334, Nimtz Depo., 52:11-53:10].

52.     Kimberly Hills makes its income off residents paying lot rent on the manufactured homes.  [Movant's Appx., p. 336, Kimberly Hills Depo. 33:1-5].

53.     Kimberly Hills is managed by Kingsley Management Corporation. [Movant's Appx., p. 338, Kimberly Hills Depo., 9:8-14].

54.     Kimberly Hills worked with Mr. Shriver to bring in the condemned homes in an attempt to fill empty lots in the park.  [Movant's Appx., p. 340, Kimberly Hills Depo. 121:6-16].

55.     Plaintiffs also believe that the City of Federal Heights failed to follow the requirements of International Property Maintenance Code by not including language allowing a reasonable time to make repairs or improvements or inform Plaintiffs that they had the right to appeal the notice and order.  [Movant's Appx., pp. 341-343, 2nd Supplemental Response to Federal Heights Discovery, p. 6-7].

56.     Despite having access to an attorney, Kimberly Hills never appealed the Notice and Order for Removal.  [Movant's Appx., pp. 345-346, Kimberly Hills Depo., 84:19-85:16].

57.     Plaintiff, Kimberly Hills, did not own any of the homes that had been removed.  [Movant's Appx., p. 348, Kimberly Hills Depo II, 287:7-9].

58.     Manager for Kimberly Hills, Tonya Weibold, stated that she would be concerned in allowing a home that had been declared destroyed and condemned into Kimberly Hills, but would allow non-condemned homes brought in by Mr. Shriver. [Movant's Appx., pp. 350-353, Kimberly Hills Depo, 112:20-114:5; 87:11-15; 169:25-

171:18].

59.    An employee for Kingsley Management, who is a manager of another mobile home park, and Mrs. Weibold's husband, Jeff Weibold, stated he would agree that evidence of E.Coli and Coliform being present in manufactured homes as evidence of being unsafe.   [Movant's Appx., pp. 355-356, Jeff Weibold Deposition, 27:3-28:2; 178:9-14].[3]

60.    Kimberly Hills was able to rent all open spaces for mobile homes that had not been designated by the City of Evans as Tier 1 debris.   [Movant's Appx., p. 360, Kimberly Hills Depo. 123:24-124:7].

61.    Plaintiffs, Kevin Cox and John Hood, also did not own any of these mobile homes at the times they were put into Federal Heights, but rather loaned nonparty, Michael Wilson, the funds to purchase homes from Mr. Shriver.   [Movant's Appx., pp. 362-365, Cox Depo. 19:4-9, 20:7-15, 30:22-34:13, 156:19-157:5; Movant's Appx., p. 367, Hood Depo. 24:15-22; Movant's Appx., p. 369, Wilson Depo., 33:2-14]]

62.    Mr. Cox and Mr. Hood do not have manufactured home dealer's licenses. [Movant's Appx., pp. 371-372, Cox Depo. 25:11-26:23].

63.    Mr. Cox and Mr. Hood also object to not being given information about the opportunity to appeal and that the City of Federal Heights did not follow its own municipal code.   [Movant's Appx., p. 374, Cox Depo. 98:18 - 99:7; Movant's Appx., p. 376, Hood Depo. 54:12-21].

---

[3] Kimberly Hills account manager, Jeff Bennett thinks that this information should have been disclosed to the City.  [Movant's Appx., p. 358, Bennett Depo., 34:13-25].

64.     Mr. Hood does not dispute the Federal Heights' authority to deny the placement of the homes.  [Movant's Appx., p. 378, Hood Depo., 100:6-13].

65.     Mr. Cox and Mr. Hood understand that as of September 27, 2013, the homes they loaned money to Mr. Wilson to purchase were ordered to be destroyed and removed by the City of Evans.  [Movant's Appx., p. 380, Cox Depo. 180:6-11; Movant's Appx., p. 382, Hood Depo. 46:6-47:6].

66.     Mr. Hood believes that it was unreasonable for the City of Federal Heights to rely on the City of Evans declaration.  [Movant's Appx., p. 384, Hood Depo. 49:12-23].

67.     Mr. Wilson stated that the City of Federal Heights is not preventing the homes from being sold.  [Movant's Appx., p. 386, Wilson Depo. 37:3-15].

68.     The City of Thornton also did not allow a flood-damaged home from being placed within its jurisdiction.  [Movant's Appx., p. 386, Wilson Depo. 37:3-15].

