IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02325-CMA-NYW

**RIVERSIDE STORAGE AND RECYCLING CENTER**, a Colorado Limited Liability
Corporation; and
**CRAIG SHRIVER,** individually; and
**KEVIN COX**, individually; and
**JOHN HOOD**, individually; and
**KIMBERLY HILLS MOBILE HOME PARK**, a Limited Liability Company,

Plaintiffs,

  v.

**CITY OF FEDERAL HEIGHTS**, a Colorado Municipal Corporation;
**KEN EKROSS**, in his individual capacity;
**JACQUELINE HALBURNT**, in her individual capacity;
**STEVEN DURIAN**, in his individual capacity;

Defendants.

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT

---

**COME NOW**, Riverside Storage and Recycling Center ("Riverside"), Craig Shriver

("Shriver"), Kevin Cox, John Hood and Kimberly Hills Mobile Home Park, by and through their

undersigned attorneys, BKN Murray LLP, and file this Response to Defendants' Motion and

Brief in Support of Summary Judgment.  In support thereof Plaintiffs hereby state:

### INTRODUCTION

Federal Heights Motion for Summary Judgment contains two overarching issues: (1)

Plaintiffs received due process; and, (2) Federal Heights was doing its best to protect the health

and safety of its residents and therefore should be excused for its wrongdoings.  Below Plaintiffs

set forth material facts in support of both their due process claims, the pertinent property interest, notice failures and improper intentional acts by Federal Heights employees. Listed below are the disputed and undisputed facts that show that Federal Heights violated Plaintiffs' due process rights. These facts create genuine issues of material fact which preclude the entry of the summary judgment as Federal Heights requests.

## RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS ("DSDF")

Plaintiffs Admit the following DSDF: 1-5; 7; 10; 11; 13; 16-17; 20-32; 33, 35-38; 40-42; 44-51; 52-64; 66-67; 69 -78. Plaintiffs Deny the following DSDF: 6. Deny (ASMF # 43); 8. Deny (ASMF # 40); 9 Deny (ASMF # 40); 12 Deny (ASMF # 75); 18 Deny (ASMF # 17); 19 Deny (ASMF # 40); 33 Deny (ASMF #46); 34 Deny (ASMF #36); 39 Deny (ASMF #68); 43 Deny (ASMF # 68); 51 Deny (Respondent's Appx. Pages 249-250, Nimtz deposition); 54 Deny (ASMF # 77 ); 65 Deny (ASMF # 76, 77; ); 68 (ASMF # 77)

## ADDITIONAL STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS ("ASMF")

1.      On September 19, 2013 the Colorado Department of Public Health and Environment issued "2013 Floods – Guidance: Management and Disposal of Flood Debris."("CDPHE Flood Guidance"). CDPHE Flood Guidance contains the definition for Tier 1 Debris, "Tier 1 Building Materials:  Any and all building materials that have been displaced or dislodged as a result of heavy rains and flooding.  This includes, for example debris from demolished homes that may have washed away." (September 19, 2013 CDPHE Flood Guidance, *hereto attached as* Respondents' Appx. Pages 1-10).

2.      N. Zach Ratkai, City of Evans Building and Development Manager drafted an Interoffice Letter stating, "I have determined that the mobile home damage located on the above

described properties to be designate as Tier 1 Material consistent with the CDPHE's guidance as outlined in a document entitled " 2013 Floods – Guidance: Management and Disposal of Flood Debris" and dated  September 19, 2013. (November 25, 2013 Interoffice Letter, *attached hereto as* Respondents' Appx. Pages 11-12).

3.      None of the Plaintiffs in this action were aware that the City of Evans attempted to designate the subject homes as Tier 1 debris. (Deposition of Mr. Cox, *hereto attached as* Respondents' Appx. Pages 13-15, 52: 16-18; Deposition of Mr. Hood, *hereto attached as* Respondents' Appx. Pages 16-20, 33:25- 34:16;  Deposition of Mr. Shriver Volume II, *hereto attached as* Respondents' Appx. Pages 21-30; 374: 1-19. Deposition of Ms. Wiebold, *hereto attached as* Respondents' Appx. Pages 31-36, 41:10-20).

4.      Federal Heights' mayor Daniel Dick has called Kimberly Hills Mobile Home Park blight at city council meetings. Halburnt Deposition Respondents' Appx. Pages 37-41, 74:4-24).

5.      Federal Heights has a history of intentionally using its official power to harm Plaintiff Kimberly Hills and its management.   For example, Federal Heights specifically targeted Kimberly Hills for issuance of code violations.   Kell Straights of Federal Heights emailed Marci Rusin instructing her to:

> HIT KIMBERLY HILLS WITH CODE ISSUES/
> COUTESY [sic] NOTICES
> . . .
> Focus on rental spaces of KH [Kimberly Hills] which are KH owned.
> . . .
> If I were you, I would focus on KH and nothing else this weekend.
> He basically expects the Courtesy Notices to be stacked full.
> But you do what you want. . .

[emphasis in original] (Federal Heights Interoffice email, *attached herto as* Respondents' Appx. Page 42).

6.      In approximately Fall 2013 and Spring 2014, Federal Heights Community Services Director Mr. Durian learned through an Urban Drainage and Flood Control meeting that the 2013 flooding breached sewage plants and that sewage possibly entered flood waters. (Durian Depo, Respondents' Appx. Pages 43-55, 124:13-125:7).

7.      Over one year after the 2013 Floods, Mr. Shriver, the owner of Riverside Storage, contracted with the owners of Bella Vista and Eastwood Village to remove select intact mobile homes.  At a later date Mr. Shriver contracted to demolish and properly dispose of remaining homes in Eastwood Village (Contract Shriver/Cowan, *attached hereto* Respondents' Appx. Pages 56-58;  Demo Contract Shriver/Cowan, *attached hereto* Respondents' Appx. Pages 59-77).

8.      None of the homes were dislodged by flood waters or washed away.  Specifically, Mr. Shriver did not select homes that were moved off their blocks (or their foundation system) by flood waters.  All homes selected by Riverside Storage for repair were intact and secured to their original foundation system.  (Shriver Affidavit, Respondents' Appx. Pages 78-79).

9.      Structural integrity examinations included the undercarriage frame system, floor joists, ceiling rafters, wall studs and flooding above the ceiling line.  Mr. Shriver did not select homes that were forced off their foundation system because the frames would likely be twisted and bent breaking floor joists and compromising the structural integrity.  (Shriver Affidavit, Respondents' Appx. Pages 78-79).

10.      Mr. Shriver specifically discarded homes with broken floor joists, broken rafters and broken wall studs and other structural defects due to the cost-prohibitive nature of remediation. (Shriver Affidavit, Respondents' Appx. Pages 78-79).

11.    While Mr. Shriver was remediating flood homes to be moved into Federal Heights, Federal Heights' employees continued to target Kimberly Hills Management through the use of code enforcement.  Specifically, Kell Straits worked with Federal Heights Community Services Director Tim Williams to locate Kimberly Hills owned rentals, "Vallero [police chief] wants myself and Marci to use this map to focus on "Code" issues KH management must address immediately." (Straits April 18, 2014 email to Williams, *hereafter attached as* Respondents' Appx. Page 80).

12.    Federal Heights undertook this plan to target Kimberly Hills while representing it would like to "have a friendly chat with her about code enforcement." (Williams April 18, 2014 @ 1:17 pm email to Straits, *hereto attached* Respondents' Appx. Page 80).

