**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02325-CMA-NYW

**RIVERSIDE STORAGE AND RECYCLING CENTER**, a Colorado Limited Liability Corporation;
**CRAIG SHRIVER**, individually;
**KEVIN COX**, individually;
**JOHN HOOD**, individually; and
**KIMBERLY HILLS MOBILE HOME PARK**, a Foreign Limited Liability Company

Plaintiffs,

v.

**CITY OF FEDERAL HEIGHTS**, a Colorado Municipal Corporation;
**KEN EKROSS**, in his individual capacity;
**JACQUELINE HALBURNT**, in her individual capacity; and
**STEVEN DURIAN**, in his individual capacity,

Defendants.

---

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Defendants respectfully present their Reply in support of Motion for Summary Judgment.

As outlined in the Motion, Plaintiffs bear the burden of showing by a preponderance of the evidence that their procedural due process rights were violated, requiring them to prove: (1) the existence of a recognized property interest and (2) failure to receive the process that is due. *McAllilster v. Price,* 615 F.3d 877, 881 (7th Cir. 2010).; *Delgado v. Department of Interior,* 153 F.3d 726, 726 (10th Cir. 1998) (citing **Mathews v. Eldridge,** 424 U.S. 319, 332-35 (1976)). Plaintiffs do not dispute the burden of proof, or the elements they must prove, Defendants have no burden of proof regarding Plaintiffs' claims.

Plaintiffs rather apply the "kitchen sink approach" in their Response. The hope seems to be that by throwing out a forest of irrelevant facts, it will appear that an issue exists for a jury to consider. The goal of the this Reply is to return to the pertinent facts.

As this Court's Civil Practice Standards make clear, "if the respondent has the burden of proof, for each element identified by the movant as lacking proof, the respondent should identify the facts and their location in the record that establish that element." CMA Civ. Practice Standard 7.1E(b)(2)(C). Once the moving party shows the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to establish a genuine issue of material fact. *Vitkus v. Beatrice Co*., 11 F.3d 1535, 1539 (10th Cir. 1993). In their Response, Plaintiffs present responses to the undisputed material facts presented by Defendants in their motion brief. Of the 78 statements of material facts set forth in the motion brief, Plaintiffs dispute only 6, 8, 9, 12, 18, 19, 33, 34, 39, 43, 51, 54, 65, and 68.

Plaintiffs also set forth a lengthy "Additional Statement of Disputed and Undisputed Material Facts," but because Plaintiffs have the burden of proof and Defendants have no claims to prove, the only recognizable purpose for these facts would be to identify the facts that establish an element Plaintiffs must prove. CMA Civ. Practice Standard 7.1E(b)(2)(C). Plaintiffs fail to identify facts that establish an element of their procedural and substantive due process claims. Furthermore, in paragraphs 1, 2, 5, 7, 11-16, 18, 21-24, 26-27, 33, 35, 41, 46-47, 49, 54, 55, 57, 59 60, 63-65, 67, 69, and 71-75, Plaintiff did not comply with Rule 56(c)(2) by presenting facts not supported by admissible evidence. Indeed, Plaintiffs appear to set forth a number of additional

facts simply to cast aspersions on Defendants.  These facts fail to create any material issues of fact. A review of the undisputed material facts, and those facts Plaintiffs admitted, demonstrates that Plaintiffs cannot meet their burden of showing a *genuine* dispute about a *material* fact that would make trial necessary.

## RESPONSES TO PLAINTIFFS' "ADDITIONAL STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS"

In response to Plaintiffs' facts, the Defendants admit to the following paragraphs for the purposes of this Motion:  2, 8-10, 15, 16, 19, 22, 23, 28, 30, 31, 35, 36, 41, 45, 48 52, 58, 59. 64-67, 73, and 76.  Defendants, however, do not admit that these facts are material to the case.  Defendants respond to the remaining statements as follows:

1.  Admit for this motion but note underlining is not in the original document.

3.  Admit for this motion but Defendants reserve the right to show Plaintiffs should have known through due diligence that the mobile homes they tried to "flip" had been designated Tier 1 Debris.

