**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02325-CMA-NYW

RIVERSIDE STORAGE AND RECYCLING CENTER, a Colorado Limited Liability Corporation, and
CRAIG SHRIVER, individually; and
KEVIN COX, individually; and
JOHN HOOD, individually; and
KIMBERLY HILLS, a Limited Liability Company

Plaintiffs,

v.

CITY OF FEDERAL HEIGHTS, a Colorado Municipal Corporation;
KEN EKROSS, in his individual capacity;
JACQUELINE HALBURNT, in her individual capacity;
STEVEN DURIAN, in his individual capacity,

Defendants.

---

**PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF CHRIS TREMAINE AND KELLY SPENCE, PURSUANT TO FED. R. EVID. 702**

---

Plaintiffs, by and through counsel, hereby submit the following motion to exclude the entire testimony and opinions of Defendants' experts Chris Tremaine and Kelly Spence, pursuant to Fed. R. Evid. 702, and in support thereof state as follows:

**D.C.COLO.LCivR 7.1 Certificate of Conferral**

On January 30, 2017, the undersigned e-mailed counsel for Defendants describing the basis for this motion and the relief requested herein. Defendants wrote back asking for specific grounds for the motion. Undersigned responded and Defendants' counsel stated they oppose this Motion.

## INTRODUCTION

Plaintiffs are individuals and entities engaged in various facets of the mobile home industry, who were each deprived of substantive and procedural due process when Defendants, a Colorado municipality and its employees, voided permits, removed occupancy insignias, and ordered Plaintiffs' property removed from the municipality without giving notice and an opportunity to be heard, and with arbitrary and capricious disregard for Plaintiffs' protected property interests. Fourth Am. Compl., Docket No. 78; Pls.' Resp. Defs.' Mot. Br. Summ. J. (hereinafter "Pls. Summ. J. Resp."), Docket No. 96.

To support their due process claim, Plaintiffs retained Roderick Knoll, President of Manufactured Housing Resources Group in Louisville, CO, as an expert witness on the subject of damages. Ex. A (Knoll Report, Sept. 16, 2016), and Ex. B (Knoll Report, Oct. 25, 2016). According to Mr. Knoll, Plaintiffs' damages from the deprivation of their due process are as follows:

(a) Riverside/Shriver: $967,534
(b) Cox: $94,900
(c) Hood: $37,997
(d) Kimberly Hills: $356,707

*Id.*

On October 14, 2016, Defendants disclosed their expert(s) on damages, Chris Tremaine and Kelly Spence of Tremaine Enterprises Inc., along with a written report ("TEI Report").[1] Ex. C (TEI Report, Oct. 13, 2016). Despite frequently labeling opinions

[1] Defendants disclosed both men as experts without specifying who will testify. Ex. K (Defs.' Expert Disclosures). The report glazes over distinctions between the individuals and the entity when discussing experience and qualifications. Ex. C at 3, 49-51.

in terms of all Plaintiffs, the TEI Report does not directly address damages for Cox, Hood, or Kimberly Hills. *Id.* at 114. It solely attempts to cast doubt on Riverside/Shriver's projected profits from installing fifty homes in Kimberly Hills, and to greatly inflate projected expenses. Ex. C at 48.

## SUMMARY OF ARGUMENT

The entire testimony and opinions of Mr. Tremaine and Mr. Spence, as contained in the TEI Report, do not meet the standard of Fed. R. Evid. 702. In line with the Rule, the deficiencies include: (1) Mr. Tremaine and Mr. Spence are not qualified to opine on the intermediary conclusions in the TEI Report, (2) their opinions are based on insufficient review of applicable evidence, improper reliance on inapplicable evidence, and not on any particular or supported methodology, and (3) their opinions are unhelpful because they do not address the reality of Shriver's planned approach.

## ARGUMENT

### *A. Summary of the TEI Report*

The TEI Report discloses a number of primary opinions. Ex. C at 1-2. These opinions center on the question of the proper remediation technique for homes affected by the 2013 flood and the cost to carry out remediation following the selected technique.[2] These opinions are offered without evidence of the alleged contamination in the 2013 flood waters affecting the subject homes. Ex. C at 51-52:19-3.

