**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02325-CMA-NYW

**RIVERSIDE STORAGE AND RECYCLING CENTER**, a Colorado Limited Liability Corporation;
**CRAIG SHRIVER**, individually;
**KEVIN COX**, individually;
**JOHN HOOD**, individually; and
**KIMBERLY HILLS**, a Foreign Limited Liability Company

Plaintiffs,

v.

**CITY OF FEDERAL HEIGHTS**, a Colorado Municipal Corporation;
**KEN EKROSS**, in his individual capacity;
**JACQUELINE HALBURNT**, in her individual capacity; and
**STEVEN DURIAN**, in his individual capacity,

Defendants.

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 702 MOTION TO PRECLUDE CHRIS TREMAINE AND KELLY SPENCE**

---

**INTRODUCTION**

In this action, Plaintiffs assert that the Defendants violated their due process rights and are seeking monetary damages. [Doc. #78]. These claimed damages arise from profit they claim they would have obtained from placing flood-damaged mobile homes in Federal Heights. Defendants disclosed Chris Tremaine and Kelly Spence of Tremaine Enterprises, Inc. ("TEI") as experts in the field of manufactured home costs

and public adjusting which evidence relates to causation and damages.[1] Mr. Tremaine's experience includes working in construction for 15 years, followed by work as a public adjuster and claims consultant for almost 16 years. Mr. Spence's experience includes work in water damage restoration for 10 years, and as a public adjuster specializing in catastrophic claims for over 20 years. Both are licensed Public Adjusters. Among other certifications, Mr. Tremaine and Mr. Spence have been certified by the Institute of Inspection, Cleaning & Restoration as experts in Water Damage Restoration, and Mr. Spence is a licensed Construction Supervisor.

Plaintiffs objected to the designation of Mr. Tremaine and Mr. Spence as experts. [Doc. #117]. Plaintiffs argue that TEI does not have the requisite expertise to make the conclusions contained in its report. They also argue that TEI's conclusions are unsupported and do not rely on a particular methodology. Finally, Plaintiffs state that TEI does "not address the reality of Shriver's planned approach." However, in its report, TEI relied on decades of experience in construction and claims adjusting to determine the most cost-efficient and safest way to rehabilitate the homes and then compared that to Plaintiffs' estimated costs and revenue. From this, TEI concluded that—despite claims to the contrary—Plaintiffs would lose money on the homes if properly restored, thereby eliminating their damages. While Plaintiffs are entitled to challenge the TEI approach on cross-examination, the opinions presented are set forth with detailed explanations of the reasoning and methodology employed and, accordingly, the Court

---

[1] Their curriculum vitae and complete expert report are attached hereto as Ex. A. In a footnote, Plaintiffs seem to object to both men being disclosed but failed to support the objection. To the extent that it is relevant, at this time, Defendants only intend on calling Mr. Tremaine at trial.

should deny Plaintiffs' Motion to Preclude.

## LEGAL ANALYSIS

### A. Applicable Legal Standard

Fed R. Evid. 702 governs the admission of expert testimony. In assessing admissibility, a district court acts as a "gatekeeper." **Bitler v. A.O. Smith Corp.**, 400 F.d 1227, 123 (10th Cir. 2004). It must determine whether: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. **See Util. Trailer Sales of Kan. City, Inc. v. MAC Trailer Mfg., Inc.**, 267 F.R.D. 368, 370 (D. Kan. 2010).

"The Tenth Circuit takes a liberal approach to the questions of whether proffered expert testimony will assist the jury." **Cook v. Rockwell Int'l Corp.**, 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006). Indeed, "[d]oubts about the usefulness of expert testimony should generally be resolved in favor of admissibility." **Gindes v. Gindes**, 864 F. Supp. 159, 162-63 (D. Colo. 1994); *see also Pritchett v. I-Flow Corp.*, 2012 WL 1326406 at *5 (D. Colo. April 17, 2012); **Squires v. Goodwin**, 829 F. Supp. 2d 1041, 1047 (D. Colo. 2011) (rejecting expert testimony is the exception, not the rule).

"[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system" for which trial and cross-examination "are the traditional and appropriate means of attacking shaky but admissible evidence." **XY, LLC v. Trans Ova Genetics, LC**, 2016 WL 97788, at *2 (D. Colo. Jan. 8, 2016); Fed. R. Evid. 702 (committee note). "The weight and credibility of expert testimony are for the trier of fact to determine." **Util Trailer Sales of Kan. City, Inc.**, 267 F.R.D. at 370.

