# Transcript of the Testimony of:
## Jeff Wiebold

**Date:** September 14, 2016

Riverside Storage and Recycling, et al., v. City of Federal Heights, et al.

Civil No. 1:15-cv-02325-CMA-NYW



14143 Denver West Parkway, Suite 100  •  Golden, Colorado 80401
(303) 202-0210 • contact@milehighreporting.com
www.milehighreporting.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02325-CMA-NYW

_____

DEPOSITION OF JEFF WIEBOLD
September 14, 2016

_____

RIVERSIDE STORAGE AND RECYCLING CENTER, a Colorado
Limited Liability Corporation, and
CRAIG SHRIVER, individually; and
KEVIN COX, individually; and
JOHN HOOD, individually; and
KIMBERLY HILLS MOBILE HOMES PARK, a Foreign Limited
Liability Company,

Plaintiffs,

vs.

CITY OF FEDERAL HEIGHTS, a Colorado Municipal
Corporation;
KEN EKROSS, in his individual capacity;
JACQUELINE HALBURNT, in her individual capacity;
KRISTEN TEAGUE, in her individual capacity;
KAREN JACKSON, in her individual capacity;
TERESA GARRAMONE, in her individual capacity;
TIMOTHY WILLIAMS, in his individual capacity;
STEVEN DURIAN, in his individual capacity; and
JOHN DOE, whose true name is currently unknown,
in his individual capacity,

Defendants.

_____

        PURSUANT TO NOTICE, the deposition of
JEFF WIEBOLD, called for examination by the Defendants
herein, was taken at Nathan, Dumm & Mayer, P.C., 7900
East Union Avenue, Suite 600, Denver, Colorado 80237,
commencing at 9:00 a.m., on Wednesday, September 14,
2016, before Aimee S. Reisinger, a Registered
Professional Reporter and Notary Public in and for the
State of Colorado.

Deposition of:  Jeff Wiebold - September 14, 2016
Riverside Storage and Recycling, et al., v. City of Federal Heights, et al.

2

```
 1    APPEARANCES:
 2              AIMEE BOVE, ESQ.
                BKN Murray
 3              6795 E. Tennessee Avenue
                Suite 330
 4              Denver, Colorado 80224
                303-758-5100
 5              above@bknmurray.com
 6                      For the Plaintiffs
 7
                BRENDAN DESMOND, ESQ.
 8              Nathan, Dumm & Mayer, P.C.
                7900 East Union Avenue
 9              Suite 600
                Denver, Colorado 80237
10              303-691-3737
                bdesmond@ndm-law.com
11
                        For the Defendants except for
12                         Steven Durian
13
                PATRICK A. SINGER, ESQ.
14              Pryor Johnson Carney Karr Nixon, P.C.
                5619 DTC Parkway
15              Suite 1200
                Greenwood Village, Colorado 80111
16              303-773-3500
                psinger@pjckn.com
17
                        For the Defendant Steven Durian
18
19              BRIAN T. RAY, ESQ.
                Hatch Ray Olsen Sandberg, LLC
20              730 17th Street
                Suite 200
21              Denver, Colorado 80202
                303-298-1800
22              bray@hatchlawyers.com
23                      For the Deponent
24
                Also Present:  Timothy Williams
25
```

Deposition of:  Jeff Wiebold - September 14, 2016
Riverside Storage and Recycling, et al., v. City of Federal Heights, et al.

---

109

1    **Did I read that correctly?**
2    A.  You read that correctly, yes.
3    **Q.  Do you agree that the 2013 flooding was**
4    **devastating flooding?**
5    A.  Do I agree it was devastating?  Any type
6    of flooding is devastating.
7    **Q.  Do you agree that the 2013 flooding that**
8    **affected the homes in Lyons that you allowed to be**
9    **moved into Front Range and the homes in Evans that you**
10   **tried to move into Kimberly Hills was unprecedented in**
11   **terms of its magnitude and destructive power?**
12   MR. RAY:  Object to form.
13   A.  Every flood is different; every disaster
14   is different; every tornado is different.
15   **Q.  (By Mr. Singer)  You wouldn't dispute that**
16   **the September 2013 flooding was a disaster, would you?**
17   A.  It was devastating, yes.  I won't say it
18   was a disaster.
19   **Q.  Mr. Pate says that he would certainly hope**
20   **other used mobile homes that you bring in or allow to**
21   **be brought in shouldn't be involved in a devastating**
22   **flood or other disaster.**
23   **Do you agree with that, or would you move**
24   **mobile homes in again?**
25   A.  Again, when we're looking at a home coming

