EXHIBIT
I

# Transcript of the Testimony of:
## Craig Shriver, Volume II

**Date:** September 7, 2016

Riverside Storage and Recycling, et al., v. City of Federal Heights, et al.

Civil No. 1:15-cv-02325-CMA-NYW



Mile High Court Reporting & Video, Inc.

14143 Denver West Parkway, Suite 100 • Golden, Colorado 80401
(303) 202-0210 • contact@milehighreporting.com
www.milehighreporting.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02325-CMA-NYW

---

DEPOSITION OF CRAIG SHRIVER - VOLUME II

September 7, 2016

---

RIVERSIDE STORAGE AND RECYCLING CENTER, a Colorado Limited Liability Corporation; and CRAIG SHRIVER, individually; and KEVIN COX, individually; and JOHN HOOD, individually; and KIMBERLY HILLS MOBILE HOME PARK, a Foreign Limited Liability Company,

Plaintiffs,

vs.

CITY OF FEDERAL HEIGHTS, a Colorado Municipal Corporation; KEVIN EKROSS, in his individual capacity; JACQUELINE HALBURNT, in her individual capacity; KRISTEN TEAGUE, in her individual capacity; KAREN JACKSON, in her individual capacity; TERESA GARRAMONE, in her individual capacity; TIMOTHY WILLIAMS, in his individual capacity; STEVEN DURIAN, in his individual capacity; and JOHN DOE, whose true name is currently unknown, in his individual capacity,

Defendants.

---

PURSUANT TO NOTICE, the deposition of CRAIG SHRIVER, called for an examination by the Defendants herein, was taken at the office of Nathan, Dumm & Mayer, P.C, 7900 East Union Avenue, Suite 600, Denver, Colorado, commencing at 9:34 a.m. on September 7, 2016, before Shauna T. Dietel, a Registered Professional Reporter and Notary Public within Colorado.

Deposition of: Craig Shriver, Volume II - September 7, 2016
Riverside Storage and Recycling, et al., v. City of Federal Heights, et al.

288

```
 1   APPEARANCES:
 2           AIMEE M. BOVE, ESQ.
             BKN Murray, LLP
 3           6795 East Tennessee Avenue
             Suite 3300
 4           Denver, Colorado  80224
             303-758-5100
 5           above@bknmurray.com
 6                     For the Plaintiffs
 7
             BRENDEN DESMOND, ESQ.
 8           Nathan, Dumm & Mayer, P.C.
             7900 East Union Avenue
 9           Suite 600
             Denver, Colorado  80237
10           303-691-3737
             bdesmond@ndm-law.com
11
                       For the Defendants
12
13           PATRICK A. SINGER, ESQ.
             Pryor Johnson Carney Karr Nixon, P.C.
14           5619 DTC Parkway
             Suite 1200
15           Greenwood Village, Colorado  80111
             303-773-3500
16           psinger@pjckn.com
17                     For the Defendant Steven Durian
18
19           Also Present:  Tim Williams
20
21
22
23
24
25
```

Deposition of: Craig Shriver, Volume II - September 7, 2016
Riverside Storage and Recycling, et al., v. City of Federal Heights, et al.

359

1  Federal Heights on purpose; is that correct?
2     A   Yes.
3     Q   So you could go to trial on it?
4     A   Correct.
5     Q   Okay. So let's look at the first page. On the
6  first paragraph under Dear Craig, after the -- where it
7  says Banyan Environmental in italics.
8        Do you see that, the sentence after that?
9     A   Which one? First paragraph?
10    Q   The first -- the first paragraph that says, The
11 following report.
12    A   Okay. Yes.
13    Q   And then if you look about the fourth line
14 down, it says, The scope of work?
15    A   Okay.
16    Q   Do you see that?
17    A   Yes.
18    Q   It says, The scope of work is for Ecoli and
19 coliform contamination on the walls, bottom plates, and
20 subfloor due to the 2012 September flood?
21    A   Yes, I see that.
22    Q   Okay. And it says that there is concern that
23 contamination may be between the subfloor and bottom plate
24 and walls?
25    A   Correct.

360

1     Q   And the drywall and all flooring was removed
2  prior to the sampling conducted on April 23rd, 2015. And
3  that was the remediation you stated that you did in the
4  City of Evans; is that correct?
5     A   Correct.
6     Q   Okay. Do you know what Ecoli is?
7     A   Yep. Human waste.
8     Q   How about coliform bacteria?
9     A   It's a mold. Species of a mold, to my
10 knowledge.
11    Q   Okay. So if we turn to Page 2, which is
12 Shriver 1635. It says -- under the Ecoli subheading, in
13 the second paragraph, it says, Healthy adults usually
14 recover from infection with Ecoli 0157, colon, H7, within
15 a week, but young children and older adults have a greater
16 risk of developing life-threatening form of kidney failure
17 called hemolytic uremic syndrome.
18       Do you see that?
19    A   Yes.
20    Q   And then that first -- that paragraph starts,
21 You may be exposed to Ecoli from contaminated food or
22 water.
23       Do you see that?
24    A   Yes.
25    Q   Then the next paragraph says -- sorry. Hold

361

1  on.
2        And then on the second -- that paragraph, it
3  says at that fifth line -- I can't count today. Five line
4  down at the end it says -- it starts, While coliforms.
5        Do you see that sentence?
6        MS. BOVE: Right here (indicating).
7     A   While coliforms?
8     Q   Yes. And it says, While coliforms themselves
9  are not normally causes of serious illness, they are easy
10 to culture and their presence is used to indicate that
11 other pathogenic organisms or fecal origin may be present.
12       Do you see that?
13    A   Yes.
14    Q   And it says, Such pathogens includes
15 disease-causing bacteria, viruses, or Protozoa, and many
16 multi-cellular parasites.
17       Do you see that?
18    A   Yes. Yes.
19    Q   So -- and then it goes -- there's a chart that
20 says, Swab and bulk sampling, 2013/2015, which is after
21 you moved the home into Federal Heights; is that correct?
22    A   That is correct.
23    Q   And sprayed it with this shocker and vinegar
24 solution --
25    A   Correct.