69.     The City and County of Broomfield has also stated that it will not allow homes involved in the City of Evans flooding within its jurisdiction.  [Movant's Appx., p. 206, Shriver Depo., 98:10-99:25; Movant's Appx., pp. 424-441 (Depo. Ex. 32)].

70.     Mr. Wilson did not appeal the removal of the homes, but was granted an extension of time to remove the homes.  [Movant's Appx., p. 388, Wilson Depo. 59:6-61:9; Movant's Appx., p. 389-390, (Depo. Ex. 5)].

71.     Despite this, Mr. Wilson has received offers to purchase all the flood-damaged homes.  [Movant's Appx., p. 392, Wilson Depo. 46:4-7].

72.     It is the State of Colorado Division of Housing's position that some of the

homes may be capable of being rebuilt, but that the placement of the homes is under the ultimate jurisdiction of the local authority. [Movant's Appx., p. 396, Nimtz Depo, 65:10-15; Movant's Appx., pp. 397-402, (Depo. Ex. 50].

73. Plaintiff, Craig Shriver, also attempted to work with the State of Colorado to rehabilitate the homes, but Mr. Shriver has halted that rehabilitation work, and the State of Colorado has not signed off on the rehabilitation. [Movant's Appx., p. 404, Shriver Depo. II, 364:5-16].

74. Mr. Wilson is also attempting to work with the State to get rebuilt City of Evans mobile homes placed in the City of Castle Rock. [Movant's Appx., pp. 406-407, Wilson Depo. 69:23-73:19; Movant's Appx., pp. 408-409, Depo. Ex. 158)]

75. The City of Federal Heights refunded all permit fees that Mr. Shriver paid to move the homes into the City. [Movant's Appx., p. 411, Shriver Depo. II, 367:6-12].

76. The officials of the City of Federal Heights have in the past had cases disputed with the Board of Adjustment, which has the discretion to review building decisions made by City staff. It has reviewed such decisions in the past. [Movant's Appx., pp. 413-415, Fed. Hts. Depo., 71:15-78:2]

77. The Municipal Code of Federal Heights is available online, as is the International Residential Code, and the International Property Maintenance Code. [Movant's Appx., pp. 416-418, Affidavit of Williams].

78. These resources are also available at City Hall upon request. [Movant's Appx., pp. 416-418, Affidavit of Williams].

## PROCEDURAL HISTORY

Plaintiffs filed their lawsuit in State Court and Defendants removed the lawsuit to Federal Court. *See* Notice of Removal, Doc. 1, filed 10/20/2015. Fact discovery proceedings are complete, and a Final Pretrial Conference is scheduled for December 16, 2016.

## LEGAL ARGUMENT

### I.     Standard of Review

"Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." ***Neal v. Lewis***, 414 F.3d 1244, 1247 (10th Cir. 2005); Fed.R.Civ.P. 56. It is not a disfavored shortcut, but rather is an integral part of the rules. ***Celotex Corp. v. Catrett,*** 477 U.S. 317, 327 (1986). Once the moving party shows the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to establish a genuine issue of material fact. ***Vitkus v. Beatrice Co***., 11 F.3d 1535, 1539 (10th Cir. 1993). Vague, conclusory and self-serving statements do not create a genuine issue of material fact. ***Ford v. West***, 222 F.3d 767, 777 (10th Cir. 2000). "Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment." ***Pasternak v. Lear Petroleum Exploration, Inc.,*** 790 F.2d 828, 834 (10th Cir. 1986). In interpreting the evidence and drawing all reasonable inferences in favor of the non-moving party, *see* ***Celotex v. Catrett,*** 477 U.S. 317, 322-23 (1986), the Court need not accept the non-moving party's conclusions of law or application of law to the facts of the case. *See* ***Olpin v. Ideal National Insurance Company,*** 419 F.2d 1250, 1255 (10th Cir. 1969).

II.     **Plaintiffs' Due Process claims fail as a matter of law**

   a.   _Due Process Claims Generally_

In their only claim for relief, Plaintiffs assert Defendants violated their due process rights in violation of the United States Constitution.  It is unclear from their pleading whether they assert a claim for procedural due or substantive due process or both.  Both will be addressed in turn below.

   b.   Procedural Due Process

   _i._  As the claimants in this civil action, Plaintiffs bear the burden of showing by a preponderance of the evidence that their procedural due process rights were violated.  **_McAllilster v. Price,_** 615 F.3d 877, 881 (7th Cir. 2010) ("In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment.")