13.    "Vallero really wants those maps and wants Code to start nailing rentals, <u>which falls back on Management</u>." (*emphasis added,* Straits April 18, 2014 email @ 1:44 pm, *hereafter* Respondents' Appx. Page 80).

14.    Plaintiffs Cox and Hood contracted with Mobile Home Pros to purchase nine City of Evans mobile homes from Mr. Shriver to be set in Kimberly Hills Mobile Home Park (April 16, 2014 Mobile Home Pros Purchase Agreement, *hereafter attached* as Respondents' Appx. Page 81).

15.    Plaintiffs Riverside Storage and Kimberly Hills contracted for Riverside to bring 50 homes by December 2014; Kimberly Hills would provide a $6,000.00 incentive fee per space. (Riverside/Kimberly Hills Agreement, *attached hereto* Respondents' Appx. Page 82).

16.    Mobile Home Pros then contracted with Kimberly Hills to place the 9 flood homes onto their lots. (MidSpace Agreements, *attached hereto* Respondents' Appx. Pages 83-92).

17.     Before removing the selected homes from the City of Evans and taking them to Federal Heights, Riverside Storage tore out all wet materials, including personal property, wet carpet, vinyl, drywall, insulation and sprayed surfaces with mold killing agents.  A flood line cut was also performed.  This included cutting out drywall a foot above flood line and tearing out installation, thus exposing the interior of the walls. (Shriver Affidavit, Respondents' Appx. Pages 78-79).

18.     In response to the influx of remediated flood homes, the Colorado Division of Housing, Technology and Standards Section of the Colorado Department of Local Affairs Division of Housing on June 17, 2014 issued a letter to the Manufactured Housing Installation Program, installers, inspectors   and Colorado local jurisdiction Chief Building Officials declaring:

> The local jurisdiction chief building official has full authority to deny the placement of used mobile and manufactured homes in the jurisdiction based on an individual inspection of the home for structural and/or other flood related damage. (June 17, 2014 letter, *hereafter* Respondents' Appx. Page 93).

19.     In the summer of 2014 Riverside Storage was hired to set City of Evan's flood affected homes, including homes placed in Federal Heights Mobile Home Park Kimberly Hills' lots #516 and 387. (Shriver Affidavit, Respondents' Appx. Pages 78-79).

20.     July 9, 2014 Craig Shriver applied to set City of Evans flood affected homes in Kimberly Hills Spaces #387 and #516.  Mr. Shriver disclosed to Federal Heights that the homes were flood damaged and Federal Heights was aware that the homes were from the City of Evans. (Federal Heights Timeline, *attached hereto* as Respondents' Appx. Pages 241-244; Shriver Depo, Respondents' Appx. Pages 22-30, 72:16-73:9; 209:25-210:19).

21.     The standard for setting flood-affected homes within Federal Heights is determined by Colorado State's program for setting mobile homes  (Durian Depo, Respondents' Appx. Pages 43-55  170:21-171:2).  The June 17, 2014 letter "Flood Damaged and Mobile and Manufactured Homes" stated: "Mobile home and manufactured home inspectors and installers are reminded of their responsibility to inspect each home for all damage, including flood damage, prior to installation of the home."  (MHIP June 17, 2014 letter, *attached hereto as* Respondents' Appx. Page 93).

22.     July 15, 2014 Patti Lowell of Federal Heights emailed the City Manager advising, "Kell is ready to write citations for 300 violation in Kimberly Hills." (Lowell email to Halburnt, *attached hereto* Respondents' Appx. Page 94).

23.     On July 24, 2014 Federal Heights provided specific details for setting flood homes: "Over the last several weeks there has been an influx of flood-damaged manufactured homes brought into the city." (July 24, 2014 Federal Heights Letter, *hereto attached as* Respondents' Appx. Page 95)  Attached to that letter was Federal Heights' "Used Manufactured Home Set Inspection Policy." This policy did not make any distinction between flood homes and flood homes labeled Tier 1 debris. (Used Manufactured Home Policy, *attached hereto* as Respondents' Appx. Page 96).

24.     On July 30, 2014 the Colorado Division of Housing provided guidance documents that relate to the repair of flood damages homes.  The "Recommendations for Rehabilitation of Flooded Manufactured Housing" was sent to MHIP Installers, Inspectors and Participating Jurisdictions (Rehabilitation of flooded manufactured housing, *hereto attached* Respondents' Appx. Pages 97-98).

25.     By August 2014 two of Plaintiff Cox and Hoods' flood affected manufactured homes received state occupancy insignias. (Durian Depo, Respondents' Appx. Pages 43-55, 28: 3-11)   A manufactured home must meet all standard of the Colorado Division of Housings Installation Handbook.  (Durian Depo, Respondents' Appx. Pages 43-55, 28: 3-11).

26.     On August 2, 2014 Federal Heights Building Official Mr. Ken Ekross conducted a Site Inspection for a City of Evans' flood affected home, Unit #516, set by Mr. Shriver in Kimberly Hills. (516 Field Inspection Report, *hereto attached as* Respondents' Appx. Page 99). Mr. Ekross, with the full knowledge that Unit #516 was from the City of Evans flood, spent an hour on the inspection and provided building instructions to obtain a certificate of occupancy, including "all water damage replaced." (*Id.*).

27.     That same day Mr. Ekross inspected City of Evans flood damaged Unit #387 which was also being set in Kimberly Hills.  Mr. Ekross spent two hours on this field inspection and provided instructions, including "open all interior walls to the floodline." (Unit #387 Field Inspection Report, *hereto attached as* Respondents' Appx. Page 100).

28.     Mr. Ekross worked for the City of Thornton for a number of years before being hired by Federal Heights. (Ekross Depo, Respondents' Appx. Pages 101-122, 155:9-12).

29.     Mr. Shriver dealt with Mr. Ekross when his company, Riverside Storage and Recycling, installed and rented mobile homes in the City of Thornton.  Mr. Ekross and Mr. Shriver developed a history of antagonistic interactions that resulted in Mr. Shriver hiring Mr. Ken Essex to handle all exchanges with Mr. Ekross. (Shiver Affidavit, Respondents' Appx. Pages 78-79; Essex Affidavit, Respondents' Appx. Pages 245-246).

30.     Federal Heights Director of Community Services recalled that Mr. Ekross and Mr. Shriver, ". . .  may have had their disputes and their disagreements,  If anything, that's all I

would have talked to Ken about, is he may have, you know, known that he was getting a little agitated by - -  Mr. Shriver was getting a little agitated by the issue and informed him of that." (Durian Depo, Respondents' Appx. Pages 43-55, 245:17-24).

31.     In his deposition Mr. Ekross claimed no memory of Mr. Shriver prior to August 1, 2014, said he never dealt with him in Thornton and stated that he certainly had no unpleasant interactions with Mr. Shriver. (Ekross Depo, Respondents' Appx. Pages 101-122, 234:3-6).

32.     There is animosity between Federal Heights and Mr. Shriver.  Federal Heights' building department has a history of backtracking and being prejudiced against Mr. Shriver. (Nimtz Depo, Respondents' Appx. Pages 123-125, 45:4-11).  Federal Heights want to do whatever they can do to keep him out of there, which included getting rid of the flood homes. (Nimtz Depo, Respondents' Appx. Pages 123-125, 45:10-14).