4.  Deny.   This is an immaterial point as Plaintiffs cannot show a recognized property interest, nor can they show deprivation of process due.   Moreover, the deposition testimony cited refers to the mayor "speaking about Kimberly Hills and blight," and does not support Plaintiff's contention that the mayor "called Kimberly Hills Mobile Home Park blight."

5.  Deny.   This is an immaterial point as Plaintiffs cannot show a recognized property interest, nor can they show deprivation of process due.   Moreover, it does not follow that because Kell Straits instructed Marci Rusin to "focus on rental spaces of KH" that Federal Heights has a "history of intentionally using its official power to harm

3

Plaintiff Kimberly Hills and its management." Rather, these Officials are following their legal duty of Municipal Court Enforcement. [*See* Movant's Reply Appx. p. 1-2, Second Affidavit of Tim Williams]. Furthermore, these facts are immaterial as Kimberly Hills is not suing Defendants for focusing on it. Rather, this is a random "throw everything at the wall" complaint that has nothing to do with the case.

6. Admit for this motion. [*See also* Reply Appx., p. 3-4, Durian Depo., p. 169:5-20].

7. Deny as to the date. Mr. Shriver first contracted with the owners of Bella Vista and Eastwood Village during the Spring of 2014, about six months after the September 2013 flooding. Deny as to Mr. Shriver contracting at a later date to "properly dispose of" remaining homes. Mr. Shriver contends he did not know about the Tier 1 Debris designation and therefore he did not follow the proper disposal procedures outlined in the State Guidance documents. This is also immaterial as Plaintiffs cannot show a recognized property interest, nor can they show deprivation of process due.

11-13. Admit for this motion, although the code enforcement was unrelated to the circumstances of this case and part of appropriate enforcement activity. [*See* Reply Appx. p. 1-2, Williams Aff.]. Furthermore, these facts are immaterial as Kimberly Hills is not suing Defendants for focusing on it. Rather, this is a random complaint that has nothing to do with the case.

14. Deny. This is not a genuine disputed fact as it is unsupported by the citation. The Purchase Agreement cited is between Craig Shriver and The Mobile Home Pros, LLC. Plaintiffs Cox and Hood were merely financing The Mobile Home Pros, had no interest in purchasing the homes, and held no ownership powers. [Movant's Appx. p.

362-365, Cox Depo. 19:4-9, 20:7-15, 30:22-34:13, 156:19-157:5; Movant's Appx., p.

367, Hood Depo. 24:15-22; Movant's Appx., p. 369, Wilson Depo., 33:2-14].

17.  Admit for this motion, except for "Riverside Storage tore out all wet materials,"

which is denied.  This is not a genuine disputed fact as it is unsupported by the citation.

While Mr. Shriver's affidavit does state that he tore out "all wet materials," it is clear from

the context that he is not including areas such as behind the studs, which were wet

materials that were not torn out.

18. Admit for this motion but note underlining is not in the original document.

20. Deny.  This is not a genuine disputed fact as it is unsupported by the citation.

The timeline referenced states, "Summer 2014 – Twenty-six flood-damaged homes

were brought into the City of Federal Heights during the summer of 2014.  Initially, it

was not clear where the homes had originated or how badly the homes had been

damaged."  The citation also indicates the permit applications disclosed only "flood

damage" and not that the mobile homes were from Evans.  The self-serving testimony

of Mr. Shriver lacks foundation to show what the City of Federal Heights knew at a

certain point in time and is therefore inadmissible speculation.

21. The first part is denied.  This is not a genuine disputed fact as it is unsupported

by the citation.  The cited testimony of Mr. Durian indicates that the IRC is the standard

and that the State Handbook incorporates portions of the IRC.  The second sentence is

admitted for this motion.

24. Admit for this motion, except as to the identification of date and recipients, which

is not a genuine disputed fact because it is not stated on the cited document.  Note: the

document states, "The local jurisdiction shall control when and if the unit can be re-occupied or if the unit is to be demolished."

25. Deny.  These are not genuinely disputed facts as the citations do not support the allegations.  The citation does not reference Plaintiffs Cox's and Hood's mobile homes receiving insignias, nor does it mention manufactured homes having to meet "all standard of the Colorado Division of Housing's Installation Handbook."  While the cited testimony tangentially refers to some of these concepts, it does not support the fact alleged and therefore the dispute is non-genuine.