The TEI Report summarizes its conclusions as follows:

---

[2] These homes were transported from Eastwood Village and Bella Vista Mobile Home Parks, located in the City of Evans, which experienced heavy flooding.

> It is the professional opinion of Tremaine Enterprises, Inc., that Mr. Shiver did not follow required protocol set forth by governing bodies and or other agencies to who oversee the health and safety of the population to which reside within their districts. It is TEI's professional opinion that Mr. Shriver did not follow remediation protocol as set for by the IICRC/ANSI and suggested by the Certified Industrial Hygienist who tested two units. It also appears Mr. Shriver/Plaintiff(s) did not take into consideration the possible crosscontamination into the community of Kimberly Hills. Based upon TEI's cost analysis as it pertains to the required restoration of the contaminated units, Mr. Shriver's cost projections as it pertains to restoration costs (home repair) is not accurate.

*Id.* at 48.

The report includes a number of intermediary opinions that are not as clearly disclosed, each of which is necessary for arrival at the ultimate opinions. These include: (a) that the City of Evans' and Federal Heights' guidelines require containment during demolition, *id.* at 17; (b) that containment control would have been costly and may have been impossible to provide, *id.* at 17; (c) that certain U.S. Department of Housing and Urban Development regulations may apply to the home, *id.* at 30; (d) that a certain standard created by the Institute of Inspection Cleaning and Restoration Certification (IICRC) is applicable to these homes, *id.* at 32; (e) that the homes required near complete reconstruction in order to meet the remediation protocol, *id.* at 43; and, (f) that Shriver did not follow these containment or remediation protocols, *id.* at 45, 48. Another section of the report addresses the market value of Shriver's investment, which depends almost entirely on the hearsay opinions of an <u>undisclosed witness</u> who owns an 80-unit mobile home park. Ex. C at 112-14. The Report concludes that Riverside/Shriver would have lost money if Defendants had not interfered with their investment. *Id.* at 2, 113.

***B. Legal Standard***

The admissibility of expert opinions is governed by Fed. R. Evid. 702. The rule imposes three requirements for admission of expert testimony:

> First, the expert must be qualified by specialized knowledge, skill, experience, training or education to testify on the subject matter of his or her testimony. Second, the testimony must be based upon sufficient facts or data, the product of reliable principles and methods, and the product of the reliable application of these principles and methods to the facts of the case. Finally, the proffered expert testimony must be relevant to an issue in the case and thereby assist the jury in its deliberations.

*Squires ex rel. Squires v. Goodwin*, 829 F.Supp.2d 1041, 1047-48 (D. Colo. 2011) (internal citations and quotation marks omitted); *United States v. Crabbe*, 556 F.Supp. 1217, 1220 (D. Colo. 2008) (The proponent of the expert testimony bears the burden of proving the requirements of Rule 702 by a preponderance of the evidence.)

***A. The TEI Report Does Not Meet The Standard Set By Fed. R. Evid. 702.***

**1. Mr. Tremaine and Mr. Spence are not qualified to render a number of the opinions upon which their report relies.**

Defendants rely on Mr. Tremaine and Mr. Spence to render opinions far afield from their area of knowledge and experience. According to their *curricula vitae*, neither Mr. Tremaine nor Mr. Spence have any specialized knowledge, skill, experience, education or training related to (1) interpreting local, state, and national law, including as it relates to proper standards for demolition and remediation; (2) recognizing mold and other organisms based on a visual review of photographs or understanding the physical

and biochemical effects of flooding on homes, particularly mobile homes; or (3) the mobile home market, especially in the greater Denver, Colorado area.[3]