### B. Mr. Tremaine and Mr. Spence Have the Requisite Knowledge, Skill, Experience, Training, and Education to Offer their Expert Opinions

When considering the admissibility of expert testimony, a court must satisfy itself that the expert is qualified "by knowledge, skill, experience, training, or education" to render the opinion. Fed. R. Evid. 702. Expert evidence is not limited to purely scientific knowledge but can be based on specialized experience. **Kumho Tire Co., Ltd. v. Carmichael**, 526 U.S. 137, 148-49 (1999); Fed. R. Evid. 702 (committee note). The basis of specialized knowledge can stem from practical experience, along with academic training and credentials. **Waldorf v. Shuta**, 142 F.3d 601, 625 (3d Cir. 1998); **Lovato v. Burlington N. and Santa Fe R.R. Co.**, 2002 WL 1424599, at *4 (D. Colo. June 24, 2002). In these circumstances, the Court's inquiry is whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." **Kumho Tire**, 546 U.S. at 152; *see also* **Ranking v. Union Pac. R. Co.**, 2005 WL 6000492, at *3 (D. Colo. Sept. 29, 2005).

Plaintiffs argue that TEI does not meet these requirements. Specifically, Plaintiffs state that TEI does not have experience in (1) interpreting local, state, and national law; (2) recognizing mold and other organisms in photographs; and (3) Denver's mobile home market. However, a review of Mr. Tremaine's and Mr. Spence's curriculum vitae show that these arguments are without merit.

First, Plaintiffs state that Mr. Tremaine and Mr. Spence do not have legal training to interpret regulations regarding rehabilitating these homes. Plaintiffs do not point to any requirement that specific legal training is required or necessary to understand rules meant for the public, or that a CV needs to include the precise scope of training. Further, Plaintiffs did not think such a requirement necessary for their own experts as

4

Mr. Knoll provided his own opinion regarding HUD standards without having any legal training. [Ex. B, Rebuttal Report, p. 9]. Regardless, TEI has sufficient experience and expertise to interpret such regulations, including decades of experience in flood remediation, construction, and claims adjusting. Therefore, Mr. Tremaine should be allowed to opine as to what is required to remediate flood-damaged homes safely, based upon his education, training, and experience.

Second, Plaintiffs argue that Mr. Tremaine and Mr. Spence cannot see evidence of mold in photographs, and are therefore unqualified to give testimony on whether there was mold in these homes. This is akin to saying that students cannot learn about mold from science textbooks, but instead have to grow their own mold for study. Further, the photographs used by Mr. Tremaine and Mr. Spence were illustrative, and TEI's conclusions are supported by Plaintiffs' studies concluding mold was in some of the homes. [Ex. A, p. 61 (TEI Ex#02: RDS Report)]. Regardless, TEI has decades of experience in investigating and remediating flood-damaged homes, which has included being able to spot and clean mold. They can also opine about where the risk of mold contamination is particularly high. Therefore, TEI should be allowed to testify that there was evidence of mold in the homes and their opinions regarding its remediation.

Finally, Plaintiffs state that Mr. Tremaine and Mr. Spence do not work in rental properties, so cannot opine as to the market. However, knowledge of the market is something for which public adjusters and claims adjusters need to be fluent in so that they may be able to estimate the actual scope of loss. Researching and relying on such information is standard practice and what TEI did here. Therefore, Mr. Tremaine and

Mr. Spence should be able to testify as to the rental market of Denver.

Overall, Plaintiffs question TEI's expertise despite all evidence to the contrary. Decades of experience in the exact field at issue give TEI the expertise to opine in this case, and the Court should rule that TEI has the expertise to testify.

### C.   *TEI's Opinions are Proper and Admissible*

Plaintiffs also argue that TEI did not have reliable enough information on which to base its conclusions. Specifically, Plaintiffs claim that (1) TEI based its report on an insufficient review of applicable evidence related to the homes; (2) that it relies on inapplicable information; (3) that it does not have a supported methodology; and (4) its opinions are unhelpful. However, a complete review of TEI's report shows that the opinions are relevant, proper, and admissible to the subject matter of this case.