---

110

1    into the community, I'm looking at the aesthetics of
2    the home on the outside.  So if you're an investor and
3    you're bringing it in, I'm just looking to make sure
4    that that home would be able to meet the requirements
5    that I require for Front Range and also the City of
6    Broomfield.
7    **Q.  Let me ask you this way.  If there was**
8    **another big flood like the one from September 2013 and**
9    **you had an opportunity to obtain flood-damaged homes**
10   **again from Lyons or Evans, would you try to move those**
11   **into your mobile home parks?**
12   A.  I'm 100 percent occupied.  I don't need to
13   move homes in.
14   **Q.  Well, I'm asking you to assume that you**
15   **have --**
16   A.  I can't assume.
17   **Q.  -- spaces available.**
18   A.  I'm not going to assume.
19   **Q.  Okay.**
20   A.  I deal with facts.
21   **Q.  So I want you to assume that you have**
22   **spaces available --**
23   A.  I don't.
24   **Q.  -- this year and that there's another big**
25   **flood similar in magnitude to the September 2013**

---

111

1    **flooding.  And you have an opportunity to move mobile**
2    **homes that have been damaged in that flood in a similar**
3    **way to the ones that you allowed to be moved in, you**
4    **had an opportunity to do it again, would you or would**
5    **you not allow them to be moved in?**
6    A.  I don't have spaces available.  I don't
7    know.  I mean, you're speaking about a situation that
8    doesn't exist.
9    **Q.  So you might allow mobile homes that are**
10   **damaged in a devastating flood similar to the one that**
11   **happened in September 2013 to be moved in again --**
12   MR. RAY:  Object to form.
13   **Q.  (By Mr. Singer)  -- is that correct?**
14   MR. RAY:  Object to form.
15   Mischaracterizes his testimony.
16   A.  Again, you're talking -- I mean, that's
17   like asking me do I believe in fairytales.  It's
18   something that isn't existing.  You're asking me to
19   hypothetically think of something.  Well,
20   hypothetically, anything can happen.
21   **Q.  (By Mr. Singer)  If the exterior**
22   **aesthetics are okay, in your opinion, and the age of**
23   **the home is okay in your opinion, you're going to allow**
24   **those mobile homes into your mobile home park in**
25   **Broomfield, right?**

---

112

1    MR. RAY:  Object to form.
2    A.  I am 100 percent occupied.  I don't have
3    to have any homes coming in.  The Denver market is 100
4    percent occupied.  There is no home spaces available.
5    **Q.  (By Mr. Singer)  How urgent was it to get**
6    **mobile homes into Kimberly Hills back in 2014?**
7    MR. RAY:  Object to form.
8    A.  I don't know.  You'd have to ask Kimberly
9    Hills.
10   **Q.  (By Mr. Singer)  Did you perceive that**
11   **they wanted to get their spaces filled?**
12   A.  Yes.
13   **Q.  They had over 100 empty spaces.  Do you**
14   **understand that?**
15   A.  I do not know how many spaces they had.
16   **Q.  Mr. Bennett asked you to see about getting**
17   **mobile homes from Evans into Kimberly Hills, right?**
18   A.  Correct.
19   **Q.  Did you have an understanding at that time**
20   **how strongly he wanted to get mobile homes in?**
21   A.  I was just there to get the facts for him
22   to be able to get to investors, other communities, and
23   also Kimberly Hills.
24   **Q.  Are you still working with Mr. Shriver?**
25   A.  No.

---

Deposition of:  Jeff Wiebold - September 14, 2016
Riverside Storage and Recycling, et al., v. City of Federal Heights, et al.