362

1     Q   -- to kill the bacteria?
2     A   Correct.
3     Q   So it looks like -- so was coliform present in
4  the home after you sprayed the shocker and vinegar on --
5  on the home?
6     A   According to these tests there is some
7  presence.
8     Q   In what areas?
9     A   Let's see. Looks like -- see, bottom plate cut
10 out, core of the subfloor cut out, subfloor, and the
11 bottom plate.
12    Q   Okay. And was Ecoli present in the home after
13 you sprayed it with this solution?
14    A   It looks like there was a presence, yes.
15    Q   Where was that presence?
16    A   Looks like the same areas of the subfloor and
17 bottom plate.
18    Q   And you said you had stripped the walls a foot
19 above the floor line?
20    A   Correct.
21    Q   -- down to the studs? That's correct?
22    A   Correct.
23    Q   But it looks like coliform was still in the
24 core of the wall stud?
25    A   No, sir.

Deposition of: Craig Shriver, Volume II - September 7, 2016
Riverside Storage and Recycling, et al., v. City of Federal Heights, et al.

---

363

1  **Q  No, sir?**
2  A   No, sir.
3  **Q  It says, Core of wall stud about two feet from**
4  **floor present?**
5  A   Correct.
6  **Q  Okay.**
7  A   Bottom plate is the area between the side wall
8  studs and the subfloor of the floor.
9  **Q  Okay.**
10 A   The one by two or two by four bottom plate is
11 on top of your subfloor.
12 **Q  Okay.**
13 A   That's where the presence of it is, is it's in
14 between the subfloor and the bottom plate, the seal plate.
15 **Q  Okay.**
16 A   That's why we did the testing on this, because
17 then we know where it's left in presence.  That's
18 somewhere the spray cannot penetrate, is between the
19 sandwiched areas.
20 **Q  Okay.**
21 A   And then the reason for the testing is to find
22 out where it is present that the spray did not get in and
23 penetrate.
24 **Q  Okay.**
25 A   And at that point this test would be turned

---

364

1  over to the building official, and then a plan of attack
2  would be exercised.  We would go in and you would tear
3  your subfloor out and your bottom plate out.  Go back in
4  with brand-new materials.
5  **Q  Okay.  And this is like the rehabilitation**
6  **you're doing with the State of Colorado?**
7  A   Correct.
8  **Q  When we previously -- your previous deposition**
9  **we had notices of further remediation from the State of**
10 **Colorado; is that correct?**
11 A   Yes.
12 **Q  Has there been any progress on that?**
13 A   We halted the procedures on them at this time.
14 **Q  Okay.  So the State of Colorado hasn't signed**
15 **off on the rehab?**
16 A   No, sir.
17 **Q  Do you know what snow load is?**
18 A   Yes.
19 **Q  What is snow load?**
20 A   Pounds per square inch on a roof of how much
21 weight each square foot can handle on a 212, 112, 312, or
22 any pitch of a roof.
23 **Q  Okay.  Do you know if the homes that are --**
24 **that you were trying to rehab would be able to meet the**
25 **required snow loads?**

---

365

1  A   All Colorado homes are minimal 30 pounds rough
2  loads, and, yes, they are all 30 pounds --
3  **Q  For the homes that you have rebuilt?**
4  A   To be a HUD home in Colorado.
5  **Q  And you've done testing to show that snow load?**
6  A   That comes in the data plate on it.  It tells
7  you on each home.  Each home has its own --
8  **Q  That comes with it?**
9  A   Correct.
10 **Q  But after it was -- the beams of the -- the**
11 **wall studs were affected by water, and the beams that were**
12 **holding the home were affected by water, do you know if it**
13 **could still hold the snow load that's required?**
14 A   Yes.  Yes.  I had two structural engineers done
15 on 516 and 387 but Structural Engineering, and they stated
16 that this --
17 **Q  And you have a report that says it would meet**
18 **that snow load?**
19 A   Yes.  And you guys have them as well.
20 **Q  Okay.**
21 A   Your snow load would not be affected if you go
22 back with the same or greater materials, because the
23 rafters were never induced to come -- you know, come -- I
24 don't know the word I'm saying -- exposed to it.
25 **Q  Okay.  And previously you stated the State of**

---

366

1  **Colorado rules state that the local building jurisdiction**
2  **can deny the homes as long as they follow State of**
3  **Colorado rules.**
4      **Do you remember that?**
5  A   Yes.
6  **Q  Do you have that in writing at all?**
7  A   No.  Verbal from Rick Hanger at the Division of
8  Housing.
9  **Q  Okay.  But not in writing?**
10 A   No.  I suppose I could get it in writing.
11 **Q  Well, the only thing we have from Rick Hanger**
12 **is saying -- saying that the local jurisdiction can deny**
13 **it, and it doesn't say anything about the State of**
14 **Colorado rules, so I was just curious.**
15 A   Okay.
16 **Q  In your previous deposition you stated that**
17 **your -- Riverside Storage was full; is that correct?**
18 A   That is correct.
19 **Q  Is that still correct?**
20 A   It is.
21 **Q  Even if you just bought 40 more acres of**
22 **storage land?**
23 A   It's -- with the five next to this one, 40 of
24 another acreage, which won't be used for the storage.
25 Five acres will be used.  However, it's an old power

---