   _ii._  Plaintiffs must each prove the following elements of their respective procedural due process claim:

   -   The existence of a recognized liberty or property interest, and

   -   Failure to receive the process that is due.  **_Delgado v. Department of Interior,_** 153 F.3d 726, 726 (10th Cir. 1998) (citing **Mathews v. Eldridge,** 424 U.S. 319, 332-35 (1976)).

   a. **Plaintiffs cannot prove they have a recognized property interest because all Plaintiffs lacked a property interest in the set permits.**

"To prevail on either a procedural or substantive due process claim under 42

15

U.S.C. § 1983, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." ***Nichols v. Board of County Com'rs of County La Plata, Colo.***, 506 F.3d 962, 969 (10th Cir. 2007). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." ***Nichols,*** 506 F.3d at 969***.***  Here, the City of Federal Heights took two actions: it issued set permits for manufactured homes, and then it revoked the permits and ordered the homes to be removed.  *See* Undisputed Facts 24 – 45, above. Plaintiffs must prove that one of those two actions gave them a legitimate claim to an entitlement.  Under the Tenth Circuit's case law, they cannot do so.

Under the due process clause, "Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." ***Schanzenbach v. Town of La Barge***, 706 F.3d 1277, 1284 (10th Cir. 2013) (internal citation and quotation marks omitted).  In ***Schanzenbach***, the Town granted a building permit to an individual who wished to place a manufactured home within the Town.  ***Id.*** at 1279.  The permit application included language stating that the permit "may be suspended or revoked if issued in error or on the basis of incorrect information supplied by the applicant." ***Id.***  Two weeks later, the Town issued a letter stating that the applicant's building permit would be revoked solely on the basis that it was the "only singlewide trailer" on the block and it has been the Town's "design from the start" to protect property values of the current homeowners.  ***Id.***  No notice was given to the applicant.  ***Id.***  Given the Town's

discretion and corresponding ability to revoke the permit, the court reasoned that the applicant's "pre-issuance expenditures" did not give rise to a vested right the moment the permit was issued, the Tenth Circuit ruled that the applicant did not have a protected property interest. *Id.* at 1283-85.

In ***Gunkel v. City of Emporia, Kan.***, 835 F.2d 1302, 1304-05 (10th Cir. 1987), the Tenth Circuit ruled that where a state law "does not recognize property rights in building permits which have been issued by mistake or in violation of state law," Plaintiff's do not have a property interest in the permit. This is even the case when state law did not make a difference about whether there was a mutual understanding between the Plaintiff and the City about the nature of the permit's issuance. *Id.* at 1304-05. The Tenth Circuit ruled that state law did not allow a property right and "[t]hus, revocation of the permit without notice or hearing does not amount to a harm for which section 1983 provides a remedy." *Id.* at 1305.

In Colorado, and Federal Heights' specifically, the building code allows for the revocation of a permit "wherever the permit is issued in error or on the basis of incorrect, inaccurate or incomplete information, or in violation of any ordinance or regulation or any of the provisions of [the IRC]." I.R.C. R105.6. There is no exception for whether there was a mutual understanding regarding the factual basis for the permit. Rather, as the information provided by Shriver to the City of Federal Heights about the homes was incomplete, the codes give the City the ability to revoke the permit. Therefore, under state law, there is no property interest in the set permits.

    **b. Plaintiffs cannot prove they have a recognized property interest because Mr. Shriver and Riverside Storage Lack a**

**Protectable Property Interest.**

Here, the City of Federal Heights issued some set permits, under which Mr. Shriver and Mr. Wilson placed homes. *See* Undisputed Facts, 24, 25, and 68, above. But Mr. Shriver did not inform the City that the homes had previously been declared Tier 1 debris, and dangerous and ordered to be destroyed by the City of Evans and the permits were issued on the basis of incomplete information. *See* Undisputed Facts, 24 – 45. Federal Heights revoked the permits that had been issued on the basis that they had been issued based upon incomplete disclosure. *See* Undisputed Facts 36 and 37, above, and Movants' Appx., p9. 177-179 – September 19, 2014 Letter from Federal Heights.

Additionally, the permit here did not confer an entitlement to Plaintiff because Federal Heights officials have discretion to determine whether or not to issue a permit. "In the municipal land use context, moreover, the entitlement analysis presents a question of law and focuses on whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs." *Nichols*, 506 at 970 (10th Cir. 2007) (citations and quotation marks omitted). "A property interest exists if discretion is limited by the procedures in question, that is, whether the procedures, if followed, require a particular outcome. On the other hand, where the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue, no property interest is impacted." *Id.* (citations and quotation marks omitted).