33.     Mr. Ekross did not find either unit a danger or nuisance during his August 1, 2014 inspections. (Shriver/Ekross walkthrough recording, *attached hereto* Respondents' Appx. Page 126 also known as Ex. Z); #387 Respondents' Appx. Page 100; # 516 Respondents' Appx. Page 99).

34.     Plaintiffs Cox, Hood, Shriver, Kimberly Hills and Riverside Storage the relied up the City of Federal Heights codes, policies and representations that City of Evan's flooded homes can be placed and occupied in Federal Heights.  (Cox Depo, Respondents' Appx. Pages 13-15, 54:5-23; Shriver Depo Vol I, Respondents' Appx. Pages 22-30; 111: 19-24; Hood Depo, Respondents' Appx. Pages 16-20; 117: 18-118: 21; Kimberly Hills Depo, Respondents' Appx. Pages 31-36, 146: 16-147:3).

35.     In August 2014 9news reporter Melissa Blasuis contacted Mr. Durian regarding flood homes being placed in Federal Heights.  In response the article stated "The City of Federal

Heights is changing building inspection rules in response to 9Wants to Know Investigation, which exposed the safety concerns when flooded mobile homes are resold to unsuspecting families." (9Wants to Know Investigation Report August 28, 2014, *attached herto* Respondents' Appx. Pages 127-136).

36.     In her deposition the Federal Heights City Manager, Jacqueline Halburnt, described Federal Heights' reaction to the 9News investigation:

> A. . . . you know, that we had a call from 9News; that we had VIN numbers that identified mobiles as being flash flood damaged; and that we needed to take action, to do something.
> Q. Okay. To do something?
> A. Right.
> Q. And then who was the individual in Federal Heights who was going to do something?
> A. Well, that would be. . . Steve's in charge of that department, So Steve Durian.

Halburnt Depo, Respondents' Appx. Pages 37-41, 43:23-44:8).

37.     Mr. Durian rehired Building Official Mr. Ekross. "I was rehired to come back to work July 21. . . and on my arrival, I was notified of flood-damaged homes being brought into the city, that Channel 9 report had pointed it out to us, that there was flood-damaged homes within the city." (Ekross Depo, Respondents' Appx. Pages 101-122, 15:22-16:2).

38.     On August 19, 2014 for the first time the term "Tier 1 Debris" is heard (Ekross Depo, Respondents' Appx. Pages 101-122, 16:18-25).  Federal Heights Building Official Ken Ekross contacted the City of Evans to look into rumors regarding City of Evans and Tier 1 Debris.  Mr. Ekross visited the City of Evans almost a year after the historic flooding.  The flood waters had receded and the majority of the flood damage was cleaned up.  Mr. Ekross was unable to determine if the flood homes in the park were Tier 1 debris as defined by State of Colorado:

Q. Would you be surprised to find out that Mr. Shriver only picked homes that had not been dislodged or moved from the park?

. . .

A. I don't know.

. . .

Q. Does the fact that Mr. Shriver's homes that he took from the City of Evans were picked specifically because they had not been moved from their settings have affected your determination on the Notice and order for Removal at all?

A. No.

(Ekross Depo, Respondents' Appx. Pages 101-122, 41: 12-23).

39.     Federal Heights Building Officials completely and exclusively relied upon the November 23, 2013 letter to determine the mobile homes from Evans were Tier 1 Debris.  Mr. Ekross saw no need to verify the accuracy of the November 23, 2014 letter. (Ekross Depo, Respondents' Appx. Pages 101-122, 18:7-19:12).

40.     The City of Evan's produced an ACT – 20 list to Mr. Ekross in which the condition of each home immediately following the flood is summarized.  The summary did not provide that homes were unrepairable and must be destroyed. (Ekross Depo, Respondents' Appx. Pages 101-122, 20:15-21-5).

41.     Mr. Ekross did not request to see the actual ATC-20 forms for the homes located in Federal Heights (Ekross Depo, Respondents' Appx. Pages 101-122, 20:15-21-5). Indeed no ATC forms for Eastwood Village have ever been located (City of Evan's CORA Request, Respondents' Appx. Pages 137-141).

42.     Mr. Ekross did not see any evidence that Bella Vista or Eastwood Village flood waters were contaminated by sewage, petroleum or other containments.   (Ekross Depo, Respondents' Appx. Pages 101-122, 42:19-43).

43.     Indeed, the City of Evans had no evidence the Eastwood and Bella Vista parks were affected by the downstream sewage plant failure or by petro chemical from wells west of the Parks. (Ratkai Depo, Respondents' Appx. Pages 142-145, 107:5-23; 94: 1-8).

44.     After rehiring Mr. Ekross and in response to 9News investigation Mr. Durian decided he would remove insignias from two of the remediated Evan's flood homes. (Durian Depo, Respondents' Appx. Pages 43-55, 207: 18-20, 210: 14-19).

45.     Mr. Durian claims he removed the insignias, "[b]ecause we had no inspection record of the interior of the homes, and SAFEbuilt confirmed that they weren't inspecting those, and they were on the list provided by 9news. So you can connect the dates and determine that they weren't inspected according to those standards." (Durian Depo, Respondents' Appx. Pages 43-55, 206:19-207:3).

46.     Conversely, Mr. Durian told the City Manager that the insignias were removed because:

> [t]he flood damaged homes in questions [sic] were not in compliance with requirements of electrical and plumbing and therefore cannot be given insignias.   Insignias mistakenly placed on homes were removed to comply with State regulations.

(Durian September 5, 2016 email to Halburnt, *hereto attached* Respondents' Appx. Pages 146-148).

47.     A MHIP inspector has authority to remove an insignia after application to the home but the removal must be based on new information or installation changes that occurred after the original insignia application that established the installation no longer meets the MHIP Standards. (Rick Hanger Colorado Department of Housing to Durian, *attached hereto* as Respondents' Appx. Pages 149-153).

48.     Community Services Director Durian is not a MHIP Inspector. (Durian Depo, Respondents' Appx. Pages 43-55, 203: 6-11).

49.     When the City Manager questioned Mr. Durian's regarding the removal, "Steve, I just talked with the state inspector, who said if an insignia was removed, he would have to approve it. . . Did you get the state inspector's approval to remove the insignia?"  (Halburnt September 5, 2014 email to Durian, *hereto attached* Respondents' Appx. Pages 146-148).

50.     While dodging the question, Mr. Durian asserts he called Federal Heights MHIP Inspector service SAFEbuilt to coordinate the removal of the insignias (Durian Depo, Respondents' Appx. Pages 43-55, 204:18-205:7).

51.     Mr. Durian admits that SAFEbuilt did not complete a new inspection, he did not know the name of the person he spoke to, does not know who originally inspected the units and could only remember allegedly being told by someone "'you should probably' - - 'you probably shouldn't put insignias on those' So we took them off." (Durian Depo, Respondents' Appx. Pages 43-55, 206:10-15).

52.     The City of Federal Heights did not provide the owners with notice of the alleged inspection failures, opportunity to request additional inspections or challenge the city's determination before the insignia's were removed. (Durian Depo, Respondents' Appx. Pages 43-55, 207:18-24; 216: 5-9)

53.     Mr. Durian intended to make the home's uninhabitable by removing the insignias. (Durian Depo, Respondents' Appx. Pages 43-55, 211:10-13).