26-27.   Admit, except to the implication that Mr. Ekross knew the home was declared Tier 1 debris, destroyed, and uninhabitable; and except to the implication a certificate of occupancy would be issued if repairs were completed as these are unsupported by the citation.

29. Deny.  Mr. Shriver stated in his deposition that he did not have any contact with Mr. Ekross at Thornton.  [Reply Appx. p. 5-6, Shriver Depo, 29:3-7]. However, the fact is not material to the case at issue and, even so, Plaintiffs have filed a sham affidavit to attempt to create a disputed issue of fact.

32. Deny as this is Mr. Shriver's attorney's view as to Federal Heights position and not a citation to an admission by any Defendants.

33. Admit, except to the implication that Mr. Ekross knew about the City of Evans' designation and still did not find the homes unsafe.

34. Deny.  This is not a genuine disputed fact as it is unsupported by the citation. The cited deposition pages simply do not show that Plaintiffs relied on the City of

6

Federal Heights "codes, policies and representations that City of Evans flooded homes can be placed and occupied in Federal Heights."

37. Admit for the purpose of this motion.  Note that Mr. Ekross was rehired July 21, 2014, before the August 28, 2014 9News article referenced in 35, above.  Mr. Ekross is referring to different contacts by 9News.

38. Admit for this motion, except to statement that Mr. Ekross could not determine the homes status as such conclusion is not supported by Plaintiffs' citation to the record.

39. Deny as the statement is not supported by the record.  Plaintiffs admit in their Statement of Undisputed Fact, para. 38, that Mr. Ekross also visited Evans and spoke with Mr. Ratkai in making his determination.

40. Deny as unsupported by the citation.  The form also marks in red those homes that were unrepairable and must be destroyed.  Furthermore, Mr. Ratkai's letter stated such homes were destroyed.  [Movant's Appx. to Motion, p. 21-22].

42. Admit for this motion as Mr. Ratkai saw the damage and informed Mr. Ekross of same.  [Movant's Appx. p. 2, Ratkai Depo, 10:15-12:8; p. 167, Ekross Depo. 13:1-16:8].

43. Admit for this motion but note Evans was concerned about multiple potential sources of contamination.  [Reply Appx. p. 7-8, Ratkai Depo 107:24-108:2].

44. Denied.  This is not a genuine disputed fact as it is unsupported by the citation. The quoted deposition testimony does not show that Mr. Durian removed the two insignias after rehiring Mr. Ekross and in response to the 9News investigation, nor does it show that the mobile homes were "remediated."

46. Admit for this motion, except for the characterization by Plaintiff's counsel that

Mr. Durian's letter is "converse" to his deposition testimony, which is not a genuine disputed fact because it is unsupported by the citation.  The testimony and statement in the letter are compatible because the inspection of the electrical and plumbing requirements go to the interior inspection of the mobile homes.

47. Admit for this motion, except for Plaintiffs' counsel's characterization of the email, which ignores the ability of a third-party agent of the inspector to remove the insignia and mischaracterizes the mandatory requirement of the "new information or installation changes."  This does not create a genuine dispute of fact as the allegation is not supported by the cited documents and is inadmissible hearsay.

49. Admit, although the statement is incomplete and inadmissible hearsay.

50. Admit, except Plaintiffs' mischaracterization of the evidence (i.e. dodging the question).  The evidence indicates Mr. Durian did in fact contact SAFEbuilt to coordinate removal of invalid insignias.  This does not create a genuine dispute of fact as the allegation is not supported by the cited documents.

51. Admit, except Plaintiffs' counsels' mischaracterization of the circumstances, which are more completely set forth in the deposition testimony and email correspondence between Mr. Durian and Mr. Hanger.  This does not create a genuine dispute of fact as the allegation is not supported by the cited documents. [Movant's Appx., pp. 172-173, Deposition of Steven Durian 204:4–208:20].