In particular, neither Mr. Tremaine nor Mr. Spence have any legal education or other specialized training that would qualify them to interpret the City of Evans', Federal Heights', or the Department of Public Health and Environment (CDPHE) guidelines to determine whether they required containment during demolition, nor to interpret U.S. Department of Housing and Urban Development (HUD) regulations to determine whether they apply to the homes. *Cf.* Ex. C at 17 (interpreting City of Evans' and Federal Heights' containment guidelines); *id.* at 27 (interpreting CDPHE protocol); *id.* at 30, 35 (interpreting HUD regulations). Moreover, they have no experience or training that would qualify them to conclude, based on a visual review of photographs, that contaminants such as mold were present, or the extent of structural damage necessitating repairs. *Cf. id.* at 21-24, 26, 29 (referring to evidence of microbial contamination). Finally, Mr. Tremaine and Mr. Spence do not work in the field of rental properties and have no qualifications to understand the various market factors affecting Shriver's claimed damages from lost profits, particularly as they relate to mobile homes in and around Federal Heights. *Cf. id.* at 112 (discussion of market factors).[4]

These opinions underlie the ultimate conclusions of the TEI Report—that Mr. Shriver would not have been able to remediate the homes in his desired fashion, that

---

[3] Plaintiffs do not presently dispute Mr. Tremaine or Mr. Spence's qualifications as adjustors and claims consultants or their ability to use Xactimate software to estimate replacement costs for property claims. *See* Ex. E (Mr. Tremaine's and Mr. Spence's curricula vitae). Plaintiffs reserve the right to dispute this based upon information obtained at an evidentiary hearing. See section D, *infra*.

[4] The fact that these were also all assumptions made by Mr. Tremaine and Mr. Spence without sufficient factual basis will be addressed in the section below discussing reliability.

the cost to do so would have been prohibitive, and finally that his expected return would not have compensated him for the repairs. *See* Ex. C at 48 (conclusions). If Defendants had established the level of contamination present in the homes, the applicable legal standards Shriver was bound to follow to complete his remediation, or baseline information regarding the mobile home market, then Mr. Tremaine or Mr. Spence may have used their expertise in Xactimate software to calculate the cost associated with following those standards. However, they did not. In fact, testimony reveals the opposite—that there was no evidence of what, if any, types of containments from the flood waters entered the flood-affected homes. Ex. D at 88:9-12 (City of Evans did not test the flood water or the affected soil in Eastwood Village or Bella Vista Mobile Home parks).

In sum, this fails to meet the threshold requirement under Rule 702 that the expert be qualified to render his or her opinions, and as such the Court should strike the testimony and opinions of Mr. Tremaine and Mr. Spence. *Squires*, 829 F.Supp.2d at 1047-48; *see also Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (holding that a district court properly excluded opinions of an expert with no training or experience in a damages analysis or a particular damages model); *Broadcort Capital Corp. v. Summa Medical Corp*., 972 F.2d 1183, 1195 (Cir. 1992) (holding that a district court did not abuse its discretion excluding an expert witness with some general experience and education in the field but who lacked a sufficient basis to qualify as an expert in the particular field).

**2. The TEI Report Is Based On Insufficient Review Of Applicable Evidence, Improper Reliance On Inapplicable Evidence, And No Particular Or Supported Methodology.**

*a. The TEI Report is based on insufficient review of applicable evidence related to the actual homes at issue in the case.*

In order to be admissible, an expert's opinion must have a sufficient factual basis. *Squires*, 829 F.Supp.2d at 1047-48. First, the TEI Report did not consider any discovery from Plaintiffs' expert on damages. In fact, Mr. Tremaine and Mr. Spence admit they did not review any evidence which formed the basis for Plaintiffs' damages report and which relates to the condition of the actual homes in question.

> It should also be noted, MHRG [Plaintiffs' damages expert] indicated they inspected all units to varying degrees. TEI cannot determine if photographic evidence of said inspection or evidence of current condition of the units as it pertains to damages, level of demolition, support of claimed remediation, or degree of completion of restoration has been provided. If photographic evidence has been taken by MHRG please forward for our review. " (p.42). In short, Mr. Tremaine and Mr. Spence do not actually know whether the homes in question were damaged, demolished, remediated, or restored.

Ex. C at 42.