#### i.   *TEI Analyzed Plaintiffs' Own Data*

Plaintiffs first argue that TEI needed to have first-hand knowledge of the homes at issue in this case to render an expert opinion. [Doc #117 at p. 8-9]. However, Rule 702 has no such condition, and Plaintiffs provide no supporting authority for that position. [Id.]; **Rankin**, 2005 WL 600492 at *4 (finding *Daubert-Kumho* does not require first-hand knowledge).

To come to its conclusions, TEI chose to begin with Plaintiffs' own evidence. This is common practice, as seen by the fact that Plaintiffs' expert relied on Plaintiffs' opinions as the basis of his conclusions. [Ex. C, Knoll Initial Report, p. 2-3].[2] Plaintiffs

---

[2] Here Mr Knoll states, among other things, "[f]rom Plaintiff Craig Shriver, I obtained most of the assumptions used in the preparation of the Shriver/Riverside damage model."

believe, without support, that this is bad practice and include two quotes to show TEI could not confirm its own data. [Doc. #117, p. 8]. A full reading of the report,[3] however, shows that TEI actually could not confirm *Plaintiffs'* conclusions, not their own. For example, the first quotation discusses Mr. Knoll's statement that he inspected the homes, despite the fact that he did not provide evidence of any such inspection. Therefore, TEI had to take Mr. Knoll at his word. Similarly, Plaintiffs' second quotation regarding claimed profits is a quotation about TEI's analysis of Mr. Shriver's data. Again, TEI took Mr. Shriver at his word—as Mr. Knoll did himself.

TEI then took their analysis a step further to determine whether these estimates were reasonable. They found that while the income estimates were reasonable, the repair costs were not. Mr. Knoll did not make any similar confirmation. Rather, in his initial report, Mr. Knoll did not even check any estimates—but just took Plaintiffs' data and added a discount factor. [Id.]. This lack of rigorous confirmation, and the TEI Report, required Mr. Knoll to later reduce his opinions on damages. [Ex. B, p. 1 ("The average costs of repairs expected by Mr. Shriver are revised upwards as follows.")].

Rather than comparing apples and oranges, TEI chose to rely on Plaintiffs-supplied data and information regarding revenue and the homes. TEI then underwent its own analysis of actual costs to determine whether Plaintiffs' damage calculations were accurate. Plaintiffs' claims that this data is unreliable is, therefore, self-defeating.

### ii.   *TEI Followed Industry Practice in Determining Likely Revenue*

---

[3] Despite being part of the block quotation, the sentence "In short, Mr. Tremaine and Mr. Spence do not actually know whether the homes in question were damaged, demolished, remediated, or restored," does not appear anywhere in the TEI report.

Plaintiffs next object to TEI's use of Plaintiffs' evidence to make conclusions in this case. As Plaintiffs state, TEI used Wikipedia, among other sources, to give a background on what occurred in the flooding. Plaintiffs do not identify any inaccuracies in the Wikipedia summary. TEI then used photographs and environmental reports disclosed by Plaintiffs to determine the scope of damage to the homes. Plaintiffs argue that these homes "are not involved in this lawsuit." However, Kimberly Hills' 30(b)(6) witness identified these homes as those that "were red-tagged by the City of Federal Heights to be removed." [Ex. D, Kimberly Hills Depo. 50:25-55:9; Ex. E, Depo. Ex. 2]. Moreover, Plaintiffs can't logically object to the use of Plaintiffs own reports.

Plaintiffs also argue that TEI's research to determine rental prices in the area is inapplicable.[4] Yet, Plaintiffs again overlook TEI's entire statement that "in this analysis, data/assumptions were mostly obtained from Mr. Shriver, the plaintiff from whom damages are being determined." [Ex. A, p. 112 (TEI Ex. #5)]. TEI could not compare this information to industry standard data, so they researched the information and spoke to people within the industry. They concluded Mr. Shriver's rental information "to be a reasonable assumption." As this information is from Mr. Shriver, it is clearly relevant.