---

177

1        MR. RAY:  But go ahead.
2        Q.  (By Mr. Desmond)  So if the home in your
3    mobile home park had testing to show that there was E.
4    Coli and Coliform in the walls, and that E. Coli and
5    Coliform could lead to vomiting, diarrhea, and
6    potentially death, and the city showed you that
7    documentation, would that be enough for you to ask for
8    the home -- to allow the homes to be removed?
9        MR. RAY:  Object to form.
10       A.  If the city gave me that documentation?
11       Q.  (By Mr. Desmond)  Yes.
12       A.  And they're -- are they requiring it to be
13   removed or they're asking me to remove it?  I mean,
14   you're asking a pretty broad band of what you're asking
15   and you're creating a hypothetical situation, so I can
16   interpret it a lot of different ways.
17       Q.  Say -- yes, they are requiring -- they
18   send you a notice and order of removal requiring it to
19   be removed.
20       A.  Okay.
21       MR. RAY:  What's the question?
22       Q.  (By Mr. Desmond)  So would you agree with
23   that notice and order of removal?
24       MR. RAY:  Object to form.
25       A.  Can you rephrase the question?

---

178

1        THE DEPONENT:  Are you all right?  Do we
2    need to take a break?  You're shaking a little bit
3    there.
4        MR. DESMOND:  No, I'm -- can we go off the
5    record for just a second?
6        (A discussion was held off the record.)
7        (A recess was taken from 1:51 to
8    2:00 p.m.)
9        Q.  (By Mr. Desmond)  Do you know what E. Coli
10   is?
11       A.  No.
12       Q.  I'm reading off a report here for a second
13   because I only have one copy of this at the time, but
14   I'll let you look at it.  It says:  "E. Coli.  You may
15   be exposed to E. Coli from contaminated water or food,
16   especially raw vegetables and undercooked ground beef.
17   Healthy adults usually recover from infection with
18   E. Coli 0157:H7 within a week, but young children and
19   older adults have a greater risk of developing a
20   life-threatening form of kidney failure called
21   hemolytic uremic syndrome."
22       Do you know what Coliform bacteria is?
23       A.  No.
24       Q.  Well, that's probably good because it
25   says, "While Coliforms themselves are not normally

---

179

1    causes of serious illness, they are easy to culture and
2    their presence is used to indicate that other
3    pathogenic organisms of fecal origin may be present.
4    Such pathogens include disease-causing bacteria,
5    viruses, or protozoa and many multicellular parasites.
6        A.  Okay.
7        Q.  If these were found in one of your homes
8    in Front Range Mobile Home Park and this was the basis
9    for the City of Broomfield's notice and order for
10   removal of that particular home, would that be enough
11   documentation to show that it's unsafe?
12       MR. RAY:  Object to form.
13       A.  If the city showed something like that,
14   yeah, that would be.
15       Q.  (By Mr. Desmond)  Okay.
16       A.  But it didn't happen.
17       Q.  Yeah, I'm talking about your -- if it
18   happened in Kimberly Hills and you were the manager of
19   Kimberly Hills, would you want the home in your park?
20       A.  If they did that testing, sure, I wouldn't
21   want that in there.  I would want to make
22   sure -- unless it can be removed.  If it can be made
23   safe then, I mean, yeah, we wouldn't remove it.
24       Q.  And -- but you said to your knowledge that
25   Craig Shriver has not yet rehabilitated the homes under

---

180

1    the State of Colorado procedures, correct?
2        A.  I would have to ask Mr. Shriver that.
3        MR. RAY:  Belated objection to form.
4        MR. DESMOND:  That's fine.
5        Q.  (By Mr. Desmond)  But to your knowledge,
6    no, he hasn't told you that he's passed inspections?
7        A.  I don't remember having a conversation
8    about inspections that way.
9        Q.  So, no?
10       A.  No.  Sorry.
11       MR. DESMOND:  I have no further questions.
12       MS. BOVE:  I have no questions for this
13   witness.
14       MR. SINGER:  I have one follow-up.
15       MR. RAY:  Which means 12, but that's okay.
16       MR. SINGER:  Fair enough.
17              EXAMINATION
18   BY MR. SINGER:
19       Q.  If we could look at Exhibit 137, please.
20       MR. RAY:  137, Patrick?
21       MR. SINGER:  Yes.
22       Q.  (By Mr. Singer)  We're looking at what's
23   been marked as Exhibit 137.  And at the bottom of the
24   first page there is an email, I believe, from Tim Pate
25   to you.

---