Here, the City of Federal Heights building officials used their discretion to issue and revoke set permits. *See* Undisputed Facts 24 – 45, above. Therefore, in this case,

Mr. Shriver and Riverside Storage cannot prove the set permits were a government benefit that gave them a constitutionally protected property interest.

### c. Mr. Cox and Mr. Hood Lack a Protectable Property Interest

Mr. Cox and Mr. Hood have an even more tenuous claim of a property interest, as they did not own the homes set in Federal Heights nor did they have any set permits.Rather, they only loaned Mr. Wilson money to purchase homes, and Mr. Wilson set the homes in Federal Heights. Defendants have thus far been unable to find any case law or statute in Colorado supporting a proposition that parties have a constitutionally protected property interest in a loan. Therefore, these Plaintiffs cannot meet their burden of proving a property interest here.

### d. Kimberly Hills Lacks a Protectable Property Interest

Like Mr. Shriver and Riverside Storage, Kimberly Hills' only potential property interest is the set permit in the flood homes. However, as stated above, the Federal Heights Officials have discretion regarding whether to issue permits. The City of Federal Heights did not prevent all homes from being set in Kimberly Hills, only certain flood damaged homes that the City of Evans condemned and ordered destroyed. In fact, Kimberly Hills has no more empty spaces in the Park because the City has allowed all other spaces to be filled. [Movant's Appx., p. 420, Kimberly Hills Depo. II, 243:2-13]. Therefore, as the City of Federal Heights Officials used their discretion in denying a permit, and since it was open to discretion, Kimberly Hills cannot prove an entitlement to the permits rising to the level of a property interest.

### e. Plaintiffs Lack Standing to Make Their Claims

Plaintiffs lack standing to assert their claims because the "property" from which their alleged substantive right derives was contraband. *See **Rector v. City and County of Denver,*** 348 F.3d 935, 943-44 (10th Cir. 2003) ("The Fourteenth Amendment, by its terms, does not guarantee due process, it protects against deprivations of life, liberty, or property without due process. Unless a person asserts some basis for contesting a governmental deprivation of life, liberty, or property he is not injured by defective procedures he has no occasion to invoke."). One can have no "property right in that which is not subject to legal possession." ***Helton v. Hunt,*** 330 F.3d 242, 247-48 (4th Cir. 2003). "Procedural due process does not protect every benefit; rather, to have a property interest in a benefit, a person must clearly have more than an abstract need or desire and more than a unilateral expectation of receiving the benefit." ***Culinary Service of Delaware Valley, Inc. v. Borough of Yardley,*** 385 Fed.Appx. 135, 141 (3rd Cir. 2010) (citation omitted). Because Mr. Shriver and his company cannot show they had a genuine property interest in the mobile homes, summary judgment must be granted against them.

Black's Law Dictionary defines contraband as "1. Illegal or prohibited trade; smuggling. 2. Goods that are unlawful to import, export, or possess." *Black's Law Dictionary* 340 (8th Ed. 2004)." Mr. Shriver obtained for free the mobile homes he took from the City of Evans. *See* Undisputed Fact 17, above. The mobile homes had been declared Tier 1 Debris and ordered to be destroyed by the City of Evans. *Movants' Appx.* p. 21-24 – Letter from Evans to Aden Hogan (Depo. Ex. 63); Letter from Evans to Mr. Cowan (Depo. Ex. 40). Plaintiff Kevin Cox testified as follows:

Q. I understand you disagree with the
2 determination made by the City of Evans that all of the
3 homes in Eastwood Village be destroyed. Okay? I
4 understand that. But I'd like you to assume for a
5 moment that the City of Evans is correct. Okay? So
6 each of these mobile homes in Eastwood Village is
7 ordered to be destroyed, and that's what's going to be
8 required. Okay?

9 A. Okay.

10 Q. Wouldn't you agree with me that in that
11 context, the nine mobile homes that you had an interest
12 in were contraband, in the sense that they were goods
13 that were illegal to transfer?

14 A. I would.

*Movants' Appx.* p. X – Depo. Transcript Kevin Cox 188:1-14.

Because the mobile homes were unlawful to export, they are contraband and no due

process right can arise from possession of them. *See **Helton v. Hunt,*** 330 F.3d 242,

247-48 (4th Cir. 2003).

Additionally, the mobile home transactions were in violation of Colorado statute.