54.     Next, Mr. Durian, with the help of Federal Heights' Building Official Mr. Ekross, on September 3, 2014 issued a Notice and Order for Removal for all City of Evans' flood affected homes effective immediately ("September 3 Removal Order").  Ignoring Federal

Heights' and Colorado Department of Housing regulations and policies for flood homes, Mr. Durian designated 23 homes affected byE the 2013 flood in the City of Evans nuisances according to Federal Heights' Municipal Code section 30-105.  (September 3, 2014 Order and Notice of Removal, *hereto* Respondents' Appx. Pages 154).

55.     The September 3 Removal Order stated "last two weeks the City of Federal Heights has identified . . . [mobile homes] have been *listed* with the Colorado Division of Housing as *qualifying* as a Tier 1 debris. Because the City of Federal Heights is not designated as Tier 1 debris disposal facility. . . you are hereby notified that these 23 homes are designated by the Building Official as nuisances according to Section 30-105." (Respondents' Appx. Page 154-155).

56.     Nuisance Section 30-105 lists eight specific nuisances regulated by Chapter 30. (a) Graffiti; (b) Fertilizer; (c) Blowing dust (d) Stagnant pond; (e) Noxious liquids; (f) General Property standards; (g) Garbage, trash or junk; (h) Snow and Ice Removal. (Section 30-105, *hereto attached as* Respondents' Appx. Pages 156-161). Section 30-105 does not list Tier 1 debris as a nuisance but does allow for "General Property Standards." Id.

57.     The September 3, 2014 Removal Order did not provide for an Appeal process or any information on how to challenge the Order. (September 3 Order, Respondents' Appx. Pages 154-155).

58.     On September 5, 2014 Federal Heights placed Mr. Durian on temporary leave to investigate the insignia issue. (Durian Depo, Respondents' Appx. Pages 43-55, 235:14-18).

59.     September 10, 2014, Mr. Shriver's attorney wrote Federal Heights questioning the validity of the Notice and Order pursuant to the nuisance statute. (Nimtz letter to Ekross, Respondents' Appx. Page 162).

60.     Federal Heights responded not with appeal information but a new September 19, 2014 Notice and Order ("September 19 Order").   The September 19 Order required immediate removal based upon incomplete permit applications.   (September 19 Order, *hereto attached* Respondents' Appx. Pages 163-181). Federal Heights now asserts they can revoke permits based off of inaccurate information. *Id.* Indeed Federal Heights it can disregard its own procedures for setting flood affected homes because Mr. Shriver and the other mobile home setters failed to disclose the homes as "Tier 1 Debris"  *Id.*

61.     When the permit applications were submitted no one, including Federal Heights, knew the term "Tier 1 Debris" or that it applied to Evans Flood homes. (Shriver Depo, Respondents' Appx. Pages 22-30, 47:19-25; Halburnt Depo 69:2-5, Respondents' Appx. Pages 37-41).

62.     Federal Heights did not inspect each of the 23 homes located in Federal Heights to determine if the homes were nuisances under the code.  (Ekross Depo, *hereto attached* as Respondents' Appx. Pages 101-122 , 24:3-17).

63.     Mr. Ekross did tour Federal Heights and locate the trailers by its vin numbers.  In violation of International Residence Code Section R104.6 (Expert Thomas Report, Respondents' Appx. Pages 182-191, p. 7-8). Mr. Ekross and Mr. Durian violated R104.6 when they entering private property for purposes of code enforcement such as removing insignias or verifying vin numbers. *Id.*

64.     The September 19 Order did not contain appeal information. (September 19 Order, Respondents' Appx. Pages 163-181).

65.     Federal Heights and specifically Mr. Ekross notified other Federal Heights' home owners of their right to appeal a Notice and Order.  This included an opportunity to obtain

building permits to remedy the alleged violation and 30 day right to appeal to the Board of Adjustment.  (December 13, 2013 Notice and Order to Vacate, *attached hereto* Respondents' Appx. Pages 192-193).

66.     Mobile Home Pros on behalf of Plaintiffs Cox and Hood was in continual contact with Federal Heights regarding the Notice and Orders and Federal Heights never provided appeal information. (Wilson letter to Williams, February 5, 2015, *attached hereto* Respondents' Appx. Pages 194; Wilson Depo, Respondents' Appx. Pages 195-208, 61:12-21).

67.     In fact Federal Heights served Mr. Shriver with a code enforcement citation for failure obey the September 19 Order and not removing unit # 516 (Shriver Code Citation, Respondents' Appx. Pages 209-215).  Federal Heights compelled Mr. Shriver Municipal Court for R113.2 Failure to Comply with a Notice Violation on August 10, 2015.

68.     Mr. Shriver challenged the legality of the Notice and Order and the Court agreed, holding:

> There was no enclosed documentation given to him [Mr. Shriver] that says that a documented Tier-1 debris designation from the City of Evans and the State's Division of Housing and Tier-1 debris information.  And since that wasn't included with the Notice and Order, and that's a significant basis for the Order, the Court finds that the, the Notice was defective on its face.  So, that being an essential element, the Court finds Mr. Shriver not guilty.

Reporter's Transcript Case No. C01070, Respondents' Appx. Pages 216-221, 180: 1-8).

69.     Federal Heights was not done with Plaintiff Kimberly Hills or its management. Tanya Wiebold an employee and manager of Kimberly Hills was criminally cited and criminally convicted for "Failure to Prune" Federal Heights Municipal Court.  The Trial Court sentenced her to one year probation and required her to provide a remediation plan for tree pruning within 30 days. (Adam's County Order on Appeal, Respondents' Appx. Pages 222- 225, p. 1).

70. Ms. Wiebold appealed the conviction to Adams County District Court. The District Court found that Federal Heights' municipal court erred when he declared, "she's not entitled to know everything she wants I guess. It doesn't matter what you call it, " in response to Defendant Wiebold question to whether the proceeding was either criminal or civil in nature. (*Id.* at 2). The Court overturned her conviction remanded the matter to be determined under a civil proceeding. (*Id.* at 4).

71. The new Chief of Police Les Acker, Community Development Director and City Manager is continuing the Federal Heights' tradition of targeting Kimberly Hills on unfounded grounds to appease its own speculative suspicions. (Acker January 8, 2015 email to Williams, *attached hereto* Respondents' Appx. Page 226).

72. In preparation for Mr. Shriver's Code Violation trial, Mr. Ekross on April 29, 2015 broke into unit #516 to take photographic evidence. In violation of R104.6, Mr. Ekross did not notify the owner of the home (Ekross Depo, Respondents' Appx. Pages 101-122, 133:2-139:15). Mr. Shriver filed a complaint with the Federal Heights Police department for Mr. Ekross's trespass. (May 16, 2015 Federal Heights Statement Form, *hereto attached* as Respondents' Appx. Pages 227-229).

73. All the homes moved into Federal Heights had legal moving permits through Weld County (Shriver Depo Vol I, Respondents' Appx. Pages 22-30, 68: 20-69:1; Weld County Moving Permit to Federal Heights, Respondents' Appx. Pages 230-236).

74. Linda at Weld County, in response to the City of Evan's list of destroyed homes, stated: "It does not say that we cannot move them out. It just says they were deemed as standing. And I told him [Mr. Shriver] because of Milliken. . . Milliken took the stance, if the people want to spend the money to refurbish their home and let is pass for a certificate of occupancy, then

they could do so and keep their homes. If they didn't want to, then they would have to have it destroyed or take it to the dump or sell it. (Weld County Audio Recording MIRANDA001066 20140902 170803, Respondents' Appx. Page 237, also known as Ex. TT).