53. Deny.  This does not create a genuine dispute of fact as the allegation is not supported by deposition testimony, which states that Mr. Durian took the insignias off because he "didn't want them to be misconstrued as a certificate of occupancy."

54. Deny.  This does not create a genuine issue of fact as the allegations are not supported by the document cited.  The September 3, 2014 Order and Notice of Removal is signed by Mr. Ekross, not Mr. Durian, and the assertion that it does not comply with "Federal Heights' and Colorado Department of Housing regulations and policies for flood homes" is mere argument of counsel with no citation to supporting evidence, as there is none.

55. Admit for this motion, but note this is a partial quote, does not include the emphasis in the original, and is inadmissible hearsay.

56. Admit, except the pages cited by Plaintiff also provide other definitions of nuisance, including "any activity, operation, condition, building, structure, place, premises or thing which is injurious to the health or safety of the citizens of the city, or which is offensive to the senses so as to interfere with the comfortable enjoyment of life or property."  Nuisance Section 30-103(6).  [Respondent's Appx. p. 156].

57. Admit, except as to "did not provide for appeal process," which appeal process was indisputably available and Plaintiffs did not avail themselves of it.  [*See* Motion brief, p. 24-25, *Each Plaintiff chose to not avail themselves of the available post deprivation procedure.*]

60. Defendants object to Plaintiffs' argumentative and inadmissible hearsay set forth as fact.  Defendants admit to sending the Order.

61. Admit, as to the parties.  Officials at Evans and Mr. Cowan knew about the Tier 1 Debris designation, but this is not a material disputed fact for purposes of granting summary judgment.  [*See* Movants' Appx. p. 21-24 – Letter from Evans to Aden Hogan

(Depo. Ex. 63); Letter from Evans to Mr. Cowan (Depo. Ex. 40)]. Defendants reserve the right to show that Plaintiffs should have known about the Tier 1 Debris designation, but failed to exercise due diligence.

62. Admit, although they did investigate them.

63. Denied as immaterial and inadmissible hearsay that does not go to any of the elements Plaintiffs must prove to successfully present their claims.

68. Deny. This does not create a genuine dispute because the cited information does not support Plaintiff's allegation. The Court merely found that Federal Heights had not met its beyond-a-reasonable-doubt burden for the criminal citation, it did not hold that the Notice and Order was "illegal." Moreover, the Court's analysis lacks enough detail to all an understanding of the legal basis for the decision. Additionally, implicit in the Municipal Court's decision is that had it been shown that Mr. Shriver knew about the Tier 1 Debris designation, he would have been required to remove the mobile home, as directed by the City. [Respondent's Appx. p. 216-21, 180:1-8]. Finally, Mr. Shriver ultimately admitted he did, in fact, receive the enclosed documentation. [Movant's Appx., p. 204, Shriver Depo., 92:22-93:15; Movant's Appx., p. 177-195, (Depo. Ex. 30)].

69. Defendants object to Plaintiff's counsel's argument set forth as a fact (i.e. Federal Heights was not done with Plaintiff…"). Defendants admit Ms. Weibold was cited for failure to prune and sentenced. This sentence was later overturned on appeal as the citation was civil in nature. [Respondents' Appx., p. 222-225].

70. Admit. The Adams County District Court apparently had the same problem evaluating the Municipal Court's reasoning that is identified in fact 68, above.

71. Deny.  This does not create a genuine dispute because the citation does not support the allegation.

72. Deny.  This is immaterial because it does not go to any of the elements Plaintiffs must prove to support their due process claim.  Furthermore, no charges were filed against Mr. Ekross.  [Reply Appx. p. 9; Disposition Letter].

74. Admit for this motion but note that this is inadmissible hearsay.

75. Admit for this motion except for the implication that Federal Heights was referring to Kimberly Hills whereas the audio refers to all mobile home parks in the City, and also that this is inadmissible hearsay.

77. Admit for this motion, but note this is immaterial as these are not homes that Mr. Shriver placed in Kimberly Hills that were ordered to be removed.

78. Deny.   Plaintiff's interpretation of C.R.S. § 24-32-3323(4)(a) misconstrues the statute because Mr. Shriver was not "acting personally" but was instead acting on behalf of his business, Riverside Storage, Inc.  But this is a dispute about the interpretation of a Colorado statute, which the Court can resolve, if necessary, and it does not create a dispute regarding a material fact.