Second, concerning the measure of profits, Mr. Tremaine and Mr. Spence did not rely on any actual data to evaluate Riverside/Shriver's claimed profits. The TEI Report admits that "[i]ndustry standard data was not available at the time of this report to confirm and/or deny whether assumptions used are reasonable." While it is not clear that "industry standard data" in particular is the best evidence of lost profits in the mobile home rental industry, there is no evidence that Mr. Tremaine or Mr. Spence reviewed any historical evidence of profits from Riverside/Shriver or any other applicable entity to evaluate the market for mobile home rentals.

In short, Mr. Tremaine and Mr. Spence did not obtain the necessary data to conduct their review.[5] They did not inspect or obtain evidence concerning the state of the homes, which is essential to the question of how much remediation was required and what it would actually cost. They also did not obtain any data concerning the mobile home rental market in and around Federal Heights. Based on this lack of factual support, their opinions should be excluded.

*b. The TEI Report improperly relies on inapplicable evidence that is not related to the actual homes at issue in the case.*

Rather than evidence about the actual homes at issue, the TEI Report is based on speculation stemming from the 2013 flood conditions and draws its opinions from a collection of information that has no bearing on the case.

The TEI Report begins its review by summarizing a Wikipedia article on the 2013 flood, Ex. C at 3-5, highlighting aerial pictures of the flood *id.* at 9-11, and summarizing news articles regarding the flood, *id.* at 12-13. This information at best provides a background to the case and does not support Mr. Tremaine and Mr. Spence's conclusion that <u>all</u> materials within <u>all</u> the homes were likely contaminated. Moreover, the TEI Report draws several additional conclusions regarding the scope of necessary remediation based on photographs of damaged homes; however, the report does not identify the homes in the photos. Ex. B, p.9 ("The home inspection photos do not identify the subject homes. I am not clear as to whether TEI inspected the homes in person or relied upon second-hand inspections.") More significantly, the TEI Report

[5] As discussed above, even had they obtained the data, they would not have been qualified to draw all the various conclusions reached in the report.

heavily relies on an environmental analysis report ("RDS Report") completed on two homes mid renovation that are not the involved in this lawsuit. Ex. C at 33-34; RDS Chris Bacheldorf/Zinc Homes, Ex. F The only data TEI considered that concerned the homes in question was the exhibit breaking down repair and setup costs from Plaintiffs' own expert report.[6]

Finally, Mr. Tremaine and Mr. Spence's opinions concerning the profitability of the mobile home rentals is based solely on discussions with a single undisclosed park owner. *Id.* at 112. While Fed. R. Evid. 703 allows experts to rely on hearsay evidence to form their opinions, the evidence must be of a type "reasonably relied on by experts in the field." *In re Swine Flu Immunization Products Liability Litigation*, 508 F.Supp. 897, 904 (1981). It also must be independently verified. *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993). As indicated above, not only did Mr. Tremaine and Mr. Spence not independently verify the information from the undisclosed park owner/landlord, but they relied on the testimony in lieu of "industry standard data." *Id.* It is unlikely that experts in the field of claims/adjusting frequently or reasonably rely on firsthand testimony of single property owners to rebut insurance coverage quotes, and even less likely that they rely on such testimony to address issues of rental market profitability, which is outside the scope of their expertise. The data relied on by the experts is not specific to the homes in question and does not meet the requirements of Rule 703.

---

[6] The inclusion in the report of various letters, rules and regulations is also unhelpful because it is outside the scope of these experts' opinion to draw any conclusions based on a review of those materials.

*c. The TEI Report is not based on any particular or supported methodology and is replete with unsupported assumptions.*

The TEI Report is also based on unreliable methodology. First, the report does not disclose any particular experience, principle, or methodology on which the opinions are based. *See United States v. Jacoby*, 10- 00502 (D. Colo., July 26, 2012) (attached as Ex. G) ("As to this broad scope, Mr. Novy did not articulate any general methodology, principle or experience from which he concludes that this is always the case. Therefore he may not so opine."). The nearest thing to a discussion of methodology appears where Mr. Tremaine and Mr. Spence discuss the sampling approach used to generate their Xactimate calculations on cost. Ex. C at 46. However, this discussion is insufficient to explain how Mr. Tremain and Mr. Spence reached their opinion that nearly all of the homes required reconstruction. The report states that

> Based upon our understanding of the degree of contamination that took place in the Colorado 2013 flood event, we have approached our suggested method of repair and costs analysis <u>treating most if not all material as contaminated</u>.