### iii.    *TEI Followed Industry Standard in Determining Costs*

Next, Plaintiffs argue that the TEI report is based on unreliable methodology. Plaintiffs do not provide the Court with a description or evidence of what method TEI should have used. Nevertheless, TEI examined the evidence presented by the biological tests, photographs, and used their experience in assessing and rehabilitating

---

[4] Plaintiffs again seem to misquote the report regarding whether Mr. Shriver's data was industry standard.

flood-damaged homes to determine that these homes were more likely than not damaged in a flood. As the Tenth Circuit has stated, "Although such a method is not susceptible to testing or peer review," the test is whether TEI used a generally acceptable practice to estimate these losses, and "nothing in Rule 702 or *Daubert* requires more." ***Bitler***, 400 F.3d at 1235. TEI gained experience from their training from the IICRC in water restoration, and from decades of work in the field. It then applied that experience and those techniques to the facts of this case to come to its conclusions. Therefore, their methodology is reliable.

Plaintiffs also list supposed insufficiencies which constitute speculation or best professional judgment. Rule 702 does not prohibit experts from using their best professional judgment. Regardless, Plaintiffs ignore the facts of the case. For example, Plaintiffs state that TEI's conclusion about potential harm is speculative and "completely without factual or methodological grounding." [Doc. 117, p. 12]. Yet, Plaintiffs' own studies showed the homes brought into the City were a health hazard. [Ex. F, Depo. Ex. 171, p. 2]. Even Jeff Wiebold—who assisted Mr. Shriver in picking out homes from Evans—agreed that the two homes left in they City by Mr. Shriver were unsafe. [Ex. G, Wiebold Depo, 112:16-25; 178:9-179:14]. Regardless, this conclusion and the others objected to by Plaintiffs, are based on Mr. Tremaine's and Mr. Spence's decades of experience investigating and remediating flood-damaged homes which provide them the sufficient experience on which to base their well-articulated conclusions.

### *iv.    TEI's Opinions are Both Helpful and Relevant*

Finally, Plaintiffs argue TEI's testimony is unhelpful and "do[es] not address the

reality of Shriver's planned approach." [Doc. 117, p. 13-14].  However, Plaintiffs did not disclose Mr. Shriver's proposed approach until *after* TEI filed its report.  [Ex. H, Plaintiffs' Rebuttal Disclosures, p 6, 9].  While Mr. Shriver may have had a plan all along, Plaintiffs have not yet remediated an Evans' home that has been accepted by the State as safe for human habitation.  [Ex. I, Shriver II, 364:5-16].  TEI, on the other hand, has experience in remediating flood-damage homes which is as helpful, if not more, than someone saying "trust me, I can do this."  Regardless, this argument comes down to the weight of the evidence, not TEI's opinions should be precluded.

### D.     An Evidentiary Hearing Is Not Required

Plaintiffs request an evidentiary hearing due to the unique scheduling deadlines in this case.  This argument is disingenuous as Defendants' moved to extend the deadlines and Plaintiffs objected.  [Doc. 79].  Plaintiffs should not be able to have a hearing to make up for their choice not to extend the deadlines or depose TEI before discovery was closed.  It is clear from briefing alone that Plaintiffs' Motion is without merit and judicial resources should not be wasted to rehash what is contained therein.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Preclude, find that Chris Tremaine and Kelly Spence are qualified to opine as expert witnesses as designated by Defendants, and that the opinions in their report are proper and admissible.

Respectfully submitted this 21st day of February 2017.

 *s/ J. Andrew Nathan*
J. Andrew Nathan
Brenden Desmond
*Nathan Dumm & Mayer P.C.*
7900 E. Union Avenue, Suite 600
Denver, CO 80237
Phone: (303) 691-3737
Email: bdesmond@nbdmlaw.com,
anathan@nbdmlaw.com
*For Defendant Federal Heights, et. al.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2017, I electronically filed the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 702 MOTION TO PRECLUDE CHRIS TREMAINE AND KELLY SPENCE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses:.

Stuart B. Borne, Esq.
Aimee M. Bove, Esq.
BKN Murray, LLP
6795 E. Tennessee Ave., Ste. 330
Denver, Colorado 80224
Phone: 303-758-5100
*Attorneys for Plaintiffs*

Patrick A. Singer, Esq.
Kresl & Johnson, P.C.
130 Rampart Way, Ste. 200
Phone: (303) 336-2100
Fax: (303) 388-1749
Email: psinger@kresljohnson.com

          *s/ J. Andrew Nathan*
          J. Andrew Nathan