In Colorado, manufactured home sales are governed by statute. C.R.S § 34-32-3301,

*et seq.* It is unlawful to engage in the sale of manufactured homes without complying

with the requirements of these statutes, which include requirements applicable to

registration, escrow and bonding, disclosures, and refund protections. § 24-32-3326,

C.R.S. Mr. Shriver does not have a license to sell manufactured homes, but sold nine

mobile homes to Mr. Wilson and attempted to sell others. *See* Undisputed Fact 48,

above. Therefore, Mr. Shriver's actions violated state law and no due process rights

arise from these circumstances.

### f. Even assuming a genuine property interest, Plaintiffs had due process.

Plaintiffs also have the burden of proving that they did not receive the process to which they were entitled. *Delgado*, 153 F.3d at 726. "In determining what process is due, [courts] consider: (1) the private interest the official action will affect; (2) the risk of depriving that interest erroneously through the procedures used, and the value, if any, of further safeguards; and (3) the burden on the government additional procedures would entail." *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 395 Fed. App'x 887, 891-92 (10th Cir. 2010). The Tenth Circuit has recognized "that a municipality has an interest in maintaining its ability to act quickly to bring a halt to construction work that poses a threat to the public or the environment." *Rocky Mountain Rogues* at 893. Given this, post-deprivation procedures can be sufficient under the circumstances. *Id.* (concluding that the post-deprivation procedures available to the [Plaintiff] supplied sufficient process.).

#### i. The Notice Given Was More than Sufficient

As for Plaintiffs' claim that Defendants violated due process by not providing sufficient notice, it is their burden to prove that the notice was insufficient. *Delgado*, 153 F.3d at 726. They allege that since the IPMC requires certain information included in a notice, failure to do so is a due process violation. Fourth Am. Comp. ¶ 63, Doc. 78, filed 10/21/16. Even if Defendants were to accept that the IPMC requirements apply despite the Notice being issued under the IRC, since the provisions of the IPMC and applicable municipal law are readily available, an individualized notice of the appeals process available is not required under the Constitution. *City of West Covina v.*

*Perkins*¸ 525 U.S. 234, 242 (1999). In *City of West Covina*, the Supreme Court reasoned that the requirement to list the available procedures for appeal is only required under the due process clause when "those procedures are arcane and are not set forth in documents accessible to the public." *Id.* The Court continued that there is not "a general rule that notice of remedies and procedures is required" in dealings with municipal governments. *Id*.

A federal court has examined this as it applies to the IPMC in 2015. In *Kennard v. City of Ashland, Kentucky*, the District Court, Eastern District, Kentucky, was presented by a case where a party was evicted from his home, which was later condemned and razed after receiving an Order to Repair or Demolish. 2015 WL 5194090, *1-*2 (E.D.Ken. Sept. 2, 2015). Plaintiff challenged that he did not receive adequate notice of the IPMC's appeals process, violating due process. *Id.* at *4. The Court, relying on the United States Supreme Court's decision in *City of W. Covina v. Perkins*, 525 U.S. 234 (1999), ruled that "[g]iven the widespread access to the provisions of Section 111 of the IPMC" individualized notice of the IPMC's appeal procedures was not required. *Id.* at *5. The Court reasoned that since the notice cited the provisions of the Code violated, copies of the Code are published in book form, the Code is available in libraries or the City building, and that "[t]he provisions of the Code are accessible to all on the internet simply by "googling" "International Property Maintenance Code," the appeals procedures were readily available to Plaintiff for which individualized Notice of the appeals process was not required. *Id.* at *4-*5.

Here, provisions of the IPMC are available to the general public online. *See*

*http://codes.iccsafe.org/app/book/toc/2015/I-Codes/2015_IPMC_HTML/index.html*.  In

fact, Mr. Shriver's attorney found the provisions of the IPMC through general research

and without assistance from Federal Heights *and actually asked Mr. Shriver if Federal*

*Heights had told him about his right to appeal*.  Movants' Appx. p. 220 – Depo.

Transcript Andrew Nimtz 42:4 – 44:8.  The City of Federal Heights website includes a

link to all codes adopted by the City and its complete municipal code is also generally

available through an internet search.  *See* Movants' Appx. Pp. 416-419, Affidavit of Tim

Williams; *http://www.fedheights.org/index.asp?SEC=E0D5E6BC-02A8-4AEF-88A1-*

*9093297C3662&Type=B_BASIC*.  Therefore, even if the IPMC applied in this case, an

individualized notice of the procedures set out by the Code is not sufficient to sustain a

claimed violation of the due process clause.