75. Federal Heights asked the Weld County Treasurer and assistant Treasurer to not issue any further moving permits into their mobile home park. (Weld County Audio Recording MIRANDA001066 20140902 170803, Respondents' Appx. Page 237, also known as Ex. TT).

76. Mr. Ratkai, the author of the November 2013 "Tier 1 designation" letter, testified in his deposition that he would have accepted an application to reset Tier 1 designated home and entertained documentation establishing the home had been made safe for occupancy in the City of Evans. (Ratkai Depo, Respondents' Appx. Pages 142-145, 98:19-24).

77. Four mobile homes removed by Mr. Shriver from Eastwood Village and Bella Vista mobile home parks have been refurbished, installed in mobile home parks and received certificates of occupancy. Two mobile homes are located at spaces 353 and 81 of the Friendly Village of the Rockies mobile home park and spaces 111 and 192 of Redwood Estates Mobile Home Park. (Shriver Affidavit, Respondents' Appx. Pages 78-79).

78. Mr. Shriver is not required to be a licensed dealer for the sale of nine homes to Mr. Wilson because at the time of the sale Mr. Wilson was a dealer registered with the Department of Local Affairs – Division of Housing ("Agency"), pursuant to C.R.S § 24-32-3323. (*Id.*) C.R.S § 24-32-3323 allows an unlicensed natural person to sell manufactured homes they own to persons and entities certified by the Agency. C.R.S § 24-32-3323(4)(a) (A person is not engaged in the business of selling manufactured homes if the person. . (a) Is a natural person acting personally in selling a manufactured home owned or leased by the person.") (Shriver and

Mobile Home Pros Contract, Respondents' Appx. Page 238; Shriver Affidavit, Respondents' Appx. Pages 78-79; Cowan Depo, Respondents' Appx. Pages 239-240, 32:18-21).

79.   The registered dealers and sellers solicited Mr. Shriver for the purchase and sale of the manufactured homes and never vice versa. (Shriver Affidavit, Respondents' Appx. Pages 78-79; Wilson Depo, Respondents' Appx. Pages 195-208, 10-19:11-11)   Moreover, Mr. Shriver disclosed any and all flood damage within the purchase and sale contracts by and between Mr. Shriver and the certified dealers and sellers. (Shriver and Mobile Home Pros Contract, Respondents' Appx. Page 238).

## LEGAL ARGUMENT

The Fourteenth Amendment provides that no state may deprive a person of life, liberty, or property without due process of law. U.S. Const. Amend. XIV, § 1. Absent an emergency, individuals generally must be provided some kind of process before they are deprived of one of these protected interests. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972). Plaintiffs must allege facts that sufficiently state claims for the violation of their right to due process regarding deprivation of both their property and liberty interests. *Id.*

### A.   Procedural Due Process

#### a.   *Federal Heights Issued the September 3 and 19 Notices and Orders and Removed Insignias Without Due Process of Law.*

Without notice or an opportunity to correct alleged violations, Federal Heights issued two Notices and Orders for Removal, and removed insignias, requiring that all mobile homes affected by the 2013 flood in the City of Evans be immediately removed from Federal Heights and forever excluded  from its jurisdiction. (ASMF # 54; 60)  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

### b.   *Each Plaintiff has a Protectable Property Interest*

Property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law—rules or - understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. at 577.  Plaintiffs Cox and Hood entered into a contract to invest in mobile homes being placed in Kimberly Hills Mobile Home Park in Federal Heights. (ASMF #14;16). Plaintiffs Shriver and Riverside Storage contracted with Kimberly Hills to place 50 mobile homes within its park (ASMF #15).  Plaintiffs relied upon the Colorado Depatment of Public Health and Environment  and Federal Heights' historic procedures and policies regarding setting mobile homes when they entered into the subject contracts (ASMF #34).

The September Orders and removal of insignias made performance of the Plaintiffs' contracts, a protected property interest, impossible, in that they could not  place the homes for occupation within Federal Heights, and thus deprived them of the said property interest. *Lochner v. New York*, 198 U.S. 45 (1905) (freedom to contact is a fundamental right); *Lujan v. G & G Fire Sprinklers, Inc.*, 523 U.S. 189 (2001) (breach of contract suit against state contractor who withheld payment to subcontractor based on state agency determination of noncompliance with Labor Code held a sufficient interest for due process purposes).

### i.   Defendants Permit Property Interest Argument

Plaintiffs Shriver and Kimberly Hills also have a property interest in the permits. Defendants argue that Plaintiffs have no property interest in the Federal Heights permits.  But the legal authority cited by Defendants is not apposite.   Defendants' cases provide that a property

interest is a creature of state law, but the cases don't discuss Colorado law (only Kansas and Nebraska). *Schanzenback v. Town of La Barge*, 706 F.3d 1277 (10th Cir. 2013) (under Wyoming law, property interest in permit if plaintiff detrimentally relies, and expends monies after permit issues); *Gunkel v. City of Emporia, Kansas*, 835 F.2d 1302 (10th Cir. 1987) (under Kansas law, no property right in permit that was issued by mistake or in violation of state law); *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed.Appx. 887 (10th Cir. 2010) (under Wyoming law, land owner has property interest in permit when he makes substantial expenditure in reliance on the permit).

Colorado, however, does allow a property interest in building-type permits.  In Colorado, a permit holder may have vested rights in the permit if he takes steps in reliance upon the issuance.   Colorado courts have recognized vested rights in the context of building permits. The Supreme Court has held that "[a] city permit can provide the foundation for a vested right, and thus be constitutionally protected from impairment by subsequent legislation, if the permit holder takes steps in reliance upon the permit." *Eason v. Board of County Com'rs of County of Boulder*, 70 P.3d 600 (2003) (citing *P-W Investments, Inc. v. City of Westminster*, 655 P.2d 1365, 1371 (Colo.1982); see also *Crawford v. McLaughlin*, 172 Colo. 366, 473 P.2d 725 (1970); *Richardson v. Butler*, 12-cv-02912 (D. Colo., Jan. 28, 2014) (citing *Cline v. Boulder*, 168 Colo. 112, 450 P.2d 335, 338 (Colo.1969) (the "majority rule" is that a property owner "must take some steps in reliance on [their building] permit before his rights vest thereunder" and before the owner is "protected against revocation... by subsequent enactment or amendment of zoning laws prohibiting the building." (Quoting 8 McQuillin Mun. Corp. § 25.156 (3d ed.1965)).

After obtaining permits to set the City of Evans flood affected homes, Mr. Shriver hired a crew, paid dumpster fees and used his heavy duty equipment to clean and prepare City of Evans

homes for transport to Kimberly Hills pursuant to his contract. (ASMF #17).   Kimberly Hills expended substantial monies to prepare the mobile home lots for delivery of the Evans homes. (Kimberly Hills depo Vol I, 161: 13-24).

The permits did confer a property entitlement to Plaintiffs because the issuance of the permits is not left to the complete discretion of the Building Official.   The Building Official must follow his own codes and procedures. (Expert Thomas Report, Respondents' Appx. Pages 185, p.4) (It is my opinion that the City Issued the September Notice improperly. They did not follow the requirements of their own Municipal Code in the issuance of these notices.)