79. Deny first sentence because Mr. Shriver solicited Kingsley Management who then solicited the "dealers and sellers" to contact Mr. Shriver.  [*See* Reply Appx. p. 10-11 – Deposition of Jeff Bennett, 12:6-19].  This does not create a material disputed fact because even assuming this allegation, Plaintiffs cannot support any element of the due process claim.  Deny second sentence because Mr. Shriver did not disclose "any and all flood damage" since he did not disclose the Tier 1 Debris designation.  [*See*

Respondent's Statement of Disputed and Undisputed Fact, 61, above].  This does not create a material disputed fact because even assuming this allegation, Plaintiffs cannot support any element of the due process claim.

## **LEGAL ARGUMENT**

In their Response, Plaintiffs' attempt to apply obscure and irrelevant legal arguments to their immaterial facts in an attempt to confuse the issue and avoid summary judgment.  It is clear, however, that Plaintiffs' claims fail as a matter of law.

Plaintiffs' arguments are dealt with in turn below, but first it must be noted that Movants' (Defendants') undisputed facts 1-5, 7, 10-11, 13-17, 20-32, 35-38, 40-42, 44-50, 52-53, 55-64, 66-67, and 69-78, compel summary judgment in favor of Defendants.

As outlined in the Motion, these *undisputed* facts include showing that historic flooding in September 2013 led to extensive destruction of mobile home parks in Evans, Colorado which caused the de facto Building Official for the City of Evans, Zach Ratkai, to declare mobile homes as Tier 1 debris and a danger to public health.  Rather than destroying and disposing of all the homes that had been designated by the City of Evans, Mr. Shriver removed homes he believed could be resold, but at least one home was found to still contain dangerous and potentially deadly bacteria when it was placed in Federal Heights. Mr. Shriver moved some of these cherry-picked Evans' homes to Federal Heights and did not disclose Evans' designations and orders. Yet, Federal Heights discovered the true nature of the homes and sent Ken Ekross to Evans to personally confirm the Tier 1 designation and orders of destruction with Mr. Ratkai.  In light of this, set permits for the homes designated as Tier 1 debris were revoked and the

mobile homes were ordered removed under its authority outlined in the International Residential Code (September 19, 2014 Notice).   No Plaintiff actually owned any of these homes at the time of the Order, nor did they have a dealer's license to sell mobile homes.   Yet, Mr. Shriver sold nine Tier 1 debris homes to Michael Wilson (not a Plaintiff). Futher, despite overturning the citation in municipal court, Mr. Shriver removed all of the mobile homes from Federal Heights. Despite having access to legal counsel, Plaintiffs never appealed the Federal Heights Notices.   Finally, the State of Colorado states that while some of the homes may be capable of being rebuilt, permission to place the homes is under the ultimate jurisdiction of the local authority.   Therefore, when viewed in the light of the applicable case law discussed in the motion brief, these undisputed facts alone compel summary judgment in favor of Defendants.

### A. Procedural Due Process

Plaintiffs point to ***Lujan v. G&G Fire Sprinklers, Inc.***, 532 U.S. 189 (2001) for the position that a contract carries a property interest.  This couldn't be farther from the facts of this case and the Supreme Court's holding.  First, in *Lujan*, the Court "assumed, without deciding" that there was a property interest in the contract.  ***Id.*** at 195.  The Court skipped over the property step and stated that regardless of the property interest, "California law afford[ed] respondent sufficient opportunity to pursue that claim in state court," and therefore, the due process claim failed.  ***Id.***  Second, the Plaintiffs here have a contract between private parties and Plaintiffs point to no Colorado state law affording Plaintiffs a property right.  *Lujan*, on the other hand, involved a contract between the State and a private party where significant portions of the state code afforded the

private party property and appeal rights. *Id.* at 191-93. Plaintiff points to no other case or state law showing that Plaintiffs have a property right in a contract between private parties.[1] Plaintiffs have no property interest for constitutional due process purposes and summary judgment must be granted in favor of Defendants.