Ex. C at 45; *see also id.* 42-43 (listing assumptions regarding required repairs).

This is exactly the type of *ipse dixit* analysis that Rule 702 proscribes. *See Champagne M s v. Ken-Mac M s, Inc.,* 02-0528 (W.D. Okla., Dec. 12, 2008) (attached as Ex. H) (stating that an expert that basis his consideration on multiple factors, weighed and evaluated by him as a matter of professional judgment, but not otherwise disclosed or able to be tested by others, is a classic example of opinion evidence that is "connected to existing data only by the *ipse dixit* of the expert.") Expert opinion must be based on "actual knowledge and not subjective belief or unsupported speculation."

*Squires*, 829 F.Supp.2d at 1050; *see also Lifewise Master Funding v. Telebank*, 374 F.3d 917, 929-30 (10th Cir. 2004) (upholding lower court's determination to exclude opinion that was not based on any recognized standard and was unique to the case). An expert may base an opinion on experience but "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (citing Fed. R. Evid. 702 advisory committee's note (2000)). "While doubts whether an expert's testimony will be useful generally should be resolved in favor of admissibility, such testimony should be excluded when the opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Squires*, 829 F.Supp.2d. at 1053 (internal quotation marks omitted).

Mr. Tremaine and Mr. Spence's opinions are connected to existing data only by their own subjective beliefs and unsupported speculation, rather than methodology. First, their opinion that Plaintiffs did not follow industry-standard protocol as it pertains to the remediation and cost is not drawn from an application of methodology to facts, but is at best a professional judgment that is unsupported by evidence. Second, their opinion that Riverside/Shriver's method of repair would have left the units in a condition potentially harmful to health and safety is also completely without factual or methodological grounding and is by its terms speculative. Third, their opinion that demolition at Kimberly Hills would have exposed residents to hazardous material and falls outside guidance of the Department of Public Health and Environment is not based

on actual knowledge, but rather subjective belief and unsupported speculation. Fourth, their opinion that Riverside/Shriver's costs of repair fall short of what would be required is also at best an expression of the professional judgment of Mr. Tremaine and Mr. Spence, based on their (unsupported) conclusion that the homes were mostly if not all contaminated; this too is based on belief and speculation. Fifth, the opinion that the projected costs fall short of what the costs would be using Xactimate software is based on the prior unsupported opinions regarding the extent of contamination and proper remediation protocol. Sixth, the opinion that Riverside/Shriver's projected business loss was inaccurate based on improper factoring of the cost of repair and value of cash flows is flawed as well as unsupported speculation concerning the mobile home market. *See* 374 F.3d 917 (lost profits must be based on reasonable probability).

In short, this is not a case where an expert selects his or her methodology, plugs in facts applicable to the case, and generates an opinion (or opinions) that are properly challenged through cross examination. Rather, the application of a methodology—Xactimate software—accounts for only a small fraction of the TEI Report. The majority relates to Mr. Tremaine and Mr. Spence's unsupported assumptions regarding the level of contamination present in the homes and the extent of remediation necessary. This degree of speculation rises to the level of inadmissibility.