> ii.     *Each Plaintiff chose to not avail themselves of the available post*
> *deprivation procedures.*

To prove a claim of a violation of due process, Plaintiffs must also prove that the

procedures available to them were not sufficient to protect against erroneous

deprivations of their due process rights.  ***Rocky Mountain Rogues, Inc.***, 395 at 892-94

(10th Cir. 2010).  In Federal Heights, there is a Board of Adjustment in place that has

"the power to hear and decide appeals from the rulings of the administrative official

where it is alleged there is an error in any order, requirements, decision or

determination made by the administrative official in enforcement of" building or zoning

codes.  Fed. Hts. Muni. Code § 70-56 Hearing and Deciding Appeals.  Section 70-51, *et*

*seq.* governs how the Board of Appeals should function.  The applicant should file an

appeal noting the alleged error with the official and the Board, and the official will send

all documents to the Board for the record. *Id.* There is no set time limit for the appeal. *Id.* If the applicant objects to the Board, they are allowed to appeal the ruling "in the manner provided in the rules relating to civil proceedings." Id. at § 70-60 Appeals from the Board. This last step must be done within thirty days. *Id.*

Here, the Plaintiffs did not attempt to appeal the Notice and Order for Removal. Movants Appx. p. 331-332 – Depo. Transcript Craig Shriver 32:13 to 35:6. This is despite that, to this day, they are still allowed under the rules to make such an appeal. There is also no limitation as to who can appeal. While Kimberly Hills, Riverside Storage, Mr. Cox, and Mr. Hood were not personally served the September 19 Notice and Order for Removal (because they did not actually apply for the set permits or own the homes) they had the order, and there is no limit on who can appeal such an order. Therefore, the Plaintiffs have a two-tier appeals process available to them of which they have not availed themselves. Given this, as a matter of law the process available to Plaintiffs was sufficient.

Since Plaintiffs did not have a property right in the set permits and the procedure available to them was adequate, Plaintiffs cannot meet their burden of proving a due process violation.

    a. <u>Substantive Due Process</u>

        i. **None of Defendants' Actions Were Arbitrary and Capricious**

Like procedural due process, Plaintiffs bear the burden of proving a substantive due process claim. "Absent invidious discrimination, the presence of a suspect class, or

infringement of a fundamental interest," Plaintiff must show that "the decision was 'arbitrary and capricious.'" *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1119 (10th Cir. 1991) (internal citations omitted). But "when . . . defendants articulate[] a rational reason for their decision which is related to a legitimate government interest, [courts] will not look beyond it for evidence that the reason was a pretext." *Norton v. Village of Corrales*, 103 F.3d 928, 933 (10th Cir. 1996). Furthermore, claims of violations of substantive due process are limited to actions "which shocks the conscience." *County of Sacremento v. Lewis*, 523 U.S. 833, 846-49. The assertion of a claim of substantive due process is specifically not intended to duplicate tort concepts or supplant state law. *Id.* at 848. It is intended to reach only those examples of government misconduct that fall "at the ends of the tort law's spectrum of culpability." *Id.* Thus, the Constitution does not guarantee due care on the part of officials, but instead, government action must be intended to unjustifiably injure in such a way as to shock the conscious of a reasonable person. *See id.* at 848-49.

Here, it is unclear whether Plaintiffs are alleging substantive due process claims, and if so, their basis. It seems that Plaintiffs, Craig Shriver and Kimberly Hills, base their claims on ongoing animosity between them, Federal Heights, and Ken Ekross. There does not seem to have been any previous or current interactions between Mr. Cox and Mr. Hood and any of the Defendants. Therefore, their claim seems to point to the Notice and Order being arbitrary and capricious, or conscience shocking.

      **ii. Riverside Storage and Shriver Cannot Sustain a Claim of a Violation of their Substantive Due Process Rights**

Craig Shriver and Riverside Storage cite ongoing animosity with Ken Ekross and staff at Federal Heights. Plaintiffs are unable to present a triable issue of arbitrary and capricious conduct by any of the Defendants, nor present a claim that would shock the conscience. Defendants have articulated a rational reason for their decision which is related to the public health, safety, and welfare. *See* Undisputed Facts 30 – 40, above. Additionally, a substantive due process claim would be merely duplicative of the procedural due process claim under these circumstances. Therefore, Mr. Shriver is unable to sustain a substantive due process claim.

### iii. Cox and Hood Cannot Sustain a Claim of a Violation of their Substantive Due Process Rights

As stated above, Cox and Hood have had no interaction with anyone from Federal Heights. Therefore, their only claim would be that the decision to not allow the flood-damaged homes, for which they loaned money, was arbitrary and capricious or conduct that would shock the conscience. Defendants have articulated a rational reason for their decision which is related to the public health, safety, and welfare. *See* Undisputed Facts 30 – 40, above. Additionally, a substantive due process claim would be merely duplicative of the procedural due process claim under these circumstances. Accordingly, Plaintiffs' substantive due process claim must fail.