### c.  *Plaintiffs Did not Receive Due Process Regarding Official Government Action*

Where the government has deprived individuals of a protected interest, the Court must weigh the following factors to determine whether that individual received due process: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

First, Plaintiffs' contracts to provide safe affordable housing in Federal Heights were destroyed by  the Notices and Orders for Removal and Mr. Durian's removal of the occupancy insignias.  Second, as to the  governmental interest,  Federal Heights asserts that the Notices and Orders were made out of public safety concerns. (SDMF #34).   However, Federal Heights has procedures supported by the Colorado Division of Housing to insure that mobile homes brought into the City are safe for occupancy. (ASMF #1; #18 (Local jurisdiction chief building official has full authority to deny placement . . .based on individual inspection of the home for structural

and/other flood related damage); #21 (Mobile home and manufactured home inspectors and installers are reminded to inspect each home for all damage, including flood damage, prior to installation of the home); #23 (Federal Heights July 24, 2014 letter detailing remedial procedures for flood homes).

Everything changed once 9News began asking questions. (ASMF #35)  Federal Heights knowingly ignored its own procedures, inspections and Colorado state requirements.  The City Manager summed up her reaction to the 9News report in her deposition:

> . . . you know, that we had a call from 9News; that we had VIN numbers that identified mobiles as being flash flood damaged; and that we needed to take action, to do something.

That "something" involved abandoning Federal Heights' procedures,  issuing the September 3, 2014 Notice declaring the homes a nuisance, and issuing the September 19, 2014 Notice revoking the permits for failure to disclose an unknown fact (ASMF ## 54; 55; 60; 61 (when the permit applications were submitted no one, including Federal Heights, knew the term Tier 1 debris or that it applied to Evans flood homes).  These Notices and Orders were made without completing individual inspections or acquiring supporting documentation on alleged Tier 1 status. (ASMF ## 38; 39; 40; 41; 42; 43)  Not only did Federal Heights fail to complete required individual inspections, it also intentionally disregarded its own Building Official's inspections for units #387 and #516 (ASMF #33 (Mr. Ekross did not find either unit a danger or nuisance during the August 1, 2014 inspections).

Third, the Court must measure the risk of a wrongful deprivation of Plaintiffs' rights "that the government creates through the process it offers."  The representative for Federal Heights knew that issuing the Notices and Orders of Removal would have a measurable impact. (Williams Depo105: 6-18, Respondents' Appx. Pages 247-248).  Indeed, it destroyed the value

of Plaintiffs' contracts which were worth a considerable sum.  Federal Heights caused this loss by violating its established procedures and instead summarily ordering the homes out of the City.

There were no procedures implemented to protect Plaintiffs' interest when the Notices were issued.  Federal Heights decided not to inspect each home, did not examine supporting documentation regarding the City of Evans and gave Plaintiffs no notice or opportunity to correct the alleged infractions. (ASMF ## 54; 60, 38; 39; 40; 41; 42; 43)  Plaintiffs have put forward material facts evidencing that their due process rights were violated by the City, making entry of summary judgment improper.

### d.   The Evans Homes are not Contraband. Currently Some People Call Them Home.

There is no evidence that moving the subject homes from the City of Evans was illegal. All of the homes moved into Federal Heights had legal moving permits through Weld County. (ASMF #73).  Linda, who issued the moving permits at Weld County, stated, in response to the City of Evans list of destroyed homes, "It does not say that we cannot move them out. It just says they were deemed as standing. And I told him [Mr. Shriver] because of Milliken. . . Milliken took the stance, if the people want to spend the money to refurbish their home and let is pass for a certificate of occupancy, then they could do so and keep their homes. If they didn't want to, then they would have to have it destroyed or take it to the dump or sell it." (ASMF #74).

It has never been illegal to remediate and have a City of Evans home safely occupied. Mr. Ratkai, the author of the City of Evans November 2013 "Tier 1 designation" letter, testified that he would have accepted an application to reset a Tier 1 designated home and would have entertained documentation establishing that the home had been made safe for occupancy. (ASMF #76)  Four mobile homes removed by Mr. Shriver from Eastwood Village and Bella Vista

mobile home parks have been refurbished, installed in mobile home parks and have received certificates of occupancy. Two mobile homes are located at spaces 353 and 81 of the Friendly Village of the Rockies Mobile Home Park and two are at spaces 111 and 192 of Redwood Estates Mobile Home Park. (ASMF #77)

Defendants are mistaken in alleging that Mr. Shriver violated state law when he sold some of the City of Evans homes.  Mr. Shriver is not required to be a licensed dealer for the sale of the nine homes to Mr. Wilson (ASMF #78).  Mr. Wilson was a dealer registered with the Department of Local Affairs – Division of Housing ("Agency") at the time of sale, pursuant to C.R.S § 24-32-3323.  (Wilson Depo, 23-132:2, Respondents' Appx. Pages 207 – 208). Wilson Depo, Respondents' Appx. Pages 195-208). C.R.S § 24-32-3323 allows an unlicensed natural person to sell manufactured homes they own to persons and entities certified by the Agency. C.R.S § 24-32-3323(4)(a) (A person is not engaged in the business of selling manufactured homes if the person. . (a) Is a natural person acting personally in selling a manufactured home owned or leased by the person.") (ASMF #78)

The registered dealers and sellers solicited Mr. Shriver for the purchase and sale of the manufactured homes and not vice versa (ASMF #79).  Moreover, Mr. Shriver disclosed  all flood damage within the purchase and sale contracts  between him and the certified dealers and sellers. (ASMF #79).

### e. Notice was Insufficient

The Plaintiffs had the right to appeal the Notices and Orders to the Board of Adjustment. But, they were not informed of this right. Defendants correctly assert that the IRC does not contain specific language regarding the option to appeal.  However, Plaintiffs' code expert establishes  that, though IRC is silent, it is "standard practice in the area of the building code

enforcement that a notice and order contains language regarding the option to appeal the decision." (Expert Thomas Report, Respondents' Appx. Pages 182-190, p.7).   Further, Mr. Thomas opines that "[s]ince the IRC does not include any guidelines or requirements on what a notice and order should entail, the IPMC should be used to develop the notice. *Id.* Mr. Ekross works daily with IPMC and should have used it as a basis for writing the Order. *Id.*

The IPMC has a specific procedure for how a notice and order must be drafted under section 107.2.  IPMC 107.2 lists six items that are required in a notice, and item five states, "inform the property owner of the right to appeal." *Id.* The City, in the September Notices and Orders of Removal, did manage to cite a large number of documents and municipal codes but was silent about the right to appeal.  The September 3, 2014 Notice and Order for Removal instructed, "Questions concerning this Notice and Order, mobile home removal procedures and other related items may be directed to Ken Ekross, Building Official, 303-428-3526" (ASMF #54).  The September 19, 2014 notice provided:

> Questions concerning this Notice and Order, mobile home removal procedures and other related items may be directed to Ken Ekross, City of Federal Heights Building Official, 303-428-3526. All other legal questions should be directed to the Law Offices of Williamson and Hayashi, 1650 38th Str., Ste.103 Boulder, CO 80301, (303)443-3100.

(ASMF #60) Nowhere do these materials mention a right to appeal the Notices and Orders to the Board of Adjustment, nor do they reference any procedural deadline.  The notices do not cite any regulation or statute that provides a right to appeal.  Mr. Nimtz, Mr. Shriver's attorney, contacted Federal Heights seven days after the September 3 Notice, questioning its legality, but Mr. Ekross did not inform him of the right to appeal.

> Q.    Did it occur to you that you should respond to this letter and let Mr. Nimtz know about the procedures for appealing the Order and Notice for Removal.
> . . .