### B. Colorado Law Does Not Convey a Property Interest

Next, Plaintiffs point to cases stating they have a right in a building permit. But Plaintiffs were not granted a building permit here. Furthermore, Plaintiffs' reliance on *Eason* is misplaced as the Court of Appeals stated that there was no property interest in the building permit, but rather in a favorable zoning interpretation. 70 P.3d 600, 606-7 (Colo. App. 2003). The Court used this fact to distinguish the case from other Tenth Circuit and Colorado Court of Appeals cases stating that a party had no right in a building permit. *Id.*, (citing *C.F. Lytle Co. v. Clark*, 491 F.2d 834 (10th Cir.1974), and *Mountain Gravel & Constr.Co. v. City of Cortez*, 721 P.2d 698 (Colo.App.1986)).

Second, the other cases cited refer to building permits where a government was estopped from applying new zoning regulations to a previously issued permit. *Crawford v. McLaughlin*, 473 P.2d 725, 730-31 (1970).[2] Here there was no rezoning affecting a building permit, but rather a set permit that was issued by mistake because of incomplete information. Cases cited by Plaintiffs make no mention of set permits for

---

[1] Plaintiffs point to *Lochner v. New York* for the premise that freedom of contract affords Plaintiffs a property right in the contract for purposes of the due process analysis. However, that case (and subsequent Supreme Court jurisprudence) is plainly inapposite. *See e.g. West Coast Hotel v. Parrish*, 300 U.S. 379 , 391 (1937) (stating "The Constitution does not speak of freedom of contract. It speaks of liberty and prohibits the deprivation of liberty without due process of law.").

[2] While difficult to track down as the case is not on Westlaw, Plaintiffs' reliance on *Richardson v. Butler*, 12-cv-02912 (D. Colo., Jan. 28, 2014) seems misplaced as the case involved a prisoner's 8th Amendment and ADA claims against the Colorado Department of Corrections and not building permits. There is also no such citation to *Cline v. Boulder*, 450 P.2d 335, 338 (Colo. 1969) in the case. A copy of the *Richardson* order is attached for the Court's reference. [Reply Appx. p. 12-37].

mobile homes that were revoked due to mistake and violation of state law. However, in the Tenth Circuit, as discussed in the motion brief, even if there are expenditures, the discretion and ability to revoke permits does not give rise to a property interest. ***Schanzenbach v. Town of La Barge***, 706 F.2d 1277, 1283-85 (10th Cir. 2013).

Third, Plaintiffs state that there is a property interest in the set permits because the Federal Heights Building Official does not have discretion in issuing permits. Plaintiffs premise this argument on the fact that the Building Official must follow the City's codes and procedures. Plaintiffs miss the point, however, as it is explicitly the codes and procedures (the IRC discussed in the Motion Brief, p. 17) that allow Defendants the discretion to revoke the permits when issued in error. Therefore, the Building Office does have discretion under the applicable codes and procedures.

Finally, even if the set permit somehow did provide a property interest, Plaintiffs' claims of substantial reliance are inaccurate. First, Mr. Shriver was under contract to clean up the City of Evans' homes regardless of where they were placed and his cleanup was well underway before set permits were issued. Second, there is no evidence that Kimberly Hills relied on the set permits, but rather it took action when a party told Ms. Weibold a home was coming into the Park—well before permits were issued. Plaintiffs cite to no evidence that Mr. Shriver cleaned up the City of Evans park or Kimberly Hills prepared lots *because* they received set permits. Rather, Plaintiffs took action first and then applied for a set permit after. Therefore, they could not, and did not, rely on the permits, and summary judgment must be granted in favor of

Defendants.[3]

### C. Plaintiffs Had (And Have) an Appeal Right—They Just Chose Not to Use It

Plaintiffs next argue that the City did not affirmatively advise them of the proper procedure for an appeal.  Plaintiffs wisely do not argue that they do not have an appeal right (still, to this day), but rather assert that they didn't know about it.  Yet, Plaintiffs fail to discuss how they did not even attempt to look (or ask) if they had an appeal right even though they were represented by counsel.   This argument is especially absurd given the fact that Mr. Shriver specifically challenged the Notice and Order of Removal in Court—and won.  Being intentionally blind to a right does not mean that such a right does not exist.   Nor is there any right to have a City provide legal advice to a represented party as to a published ordinance.  *City of West Covina v. Perkins*, 525 U.S. 234, 242 (1999). It is plain that Plaintiffs chose to not avail themselves of an appeal as part of a strategy, informed by years of experience in the industry and with the aid of legal counsel, to setup a potential claim against Defendants.  The Court should not permit this scheme and summary judgment should be granted in favor of Defendants.