**3. The opinions are unhelpful because they do not address the reality of Shriver's planned approach.**

Finally, the TEI Report does not meet the standard of Rule 702 because it is ultimately irrelevant to the question of what Riverside/Shriver and the other Plaintiffs' profits would have been had the City and individual defendants not prevented them from

installing mobile homes at Kimberly Hills. *Cf. Squires,* 829 F.Supp.2d at 1047-48 ("the proffered expert testimony must be relevant to an issue in the case and thereby assist the jury in its deliberations.") Despite what Mr. Tremaine or Mr. Spence believes is the industry standard for remediation techniques, this is not a professional negligence action. Testimony indicates that Mr. Shriver had taken actions consistent with his planned remediation model, having disclosed to the City that the homes were so-called flood homes. *Pls.' Summ. J. Resp.* ¶ 6 (and cited testimony); Shriver Deposition v. I Ex. I at 72: 13-15. Prior to the acts complained of in the lawsuit, the City had inspected and approved several homes that Mr. Shriver had installed and was in the process of remediating. *Pls.' Summ. J. Resp.* ¶¶ 25-27; Ex. I at 46:5-9 ("We [Riverside] had contacted Mr. Ekross prior to bringing these homes down; set up an inspection as requested by the City of Federal Heights; spent several hours with the inspector going through the houses . . .") Mr. Shriver's costs and planned remediation methods also reflect his skill and experience in the field, which allows him to operate in a cost-effective manner.

> A major reason for the costs being economical is that Mr. Shriver is acting as his own contractor, which is his normal pattern of business. He buys building materials in bulk, at times uses materials already inventoried at his yard, and re-uses materials as possible . . . . Mr. Shriver uses a similarly efficient approach in purchasing labor.
>
> Exhibit A at 6.

Mr. Tremaine and Mr. Spence's opinions regarding the cost calculation of *proper* remediation ignore the reality that Mr. Shriver had a different remediation plan in place. The TEI Report improperly assumes that Mr. Shriver would not have been able to carry

through his remediation as planned. However, there is no legal requirement to use the IICRC guidelines, which are exactly that—guidelines. *See Perlman v. Universal Restoration Systems, Inc.*, 09-4215 (E.D. Penn. Sept. 19, 2013) (attached as Ex. J). The City never indicated any issues with Mr. Shriver's remediation approach; instead it concluded that—regardless of remediation—the homes were nuisances that must be removed. *Pls.' Summ. J. Resp.* ¶¶ 55, 62. While this decision was in violation of Plaintiffs' due process rights, it is also indicates that the propriety of remediation technique was never at issue in the case. As such, the TEI Report fails to offer relevant information that would assist the jury.

***D. Plaintiffs Request an Evidentiary Hearing.***

Pursuant to CMA Civ. Practice Standard 7.1C, Plaintiffs request an opportunity to present evidence to the Court concerning this motion. The TEI Report is voluminous (114 pages) and contains a number of assumptions that Mr. Tremaine and Mr. Spence are not qualified to make. Due to the unique discovery schedule in this case, *see* Nov. 7, 2016 Minute Order, Docket No. 93, Plaintiffs did not have an opportunity to depose these experts. Plaintiffs therefore respectfully request an opportunity to demonstrate to the Court that the witnesses' ideas and opinions fall outside the scope of their expertise and qualifications, are based on insufficient facts and methodology, and are irrelevant.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude the testimony and opinions of Defendants' experts Chris Tremaine and Kelly Spence.

Respectfully submitted this 31st day of January, 2017.

By: */s/ Aimee M. Bove*
Aimee M. Bove, #36915
BKN Murray LLP
6795 E. Tennessee Ave, Ste. 330
Denver, Colorado 80224
Phone: (303) 758-5100
Fax: (303) 758-5055
Email: above@bknmurray.com
*ATTORNEY FOR PLAINTIFFS RIVERSIDE STORAGE AND RECYCLING CENTER, CRAIG SHRIVER, KEVIN COX, JOHN HOOD, AND KIMBERLY HILLS*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 31st day of January, 2017, a true and correct copy of the foregoing **PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF CHRIS TREMAINE, AND KELLY SPENCE, PURSUANT TO FED. R. EVID. 702** was filed and served by via ECF/PACER on all parties of record, as follows:

Patrick A. Singer, Esq.
Kresl & Johnson PC
130 Rampart Way, Suite 200
Denver, CO 80230
psinger@kresljohnson.com

J. Andrew Nathan
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
anathan@ndm-law.com

*/s/ Ilene Dell'Acqua*
BKN Murray LLP