### iv. Kimberly Hills Cannot Sustain a Claim for a Violation of their Substantive Due Process Rights

Like Craig Shriver and Riverside Storage, Kimberly Hills' claim seems to stem from ongoing disputes with Kimberly Hills and its staff. Plaintiffs present no genuine dispute regarding material facts evidencing arbitrary and capricious conduct or conduct

that would shock the conscience, and Defendants have articulated a rational reason for their decision which is related to public health, safety, and welfare. *See* Undisputed Facts 30 – 40, above. Additionally, a substantive due process claim would be merely duplicative of the procedural due process claim under these circumstances. Accordingly, Plaintiffs' substantive due process claim must fail.

### *iii.* **The individual Defendants are entitled to qualified immunity.**

#### *a. Qualified Immunity Generally*

The doctrine of qualified immunity is broad, shielding "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Harman v. Pollack*, 586 F.3d 1254, 1261 (10th Cir. 2009) ("Qualified immunity leaves 'ample room for mistaken judgments' and 'protects all but the plainly incompetent or those who knowingly violate the law."). When the defense of qualified immunity is raised, plaintiffs bear the burden of satisfying a strict two-part test. *Neal v. Lewis*, 414 F.3d 1244, 1247-48 (10th Cir. 2005).

In order to meet this heavy two-part burden, it is up to Plaintiffs to clearly show: (1) that the individual Defendants' actions violated Plaintiffs' constitutional rights; and (2) that the right was clearly established at the time of the Defendants' conduct. *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). The Supreme Court and Tenth Circuit have emphasized that clearly established law cannot be defined at a high level of generality. *Ashcroft v. al-Kidd¸* 131 S.Ct 2074, 2085 (2011) (finding that defining "clearly established law at a high level of generality" is unavailing). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he

is doing violates that right." ***Anderson v. Creighton***, 483 U.S. 635, 640 (1987). Although the evidence is viewed in the light most favorable to a plaintiff, the failure to satisfy either prong of the two-part inquiry requires qualified immunity be granted. ***Albright v. Rodriguez***, 51 F.3d 1531, 1535 (10th Cir. 1995).

Plaintiffs make one claim against the individual Defendants in this case—a violation of due process under 42 U.S.C. §1983. However, as discussed above, it is unclear whether they allege a procedural or substantive due process violation. Yet, as explained below, Plaintiffs cannot meet the two-part test with respect to either interpretation and, therefore, the individual Defendants are entitled to qualified immunity.

*b. Procedural Due Process*

Plaintiffs' due process claims have been analyzed in detail above. To reiterate, however, Plaintiffs cannot prove they have a property right in this case, and even if they did, they had more than enough process available to them. Because Plaintiffs cannot prove they have a property interest or did not have procedural protections available to them, they cannot meet the first qualified immunity prong.

With respect to the second prong, Plaintiffs bear the burden of showing with particularity that the law was clearly established. "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other Courts shows that the right must be as Plaintiff maintains." ***Dodds***, 614 F.3d at 1206. The Tenth Circuit "uses a sliding scale to determine when the law is clearly established. Under this approach, "[t]he more obviously egregious the

conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to establish a violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (internal quotations omitted). When the case for liability is not obvious, the "clearly established" inquiry is a particularized one that requires a close identification between the act at issue and the body of precedent governing it. *Brosseau v. Haugen*, 543 U.S. 194, 199, 200 (2004). Therefore, this Court should grant the individual Defendants immunity unless existing precedent has placed a statutory or constitutional question "beyond debate". *Kearns v. Bader*, 663 F.3d 1173, 1183 (10th Cir. 2011).