A. (Ekross) From a - - from advice from our city attorney, it was not - -

Q. Don't tell me. Just yes or no. Can you answer that question?

A. (Ekross) Repeat the question.

Q. Did you feel it was appropriate to respond to this letter and let Mr. Nimtz know about the procedures for appealing this Notice and Order for Removal?

A. (Ekross) No.

(Ekross Depo, Respondents' Appx. Pages 120-121, 186:17-187:7). Mr. Ekross knew how to properly provide notice of appeal but did not do so, when it came to flood homes brought in by Mr. Shriver, fearing unwanted publicity. (ASMF # 65 (Ekross December 13, 2013 Notice and Order to Vacate with Appeal Procedures). Mobile Home Pros, on behalf of Plaintiffs Cox and Hood, were also in continual contact with Federal Heights regarding the Notices and Orders. Federal Heights did not provide appeal information to Mobile Home Pros. (ASMF #66).

In *State v. Green,* Defendants argued that, because Plaintiff had the ability to appeal under a local statute, she could not bring a claim for a due process violation. The court disagreed and determined that Plaintiff had not been made aware of her right to appeal, rejecting Defendants' assertion that plaintiff knew how to pursue an appeal because of prior use of such avenues as contacting the general counsel. The court found, "the bare right to a judicial appeal, without being informed of that right, was insufficient to protect Green from arbitrary action by the school district." *State of Washington v. Donna E. Green* DOB 6/17/197 Wa. Ct.App, Divison 1.

The present case is different from *Kennard v. City of Ashland, Kentucky,* where, "[g]iven the widespread access to the provision of Section 111 of the IPMC" the court found no individualized notice was necessary. 2015 WL 5194090, *1-*2 (E.D.Ken. Sept. 2, 2015). Unlike the Plaintiff in *Kennard,* Plaintiffs here were not working within a procedurally sound

process.  By the time the notices came out, Plaintiffs had been through permitting, inspection, 9News investigation, occupancy insignia removal and TWO different notices of removal citing different municipal codes. (ASMF # 18; 20; 21; 23, 24; 25; 26; 27; 35; 53; 54;60) It is for these types of cases the IPMC requires written notice of appeal.

Plaintiffs did not choose to not avail themselves to the appeal process.  They were unaware of the appeal process due to the' arbitrary actions and conflicting documents of Federal Heights. (ASMF # 18; 20; 21; 23, 24; 25; 26; 27; 35; 53; 54;60)  They were unaware of their appeal rights, because the Federal Heights. Building Official deemed it unnecessary to  inform them of their rights.

B.        **Substantive Due Process**

Plaintiffs assert a substantive due process interest in their right to contract free from arbitrary and capricious restrictions imposed by application of municipal laws. Any time a government deprives a person of life, liberty or property, the government must provide a sufficient justification. *Davidson v. Cannon*, 474 U.S. 344, 353 (1986); Sacramento v. Lewis, 118 S. Ct. 1708, 1716 (1996).

A sufficient justification may be an emergency related to public health, safety or welfare. But in this case, there was no emergency; the historic 2013 flood waters had receded, the flood affected homes were cleaned and they sat vacant in the City of Federal Heights.  (ASMF # 17; 19; 20) It wasn't an emergency that empowered Federal Heights to abandon its own procedures and issue the Notices and Orders of Removal.  The arbitrary issuance of those Notices was part of the pattern and practice of Federal Heights intentionally targeting Plaintiff Kimberly Hills to cause harm.  This animus was no secret, since the Mayor of Federal Heights proclaimed Kimberly Hills "a blight" during a city council meeting. (ASMF #4)The City employees worked

together to target Kimberly Hills for an inordinate number of code violations. (ASMF ##4; 5; 11; 12; 13)

Specifically, the City required its code official to  look for violations only on Kimberly Hills owned mobile homes.  That way Kimberly Hills management would suffer a  greater impact. (ASMF ##12; 13) Indeed, the Federal Heights code official drafted 300 citations to be served upon Kimberly Hills in one day. *Id.* Protection against governmental arbitrariness is the core of due process (e.g., *Hurtado v. California*, 110 U.S. 516, 527, including substantive due process, see, e.g., *Daniels v. Williams*, 474 U.S. 327, 331).

Federal Heights had a process for flood affected manufactured homes in the City. But after 9News knocked on the door with its investigative reporter,  Federal Heights intentionally disregarded procedures provided by the State of Colorado and its own codes governing  new homes being brought into the jurisdiction. (ASMF ## 35;36; 37; 52; 54; 56; 60)  The Federal Heights Community Services Director, Mr. Durian, intentionally removed state occupancy insignias, with complete disregard for the inspection and notice requirements.(ASMF ##44-52). Furthermore, Mr. Durian intended to make the homes uninhabitable by removing the insignias. (ASMF #53)  The Tenth Circuit has recognized that the level of culpability that must be shown under the shocks-the-conscience standard is difficult to define and requires an assessment of the "totality of the circumstances" in each particular case.  The Tenth Circuit has held, however, that deliberate indifference can be enough to shock the conscience.  *Green v.  County of Pueblo*, 574 F.3d 1294 (10th Cir.)

Mr. Ekross had a history with Mr. Shriver before the latter brought flood affected homes into Federal Heights.  Mr. Ekross and Mr. Shriver had a contentious relationship when Mr. Ekross worked for the City of Thornton.  Interactions were strained to the point where Mr.

Shriver hired Mr. Essex to handle communications with Mr. Ekross.   Strangely, Mr. Ekross testified he has no memory of Mr. Shriver from his days at Thornton (ASMF # 31).   There is also animosity between Federal Heights and Mr. Shriver.   The Federal Heights building department has a history of backtracking and being prejudiced against Mr. Shriver.   (ASMF #32).   It is believed that Federal Heights will do whatever it can do to keep Mr. Shriver from doing business in the City, which in this case, included getting rid of the flood affected homes. (ASMF #32).

Mr. Durian sent Mr. Ekross to the City of Evans to investigate the 9News reporter's assertion that the flood homes had been condemned. (ASMF #38).   Mr. Ekross took a single letter from the City of Evans without any supporting proof and drafted the September 3, 2014 Notice. (ASMF #39-43).   Federal Heights wanted Mr. Shriver and his homes out. (ASMF #32). Mr. Durian went too far and was placed on administrative leave due to  his actions, including the removing of the insignias.

Mr. Ekross remained at the City and then worked with Mr. Williams to draft an additional Notice and Order of Removal to ensure the prompt removal of the Evans homes.  Mr. Ekross did not provide any information regarding appeal, although he had done so in previous notices. (ASMF ##54; 60).   "Substantive due process asks the question of whether the government's deprivation of a person's life, liberty or property is justified by a sufficient purpose." *Remarks, Professor Erwin Chemerinsky,* Practicing Law Institute Program on the Supreme Court, November 1998.

Mr. Durian and Mr. Ekross intended to deprive Plaintiffs of their due process rights. There was no emergency. The public was not in harm's way.  The State of Colorado and Federal Heights have procedures to set safe homes and remove dangerous nuisances.  Federal Heights, through its employees, acted with deliberate indifference to its own established procedure,

causing harm to Plaintiffs. *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 410 (1997) ("'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious risk of constitutional injury.")  Federal Heights' intentional and deliberate indifference in issuing the Notices of Removal and removing the insignias, knowing that these actions would destroy Plaintiffs' property interest shocks the conscience.  Plaintiff's substantive due process claim must not be dismissed on summary judgment.