### D. Plaintiffs' Fail to Show a Violation of Substantive Due Process

Plaintiffs next argue that the City's pattern and practice and deliberate indifference violated Plaintiff's substantive due process rights.

First, Plaintiffs state that Defendants' action here "was part of the pattern and practice of Federal Heights intentionally targeting Plaintiff Kimberly Hills to cause harm."

---

[3] Plaintiffs' lack of reliance on the set permits (and blatant disregard of the set permits) is seen in the fact that Mr. Shriver and Kimberly Hills switched locations of two City of Evans homes without even informing the City or revising the permits.  [Movant's Reply Appx. pp. 120, Shriver, Vol. I, 195:21-23].

However, Plaintiffs do not reference any case law stating that a pattern and practice of intentionally targeting a mobile home park for code violations rises to the level of pattern and practice for purposes of a due process claim that turns on revocation of a mobile home set permit.  This is likely because there is no such case law.

Rather, as Judge Blackburn noted, "pattern and practice is a term of art in employment discrimination litigation used to describe a particular type of claim asserted primarily in class actions initiated by the EEOC."  **Carney v. City and County of Denver**, 2006 WL 2884767, *3, fn. 3 (D. Colo. Oct. 10, 2006).  Even if one were to apply the pattern and practice theory to this case, "proving isolated or sporadic discriminatory acts . . . is insufficient to establish a prima facie case of a pattern or practice."  **Cooper v. Federal Reserve Bank of Richmond**, 467 U.S. 867, 875-76 (1984).  Instead, a preponderance of the evidence must show that is was "standard operating procedure—the regular rather than the unusual practice."  **Id.**

Far from showing that alleged discrimination against Kimberly Hills is the pattern and practice of Federal Heights, the evidence shows that it is typical for the City to issue code violations to anyone in the City that chooses to violate City code.  [*See* Movant's Reply Appx. p. 1-2, Second Affidavit of Tim Williams].  Additionally, spot checks are common as the City does not have the manpower to engage in city-wide enforcement every day.  [*See* Movant's Reply Appx. p. 1-2, Second Affidavit of Tim Williams].  Finally, the facts of this case show a distinct lack of pattern and practice: Defendants prevented Kimberly Hills from placing certain mobile homes in the Park once the mobile homes were discovered to have been declared Tier 1 Debris and ordered for

destruction by the City of Evans following historic, devastating flooding.   If preventing mobile homes from being placed in the Park was a pattern and practice, Kimberly Hills could cite other instances of such.   It cannot and Kimberly Hills was and is full. [Movant's Appx. p. 420, Kimberly Hills Depo. II, 243:2-13].   Therefore, this argument fails as a matter of law.

Next, Plaintiffs rely on **Green v. County of Pueblo**, 574 F.3d 1294 (10th Cir. 2009) for the premise that Federal Heights' deliberate indifference to whether insignias were issued properly violated their substantive due process rights.   While arguing that deliberate indifference can be enough to shock the conscience, Plaintiffs do not tell the Court how removing insignias in homes ordered to be removed "demonstrate[s] a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking,"[4] Nor do Plaintiffs' provide reference to any case, similar or otherwise, where a Court has actually found allegedly similar "deliberate indifference" to shock the conscience and compare them to this case.