As part of their burden to overcome the defense of qualified immunity, Plaintiffs must make a particularized showing that the law was sufficiently clear that the individual Defendants would know that their conduct was unconstitutional. *Patrick v. Vilar*, 953 F.2d 1240, 1243 (10th Cir. 1992). Here, it can hardly be argued that the law is clear such that every reasonable Federal Heights employee would understand that they were violating Plaintiffs' due process rights. In fact, the law is clear that Plaintiffs did not have a property interest, and the amount of process available to them was sufficient. For example, as explained above, the law in the Tenth Circuit is clear that Plaintiffs did not have a property interest in permits for which an official has discretion. *Schanzenbach v. Town of La Barge*, 706 F.3d 1277, 1284 (10th Cir. 2013). In fact, *Schanzenbach* allowed the revocation of a permit for a mobile home solely on the basis of the home being a single-wide and would reduce property values. *Id.*

Further, in *City of West Covina v. Perkins*, 525 U.S. 234, 242 (1999), the Supreme Court stated that the individualized notice requested by Plaintiffs is not

required when the codes and procedures are generally available.  A court has applied this to the IPMC (under which Plaintiffs are making their claim) as recently as September of 2015.  *Kennard v. City of Ashland, Kentucky*, 2015 WL 5194090, *1-*2 (E.D.Ken. Sept. 2, 2015).  Therefore, Plaintiff cannot prove that any right they claim was clearly established at the time the Notice and Order was issued.

### c.  Substantive Due Process

Similarly, Plaintiffs cannot show that any of the individual Defendants' actions violated their substantive due process rights.  Rather, the law is clear that Defendants did not violate any substantive rights of Plaintiffs because none of the Defendants actions were arbitrary and capricious or conscience shcoking.  Regardless, Plaintiffs cannot point to a case stating that a specific action taken by the individual Defendants was a violation of their constitutional rights.

### d.  Plaintiffs Cannot Establish Any Individual Defendant Violated a Clearly Established Right

#### i.  Ken Ekross

Defendants have been unable to find any case in the Tenth Circuit or Supreme Court that states that issuing a Notice and Order of Removal for homes that had been declared uninhabitable and dangerous by another jurisdiction is unconstitutional. Defendants have also been unable to find any case law that states that it is unconstitutional for a building inspector to enter an unoccupied premises that had been ordered removed (regardless of who asserts the claim).  Therefore, Plaintiffs will be unable to overcome a defense of qualified immunity for Mr. Ekross.

#### ii.  Jacqueline Halburnt

The Defendants have been unable to find any case stating that allowing a subordinate to enter an unoccupied premises that had been ordered removed or issued a Notice and Order for Removal or to allow them to remove insignias is unconstitutional. Therefore, Plaintiffs will be unable to overcome a defense of qualified immunity for Ms. Halburnt.

    i.   <u>Steven Durian</u>

The record shows Mr. Durian acted reasonably and in good faith for his part, which involved sending the July 24, 2014 letter (*see* Undisputed Fact 37) and removing State of Colorado insignias from mobile homes once their true condition was made known (*see* Undisputed Fact 34). Plaintiffs cannot point to any Supreme Court or Tenth Circuit case law that would demonstrate Mr. Durian's actions violated a clearly established constitutional or statutory right belonging to the Plaintiffs under these circumstances. Nor do Plaintiffs present weight of authority from other courts to support their claim. Indeed, the case law addressing alleged due process violations in the context of changes made to the building permit process, discussed *supra,* roundly demonstrate the absence of a clearly established right that Plaintiffs could avail themselves of for purposes of this lawsuit. Accordingly, Mr. Durian must be granted qualified immunity.

## **CONCLUSION**

Therefore, the Defendants respectfully request this Court grant summary judgment in their favor as to all claims, award them reasonable costs and attorneys' fees, and grant such other and further relief as the Court deems appropriate.

Respectfully submitted this 1st day of November, 2016.

s/ J. Andrew Nathan
J. Andrew Nathan
Brenden Desmond
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO  80237-2776
Phone Number: (303) 691-3737
Fax: (303) 757-5106
anathan@ndm-law.com
bdesmond@ndm-law.com
*Attorneys for Federal Heights Defendants*

 /s Patrick A. Singer
Patrick A. Singer, 39738
Kresl & Johnson, P.C.
130 Rampart Way, Ste. 200
Denver, CO 80230
Phone: (303) 336-2100
Fax: (303) 388-1749
psinger@kresljohnson.com
*Attorney for Defendant Steven Durian*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2016, I electronically filed the foregoing **DEFENDANTS' MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT** via CM/ECF to the following:

Stuart B. Borne, Esq.
Aimee M. Bove, Esq.
BKN Murray, LLP
6795 E. Tennessee Ave., Ste. 330
Denver, Colorado 80224
Phone: 303-758-5100
*Attorneys for Plaintiff*

> *s/ Patrick A. Singer*
> Patrick A. Singer
> Kresl & Johnson, P.C.
> 130 Rampart Way, Ste. 200
> Denver, CO 80230
> Phone: (303) 336-2100
> Fax: (303) 388-1749
> psinger@kresljohnson.com