**C.**        **Mr. Ekross, Mr. Durian and Ms. Halburnt are not entitled to qualified immunity.**

**a.        *Qualified Immunity Two Part Test.***

Summary Judgment on qualified immunity is not appropriate because there are material questions of fact if Mr. Ekross, Mr. Durian and Ms. Halburnt's actions were at minimum plainly incompetent and at worst knowingly in violation of the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (Qualified Immunity does not shield individuals who are plainly incompetent or knowingly violated the law).  Mr. Ekross, Mr. Durian and Ms. Halburnt may not use qualified immunity as a shield unless they establish (1) that the individual Defendants' actions violated Plaintiffs' Constitutional rights; and (2) that the right was clearly established at the time of the Defendants' conduct. *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010)  All evidence must be viewed in the light most favorable to the Plaintiff. *Albright v.* Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995).

A court must ask, "do the facts alleged show the governmental employee's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).   As fully briefed above, Plaintiffs' have established that their Procedural and Substantive Due Process rights were violated and they have valid property rights.  Therefore the next step is to ask whether the right was clearly established. *Id* at 202. (The relevant, dispositive

inquiry in determining whether a right is clearly established is whether it would be clear to a government employee that the conduct was unlawful" under the circumstances presented).

          b.     *Prior Community Services Director Mr. Steve Durian*

Mr. Durian violated Federal Heights' adopted International Residence Code Section R104.6 and Colorado Department of Housing rules when he entered private property to remove insignias. (ASMF # 63).  At a minimum, Mr. Durian removed the occupancy insignias on a hunch (ASMF ## 44; 45 ("you can connect the dates and determine that they weren't inspected according to those standard."))  However, there is a material question of fact whether Mr. Durian actually intended to breach IRC and the Colorado Department of Housing rules when he removed the insignias. (ASMF ## 47 (MHIP inspector has the authority to remove insignias); 48 (Mr. Durian is not a MHIP inspector); 49 (Mr. Durian did not get approval from a state inspector to remove the insignias); 46 (Mr. Durian testified he removed the insignia due to alleged failure to complete an interior inspection but told his boss he removed the insignias due to electrical and plumbing failures).

Durian testified he had State authority to remove insignias because he talked to the original MHIP inspector (ASMF # 50) However, Mr. Durian couldn't remember who he talked to or the specifics of the conversation. There is a material question of fact to legality, intent and Mr. Durian's honesty in the removal of the insignias.  A reasonable individual would know trespassing and removing insignia contrary to state law and destroying the value of Plaintiff's contract was unconstitutional. *Patrick* v. *Vilar,* 953 F.2d 1240, 1243 (10th Cir. 1992). Summary Judgment on Mr. Durian's qualified immunity is not appropriate due to the outstanding disputes on material facts.

          c.     ***Prior Building Official Kenneth Ekross***

Mr. Ekross violated the Colorado Division of Housing's decree that local jurisdictions may deny placement of used mobile homes <u>based on an individual inspections when</u> he issued both September Notice and Orders for Removal. (ASMF ##18; 54, 60)  Mr. Ekross originally abided by the decree and individually inspected two of Evans's flood homes. (ASMF ##26; 27). Mr. Ekross did not find either unit a danger or nuisance during his inspections. (ASMF # 33). After 9News contacted Federal Heights, Mr. Ekross stopped following the decree and issued the September Notices and Orders with the blanket requirement all Evan's flood affected homes be removed. (ASMF # 54;60).  The Notice and Orders applied inapplicable law. (ASMF #63) Mr. Ekross states he relied upon the city of Evan's designation but did not obtain information establishing individual inspections had been completed. (ASMF #38; 39; 40; 41; 42; 43).  Mr. Ekross also failed to provide supporting documentation with the Notice and Orders and appeal information (ASMF ## 57; 65; 68 (Municipal Court Order finding failure to provide documentation in the Notice and Order made the Notice defective on its face)).

Mr. Ekross's blatant disregard for the inspections he completed pursuant to the Colorado Division of housing decree made Plaintiffs' contracts impossible to perform.  Mr. Ekross also violated International Residence Code Section R104.6 by entering private property to collect evidence against Mr. Shriver in his citation matter. (ASMF # 63).  Mr. Ekross's blatant disregard of right of entry laws is just one part of a contentious history with Mr. Shriver and Riverside Storage. (ASMF ##28; 29; 30).  Implausibly, Mr. Ekross testified he was unaware of any difficulty between himself and Mr. Shriver. (ASMF # 31) In fact Mr. Ekross testified that he doesn't even remember dealing with Mr. Shriver in the City of Thornton. *Id.*

A reasonable individual would know ordering immediate removal of property contrary to state decree and municipal codes destroying the value of Plaintiffs' contracts was

unconstitutional. *Patrick* v. *Vilar,* 953 F.2d 1240, 1243 (10th Cir. 1992). Summary Judgment on

Mr. Ekross's qualified immunity is not appropriate due to the outstanding disputes of material

facts, including Mr. Ekross's credibility.

> ### d.   City Manager Jaqueline Halburnt

The City Manager Jaqueline Halburnt knew that Mr. Durian violated Federal Heights

adopted International Residence Code Section R104.6 and Colorado Department of Housing

rules when he entered private property to remove insignias. (ASMF # 63)  While Ms. Halburnt

terminated Mr. Durian for his actions surrounding the insignias she did not have the insignias

replaced.  Instead she allowed the continual violation of law which destroyed Plaintiffs' Cox and

Hood's ability to fulfill their contact.

Moreover, she greenlighted the September 19, 2014 Notice and Order without Federal

Heights obtaining the supporting information listed in the notices and prescribed by law. (ASMF

## 57; 65; 68 (Municipal Court Order finding failure to provide documentation in the Notice and

Order makes the Notice defective on its face)). A reasonable individual would know ordering

immediate removal of mobile homes extinguishing Plaintiffs' contracts contrary to state decree

and municipal codes was unconstitutional. *Patrick* v. *Vilar,* 953 F.2d 1240, 1243 (10th Cir.

1992). Summary Judgment on Ms. Halburnt's qualified immunity is not appropriate due to the

outstanding disputes of material facts

WHEREFORE, for all of these reasons, Plaintiffs respectfully requests  that the Court

deny Defendants' Motion for summary judgment in all respects and deny the Motion for

Summary Judgment.

Respectfully submitted this 22nd day of November, 2016.

By:  */s/ Aimee M. Bove*

Aimee M. Bove, #36915
BKN Murray LLP
6795 E. Tennessee Ave, Ste. 330
Denver, Colorado 80224
Phone: (303) 758-5100
Fax: (303) 758-5055
Email: above@bknmurray.com
*ATTORNEY FOR PLAINTIFFS RIVERSIDE
STORAGE AND RECYCLING CENTER,
CRAIG SHRIVER,KEVIN COX, JOHN
HOOD, AND KIMBERLY HILLS MOBILE
HOME PARK*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of November, 2016, a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT** was served via email on all parties of record, as follows:

Patrick A. Singer, Esq.
Kresl & Johnson PC
130 Rampart Way, Suite 200
Denver, CO  80230
psinger@kresljohnson.com

J. Andrew Nathan
Brenden Desmond
Nathan Dumm & Mayer P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
anathan@ndm-law.com

/s/*Ilene Dell'Acqua*
BKN Murray LLP