Finally, Plaintiffs argue that these facts shock the conscience because, "There was no emergency.  The public was not in harm's way."  Yet, this is clearly contrary to all evidence, disputed or otherwise.   The home that Mr. Shriver intentionally failed to move, for example, contained evidence of E. coli, which could "cause severe abdominal cramps, bloody diarrhea and vomiting," and coliform bacteria which is evidence of "disease-causing bacteria, viruses, or protozoa and many multicellular parasites" of

---

[4] For example, in the case cited by Plaintiffs, the Tenth Circuit ruled a police officer speeding through a yellow light and killing another driver was not conscience shocking.  **Green v. Post**, 574 F.3d 1294, 1303-04 (10th Cir. 2009) (citing **Graves v. Thomas**, 450 F.3d 1215, 1221 (10th Cir. 2006)).

fecal origin.  [Movant's Appx. p. 72-80].  If the public was not in harm's way, the State of Colorado would have approved the homes that were removed from Federal Heights to be placed in Colorado.  They have not done so.  [MSUF #73, Movant's Appx., p. 404].  Plaintiffs' unilateral opinion that the mobile homes they tried to "fix and flip" were not dangerous and that dealing with them was not emergent runs counter to the facts.

### E. Qualified Immunity

Lastly, Plaintiffs argue that the individual Defendants are not entitled to qualified immunity.  Plaintiffs state in their Response that it is Defendants' burden to prove qualified immunity.  This statement of the law misses the mark by a wide margin, and makes a response difficult as Plaintiffs are attempting to create precedent out of thin air.  Instead, Durian, Ekross, and Halburnt's assertions of qualified immunity alone "creates a presumption that they are immune from suit."  *See Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016).  Moreover, Plaintiffs' argument that an issue of material fact, in and of itself, precludes qualified immunity is incorrect.  Even if there were material issues of fact, they would not preclude an examination under prong two of the qualified immunity analysis (i.e. whether the right allegedly violated was clearly established at the time of the incidents giving rise to the suit).  Otherwise qualified immunity would never be granted in cases where a Motion for Summary Judgment on liability is denied.  Issues of material fact do not affect whether a right was clearly established at the time of Defendants' conduct.  *See Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).  Here it is clear that no such right is established.

As stated in the motion, to overcome the second prong of qualified immunity,

Plaintiffs must point to a Supreme Court or Tenth Circuit decision on point, or weight of authority from other Circuits. ***Dodds***, 614 F.3d at 1206. Plaintiffs merely point to the International Residence Code (which they confusedly state earlier in their Response doesn't apply to the facts of this case) and State of Colorado "decrees" for the premise that the law was clearly established. However, Plaintiffs point to no Tenth Circuit or Supreme Court decision analyzing these portions of the Code or "decree"—or any circuit precedent for that matter. Rather, Plaintiffs only point to one case, ***Patrick v. Vilar***, 953 F.2d 1240, 1243 (10th Cir. 1992) for support of their premise. Yet, even a cursory glance at this case makes clear that this case is inapposite. *Patrick* does not involve the IRC or state decrees. Instead, it is a ruling affirming in part and reversing in part a grant of a Motion for Summary Judgment in an employment case. ***Id.*** at 1242-43. Therefore, Plaintiffs have failed to meet their burden of establishing that Durian, Ekross, and Halburnt violated a clearly established right and the Court should dismiss the claims against these individual Defendants on the grounds of qualified immunity.

Respectfully submitted this 16th day of December, 2016.

*s/ J. Andrew Nathan*
J. Andrew Nathan
Brenden Desmond
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO  80237-2776
Phone Number: (303) 691-3737
Fax: (303) 757-5106
anathan@ndm-law.com
bdesmond@ndm-law.com
*Attorneys for Federal Heights Defendants*

*/s Patrick A. Singer*
Patrick A. Singer, 39738
Kresl & Johnson, P.C.
130 Rampart Way, Ste. 200
Denver, CO 80230
Phone: (303) 336-2100
Fax: (303) 388-1749
psinger@kresljohnson.com
*Attorney for Defendant Steven Durian*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December, 2016, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses:

Stuart B. Borne, Esq.
Aimee M. Bove, Esq.
BKN Murray, LLP
6795 E. Tennessee Ave., Ste. 330
Denver, Colorado 80224
Phone: 303-758-5100
*Attorneys for Plaintiff*

*s/ J. Andrew Nathan*
J. Andrew Nathan