# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02325-CMA-NYW

**RIVERSIDE STORAGE AND RECYCLING CENTER**, a Colorado Limited Liability Corporation;
**CRAIG SHRIVER**, individually;
**KEVIN COX**, individually;
**JOHN HOOD**, individually; and
**KIMBERLY HILLS**, a Foreign Limited Liability Company

Plaintiffs,

v.

**CITY OF FEDERAL HEIGHTS**, a Colorado Municipal Corporation;

Defendant.

---

## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

---

## INTRODUCTION AND PROCEDURAL POSTURE

In this action, Plaintiffs each assert a procedural and substantive due process claim against Defendant Federal Heights. See Doc. 78. A Motion for Summary Judgment was filed on November 1, 2016, which was denied. Doc. 87 and 126. After Defendants filed an appeal—which Defendants dismissed after Plaintiffs dismissed the remaining individual Defendants—Federal Heights filed a Motion to Renew, which was granted. Doc. 148 and 149.

Plaintiffs can be viewed as three groups: (1) Riverside Storage and Craig Shriver ("Shriver") as Craig Shriver is the owner of Riverside Storage; (2) Kevin Cox and John Hood ("Lenders") as they lent money to a non-party to purchase and move flood-damaged homes; and (3) Kimberly Hills ("Kimberly Hills") a mobile home park to which Craig Shriver moved flood-damaged homes. Given the differing factual and legal

circumstances of these three groups of Plaintiffs, this Renewed Motion addresses each procedural and substantive due process claim separately.  To succeed in their claims, each Plaintiff must prove each element of procedural and substantive due process.

While the Court previously ruled there were disputed material facts as to Plaintiffs' possession of a property interest, it did not specify which facts these were, nor did it distinguish between the Plaintiff groups.  Further, Plaintiffs did not use the City appeal procedure available to them as to sustain a procedural due process claim.  Finally, nothing in this case should shock the judicial conscience so as to prove a substantive due process violation.  Therefore, the City is entitled to summary judgment.

## ARGUMENT

### I.  Standard of Review

"Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Neal v. Lewis*, 414 F.3d 1244, 1247 (10th Cir. 2005); Fed.R.Civ.P. 56.  Once the moving party shows the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to establish a genuine issue of material fact. *Vitkus v. Beatrice Co*., 11 F.3d 1535, 1539 (10th Cir. 1993).  Vague, conclusory, and self-serving statements do not create a genuine issue of material fact. *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000).  In interpreting the evidence and drawing all reasonable inferences in favor of the non-moving party, *see Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986), the Court need not accept the non-moving party's conclusions or application of the law. *See Olpin v. Ideal National Ins. Co.,* 419 F.2d 1250, 1255 (10th Cir. 1969).

### II.  Plaintiffs' Due Process Claims Fail as a Matter of Law

### a. Procedural Due Process

As claimants in this action, Plaintiffs bear the burden of showing by a preponderance of the evidence that their procedural due process rights were violated. ***McAllilster v. Price****,* 615 F.3d 877, 881 (7th Cir. 2010).  Plaintiffs must each prove both elements of their respective claims: (1) the existence of a recognized liberty or property interest, and (2) failure to receive the process that is due. ***Delgado v. Dept. of Interior,*** 153 F.3d 726, 726 (10th Cir. 1998).  If Plaintiffs do not prove both these elements, the Court should enter judgment in favor of Federal Heights.

### b. Substantive Due Process

Plaintiffs also bear the burden of proving a substantive due process claim. "Absent invidious discrimination, the presence of a suspect class, or infringement of a fundamental interest," Plaintiff must show that "the decision was 'arbitrary and capricious.'" ***Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.***, 927 F.2d 1111, 1119 (10th Cir. 1991) (internal citations omitted).  Further, when "defendants articulate[] a rational reason for their decision which is related to a legitimate government interest, [courts] will not look beyond it for evidence that the reason was a pretext." ***Norton v. Village of Corrales***, 103 F.3d 928, 933 (10th Cir. 1996).  "But the ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of *federal judges.*" ***Onyx Properties, LLC v. Elbert Cnty***, 838 F.3d 1039, 1050 (10th Cir. 2016) (quotation marks and citation omitted) (emphasis added).  Substantive due process is not intended to duplicate tort concepts or supplant state law. ***Cnty of Sacremento v. Lewis***, 523 U.S.. 833, 848.  It is only intended for governmental misconduct that falls "at

the ends of the tort law's spectrum of culpability." *Id.* Thus, the Constitution does not guarantee due care on the part of officials, but instead, government action must be egregious and intended to unjustifiably injure in such a way as to shock the conscious of a federal judge. *See id.* at 848-49; *Onyx*, 838 F.3d at 1050.

### c. Pertinent Facts

1. In September 2013, there was flooding the City of Evans that caused significant damage.  [Movant's Appx., p. 2, Ratkai Depo. 10:15-12:8].

2. The flood was unprecedented in its magnitude for Colorado.  [Movant's Appx., p. 4, Shriver Depo. 191:3-14; Movant's Appx., pp. 5-14, (Depo. Ex. 4), Movant's Appx., p. 2, Ratkai 10:15-12:8].

3. The flooding broke a berm along mobile home parks in Evans.  [Movant's Appx., p. 2, Ratkai 10:15-12:8].

4. This affected the mobile homes in the parks, which sat in flood-water for at least six days.  [Movant's Appx., p. 2, Ratkai 10:15-12:8; Movant's Appx, p. 445-46, Shriver I, 145:14-147:3 (Depo Ex. 42 – Photos)].

5. The flooding also occurred in an area with potential of water contamination including open lagoons used to treat sewage as well as oil and gas facilities and a landfill.  [Movant's Appx., p. 447-49, Ratkai 12:25-16:10]

6. After the flooding subsided somewhat, Evans was able to bring in inspectors to determine the extent of the damage.  [Movant's Appx., p. 2, Ratkai 10:15-12:8].

7. International Code Council (ICC) inspectors surveyed the damage to the homes and determined they were unsafe.  [Movant's Appx., pp. 19-20, Ratkai 18:10-21:5].

8. The ICC inspectors determined that reasonable attempts to repair the mobile

homes would be futile, and therefore the mobile homes should be destroyed and removed.  [Movant's Appx., pp. 19-20, Ratkai 18:10-21:5].

9.   Under authority of the Colorado Department of Public Health and Environment (CDPHE), Evans' de facto Building Official, Zach Ratkai, declared mobile homes as Tier 1 debris and a danger to public health.  [Movant's Appx., pp. 19-20, Ratkai 18:10-21:5; Movant's Appx., pp. 21-22 (Depo. Ex. 63)].

10. Ratkai declared the homes uninhabitable and unsafe, advising the homes were dangerous and in need of destruction.  [Movant's Appx., pp. 19-20, Ratkai 18:10-21:5; Movant's Appx., pp. 23-24, (Depo. Ex. 40); Movant's Appx., p. 45, Shriver 120:19-23].

11. Ratkai expected anyone moving the homes to know they were unsafe.  [Movant's Appx., p. 47, Ratkai 32:10-14].

12. During the Spring of 2014, the owner of Eastwood Village Mobile Home Park hired Riverside to clean up the park.  [Movant's Appx., p. 49, Cowan 39:12-14].

13. During that same time, the owner of Bella Vista Mobile Home Park allowed Shriver to take mobile homes from that mobile home park as well.  [Movant's Appx., p. 51, Shriver 64:1-20].

14. Riverside is owned and run by Shriver.  [Movant's Appx., p. 53, Shriver 9:2-5].

15. Rather than destroying and disposing of all of the homes that had been designated by Evans, Shriver destroyed some mobile homes and removed others. he believed could be resold for free.  [Movant's Appx., pp. 57-61, Shriver 63:19-65:11, 64:12-20, 67:9-78:12; Movant's Appx., pp. 62-63 (Depo. Ex. 28)].

16. Shriver tried to rehabilitate the homes by taking out all damaged and unsafe portions of the homes.  [Movant's Appx., pp. 65-67, Shriver Depo II 336:8-343:4].

17. Despite this attempt to make the homes safe for habitation, at least one home was found to still contain dangerous and potentially deadly bacteria when it was placed in another jurisdiction.  [Movant's Appx., pp. 69-71, Shriver II 358:11-364:4; Movant's Appx., pp. 72-77 (Depo. Ex. 171)]

18. Shriver and his attorney, Andrew Nimtz, believed that the homes were never properly ordered destroyed because Evans did not follow the proper procedure. [Movant's Appx., p. 82, Nimtz Depo., 20:2-21:20].

19. Nimtz informed Evans that their order prevented Shriver from placing the homes in other jurisdictions in the State.  [Movant's Appx. p. 442-44, Shriver I, 128:22-130:21; Movant's Appx., pp. 89-117 (Depo. Ex 38)].

20. Shriver moved some of the homes into Federal Heights and applied for some set permits, some of which were granted.  [Movant's Appx., pp. 119-21, Shriver 192:23-201:6; Movant's Appx., pp. 122-28, 129-39, 140-49 (Depo. Exs. 52, 53, and 54)].

21. Shriver owned only one of these homes as he did not have a dealer's license. [Movant's Appx., pp. 321-323, Shriver 13:22-14:14].

22. Shriver disclosed that the homes had been affected by a flood but did not disclose to Federal Heights their declared status as Tier 1 debris.  [Movant's Appx., pp. 151-52, Shriver 72:16-73:9; 209:25-210:19].

23. On July 24, 2014, Federal Heights wrote a letter to mobile home parks and setters stating that it had come to their attention that certain flood-affected mobile homes were being brought into Federal Heights.  [Movant's Appx., pp. 154-155, 2nd Supp. Resp. to Fed. Hts. Disc., p. 10; Movant's Appx., pp. 156-157].

24. Furthermore, Federal Heights' Building Inspector, Ken Ekross, inspected homes

in July 2014.  He was not informed of their Tier 1 designation or that they had been ordered to be destroyed by Evans.  [Movant's Appx., pp. 158-159, 2nd Supp. Resp. to Fed. Hts. Disc., p. 8; Movant's Appx., pp. 151-152, Shriver 72:16-73:9; 209:25-210:19].

25. Around August 19th, Federal Heights began discovering the true nature of the Evans' homes.  [Movant's Appx., p. 161, Fed. Hts. 185:25-186:2].

26. This included learning of letters written by Ratkai regarding the Tier 1 designation.  [Movant's Appx., p. 163, Fed. Hts. 165:23-166:9, Movant's Appx., p. 445, Shriver I, 142:15-14-143:7, Movant's Appx., p. 164-165, (Depo. Exs. 41)].

27. After finding out the homes were declared Tier 1 debris, Ekross traveled to Evans to discuss the declaration with Ratkai.  [Movant's Appx., p. 158-159, 2nd Supp. Resp. to Fed. Hts. Disc, p. 8; Movant's Appx., p. 167, Ekross Depo. 13:1 – 16:18].

28. Ekross was also tasked with finding out about any potential flood damaged homes in Federal Heights, which included physical inspection.  [Movant's Appx., pp. 169-170, Fed. Hts. 123:10-126:14].

29. Federal Heights official Steven Durian removed State of Colorado mobile home insignias from some Evans' mobile homes after learning the interiors had not been inspected.  [Movant's Appx., pp. 172-173, Durian Depo. 204:4–208:20.

30. After determining the true nature of the homes, the City revoked Shriver's set permits for failure to disclose the homes true condition, and out of concerns for public health, safety, and welfare.  [Movant's Appx., p. 175, Fed. Hts. 163:7-16].

31. These revocations occurred with Notices and Orders for Removal dated September 3, 2014 and September 19, 2014, citing the International Residential Code ("IRC") which applies specifically to the "construction, alteration, movement,

7

enlargement, replacement, repair . . . location, removal, and demolition" of buildings, and has a section of rules for manufactured homes. [Movant's Appx., p. 200, Fed. Hts. 87:3-88:2; Movant's Appx., p. 204, Shriver 92:22-93:15; Movant's Appx., pp. 176-195, (Depo. Exs. 11 and 30); 2012 IRC R.101.2].

32. The September 3rd Notice was sent to two mobile home parks in Federal Heights (including Kimberly Hills) stating that the City had learned that the parks contained homes that were contaminated, dangerous, and had toxic flood debris. [Movant's Appx., p. 200, Fed. Hts. 87:3-88:2].

33. The September 19 letter was then intended to inform the individual homeowners or setters of their responsibilities. [Movant's Appx., p. 202, Fed. Hts. 229:11 – 231:15].

34. Shriver received this September 19th Notice and Order for Removal Packet for each of the seven mobile homes that he set. [Movant's Appx., p. 204, Shriver 92:22-93:15; Movant's Appx., pp. 177-195, (Depo. Ex. 30)].

35. Shriver however chose to leave one home in the City, from which he received municipal citation issued under the IRC. [Movant's Appx., pp. 206-207, Shriver 101:24-102:25; Movant's Appx., pp. 208-214, (Depo. Ex. 34)].

36. The City determined the International Property Maintenance Code ("IPMC") applied as it determined the IPMC only covers the maintenance of structures previously within City limits. [Movant's Appx., pp. 216-217, Fed. Hts. 209:2-216:11].

37. Nimtz challenged the citation on behalf of Riverside. [Movant's Appx., p. 219-224, Nimtz 41:1-58:3; Movant's Appx., pp. 225-311, Depo. Ex. 129].

38. He alleged that the Notice was invalid under the IPMC. This was despite the IPMC not mentioning manufactured homes, being related to the maintenance (not

rebuilding) of structures, or being the basis of the citation.  [Movant's Appx., pp. 219-224, Nimtz 41:1-58:3; Movant's Appx., pp. 225-311, Depo. Ex. 129].

39. Shriver successfully challenged the citation in municipal court for the one home left in Federal Heights.  [Movant's Appx., pp. 313-314, Shriver 85:23-86:13].

40. The Court held that the City had not proven Shriver received the packet, despite Shriver later admitting such receipt.  [Movant's Appx., p. 450-52, Transcript 179:23-180:8; Movant's Appx., p. 204, Shriver 92:22-93:15; Movant's Appx., pp. 177-195, (Depo. Ex. 30)].

41. Shriver states he was deprived revenue from the rental properties when Federal Heights did not allow him to keep the Evans' homes in Kimberly Hills Mobile Home Park.  [Movant's Appx., p. 327, Shriver 24:11-23].

42. Despite winning in municipal court, Shriver voluntarily removed the City of Evans' homes from Kimberly Hills and no longer wishes to do business in Federal Heights. [Movant's Appx., p. 329, Shriver 26:21-27:7].

43. Despite having counsel who knew or should have known of the ability to appeal to the Board of Adjustment, Shriver did not appeal.  [Movant's Appx., pp. 331-332, Shriver 32:13-34:23; Movant's Appx., p. 334, Nimtz 52:11-53:10].

44. Kimberly Hills makes its income off residents paying lot rent on the manufactured homes.  [Movant's Appx., p. 336, Kim. Hills 33:1-5].

45. Kimberly Hills is managed by Kingsley Management Corporation, who also manages a number of other parks.  [Movant's Appx., p. 338, Kim. Hills 9:8-14; Movant's Appx., p. 453-55, Weibold 16-12-17:7].

46. Kimberly Hills worked with Shriver to bring in the condemned homes in an

attempt to fill empty lots in the park.  [Movant's Appx., p. 340, Kim. Hills 121:6-16].

47. Despite having access to an attorney, Kimberly Hills never appealed the Notice and Order for Removal.  [Movant's Appx., pp. 345-346, Kim. Hills 84:19-85:16].

48. Kimberly Hills did not own any of the homes that had been removed.  [Movant's Appx., p. 348, Kim. Hills II, 287:7-9].

49. Kimberly Hills Manager, Tonya Weibold, stated that she would be concerned in allowing a home into Kimberly Hills that had been declared destroyed and condemned. [Movant's Appx., pp. 350-353, Kim. Hills 112:20-114:5; 87:11-15; 169:25-171:18].

50. Kimberly Hills account manager, Jeff Bennett thinks that this information should have been disclosed to the City.  [Movant's Appx., p. 357-58, Bennett Depo., 34:13-25].

51. An employee for Kingsley Management, a manager of another mobile home park, Jeff Weibold, stated he would agree that evidence of E.Coli and Coliform being present in mobile homes was evidence of them being unsafe.  [Movant's Appx., pp. 355-356, Jeff Weibold Depo., 27:3-28:2; 178:9-14].

52. Kimberly Hills was able to rent all open spaces for mobile homes that had not been designated by Evans.  [Movant's Appx., p. 360, Kim. Hills 123:24-124:7].

53. The Lenders also did not own any of these mobile homes at the times they were put into Federal Heights, but rather loaned nonparty, Michael Wilson, the funds to purchase nine homes from Mr. Shriver.  [Movant's Appx., pp. 362-365, Cox Depo. 19:4-9, 20:7-15, 30:22-34:13, 156:19-157:5; Movant's Appx., p. 367, Hood Depo. 24:15-22; Movant's Appx., p. 369, Wilson Depo., 33:2-14]]

54. The Lenders do not have manufactured home dealer's licenses.  [Movant's Appx., pp. 371-372, Cox 25:11-26:23].

55. Hood does not dispute the Federal Heights' authority to deny the placement of the homes.  [Movant's Appx., p. 378, Hood 100:6-13].

56. The Lenders understand that as of September 27, 2013, the homes they loaned money to Wilson to purchase were ordered to be destroyed and removed by Evans. [Movant's Appx., p. 380, Cox 180:6-11; Movant's Appx., p. 382, Hood 46:6-47:6].

57. Hood believes that it was unreasonable for Federal Heights to rely on Evans' declaration.  [Movant's Appx., p. 384, Hood 49:12-23].

58. Wilson stated that Federal Heights is not preventing the homes from being sold. [Movant's Appx., p. 386, Wilson 37:3-15].

59. The City of Thornton also did not allow a flood-damaged home from being placed within its jurisdiction.  [Movant's Appx., p. 386, Wilson 37:3-15].

60. The City and County of Broomfield has also stated that it will not allow homes involved in the Evans' flooding within its jurisdiction.  [Movant's Appx., p. 206, Shriver 98:10-99:25; Movant's Appx., p. 456-73 (Depo. Ex. 32)].

61. Wilson did not appeal the removal of the homes, but was granted an extension of time to remove the homes.  [Movant's Appx., p. 388, Wilson 59:6-61:9; Movant's Appx., p. 389-390, (Depo. Ex. 5)].

62. It is the State of Colorado Division of Housing's position that some of the homes may be capable of being rebuilt, but that allowing the placement of the homes is under the ultimate jurisdiction of the local authority.  [Movant's Appx., p. 396, Nimtz 65:10-15; Movant's Appx., pp. 397-402, (Depo. Ex. 50].

63. Shriver also attempted to work with the State to rehabilitate the homes but he has halted that rehabilitation work, and the State has not signed off on the rehabilitation.

[Movant's Appx., p. 404, Shriver II, 364:5-16].

64. Wilson is also attempting to work with the State to get rebuilt Evans' mobile homes placed in the City of Castle Rock.  [Movant's Appx., pp. 406-407, Wilson 69:23-73:19; Movant's Appx., pp. 408-409, Depo. Ex. 158)]

65. Federal Heights refunded all permit fees that Mr. Shriver paid to move the homes into the City.  [Movant's Appx., p. 411, Shriver II, 367:6-12].

66. Federal Heights officials have in the past had cases appealed to the Board of Adjustment, which has the discretion to review building decisions made by City staff.  It has reviewed and overturned such decisions in the past.  [Movant's Appx., pp. 413-415, Fed. Hts. 71:15-78:2]

67. The Municipal Code of Federal Heights is available online, as is the IRC, and the IPMC.  [Movant's Appx., pp. 416-418, Williams Aff.].

68. These resources are also available at City Hall upon request.  [Movant's Appx., pp. 416-418, Williams Aff.].

### d.  Plaintiffs cannot prove a recognized property interest

To prevail on a procedural due process claim, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest."  *Nichols v. Bd. of Cnty Com'rs of Cnty of La Plata, Colo.*, 506 F.3d 962, 969 (10th Cir. 2007).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it… [or] a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Id.* at 969.  Here, Federal Heights took two actions: it issued set permits for manufactured homes based on incomplete information, and then revoked the permits and ordered the homes to be removed.  *See* Facts 24 –

45. It did not issue building permits for any of the homes.  Plaintiffs must prove that one of those two actions gave them a legitimate claim to an entitlement.  They cannot do so.

First, no Plaintiff can establish that they had a protectable property interest in having the Evans' homes remain in Federal Heights.  Such a property interest would be "created and [its] dimensions … defined by existing rules or understandings that stem from an independent source such as state law."  ***Schanzenbach v. Town of La Barge***, 706 F.3d 1277, 1284 (10th Cir. 2013) (internal citation and quotation marks omitted).  ***Schanzenbach*** is a strong precedent against Plaintiffs' positions.  There, a Town granted a building permit to an individual who wished to place a manufactured home in its jurisdiction.  ***Id.*** at 1279.  The permit application stated the permit "may be suspended or revoked if issued in error or on the basis of incorrect information supplied by the applicant."  ***Id.***  Two weeks later, the Town issued a letter stating that the applicant's building permit would be revoked because the home the "only singlewide trailer" on the block, and it was the Town's "design from the start" to protect property values of the current homeowners.  ***Id.***  No notice was given to the applicant.  ***Id.***  Given the Town's discretion and corresponding ability to revoke the permit, the Tenth Circuit reasoned that the applicant's "pre-issuance expenditures" did not rise to a vested right when the permit was issued, and the applicant did not have a protected property interest.  ***Id.*** at 1283-85.

Similarly, in ***Gunkel v. City of Emporia, Kan.***, 835 F.2d 1302, 1304-05 (10th Cir. 1987), the Tenth Circuit ruled that where a state law "does not recognize property rights in building permits which have been issued by mistake or in violation of state law," plaintiffs do not have a property interest in the permit.  This is even the case when state

law does not make exceptions for mutual understandings between applicants and a municipality about the nature of the permit's issuance. *Id.* at 1304-05. Rather, the Tenth Circuit held that such a law did not grant a property right and "[t]hus, revocation of the permit without notice or hearing does not amount to a harm for which section 1983 provides a remedy." *Id.* at 1305.

Additionally, a party cannot have an entitlement in a permit if officials have discretion in issuing the permit. "In the municipal land use context, … the entitlement analysis presents a question of law and focuses on whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs." *Nichols*, 506 at 970 (10th Cir. 2007) (citations and quotation marks omitted). "A property interest exists if discretion is limited by … whether the procedures, if followed, require a particular outcome. On the other hand, where the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue, no property interest is impacted." *Id.* (citations and quotation marks omitted).

In Colorado, and Federal Heights' specifically, the building code allows for the revocation of a permit "wherever the permit is issued in error or on the basis of incorrect, inaccurate or incomplete information, or in violation of any ordinance or regulation or any of the provisions of [the IRC]." I.R.C. R105.6. There is no exception for a mutual understanding regarding the factual basis for the permit. In addition, Federal Heights' officials have the discretion to grant or deny a set permit. As the information provided to Federal Heights was incomplete, the codes give the City the ability to revoke the permit. Therefore, there is no property interest in the permits.

### i.   Riverside Storage Lacks a Protectable Property Interest.

Here, Federal Heights issued some permits, which Shriver and Wilson used to set homes.  *See* Facts, 20-24, 53.  But Shriver did not inform the City that the homes had been declared Tier 1 debris, were dangerous, and ordered to be destroyed by Evans.  Id.  Therefore, the permits were issued on the basis of incomplete information.  *See* Facts, 24-44.  Federal Heights then revoked the permits on this basis.  *See* Facts 31-36.  Further, Shriver only owned one of the homes he placed in Federal Heights.  *See* Facts, 21.  As Federal Heights' building officials used their discretion to issue and revoke set permits, Riverside does not have a protectable property interest.  *See* Facts 24-40.

### ii.   The Lenders Lack a Protectable Property Interest

The Lenders have an even more tenuous claim of a property interest, as they did not own any of the homes set in Federal Heights and did not have any set permits.  *See* Facts, 53-54, 56.  Rather, they only loaned money to purchase homes, which were set in Federal Heights.  Defendants have been unable to find any case law or statute in Colorado supporting a proposition that parties have a constitutionally protected property interest in a loan.  Therefore, the Lenders cannot meet their burden of proving a property interest here.

### iii.   Kimberly Hills Lacks a Protectable Property Interest

Like Riverside Storage, Kimberly Hills argued its potential property interest is in a set permit in the flood homes that was not issued to it.  How it can have a property interest in such permits is unclear.  Regardless, as stated above, Federal Heights' officials have discretion regarding whether to issue permits.  Federal Heights did not

prevent all homes from being set in Kimberly Hills, only certain flood-damaged homes that Evans condemned and ordered destroyed.   In fact, the City has allowed other homes to be set in the park such that Kimberly Hills can no longer accommodate any flood homes as it has no more empty spaces.   *See* Facts, 52.   Therefore, as Federal Heights' officials used their discretion in denying a permit, Kimberly Hills cannot prove an entitlement to the permits rising to the level of a property interest, even if it had the permits issued to it.

### e.   Plaintiffs also had adequate process available to them.

If Plaintiffs are successful in proving the existence of a protectable property interest, they then must prove that they did not receive the process to which they were entitled.   *Delgado*, 153 F.3d at 726.   "In determining what process is due, [courts] consider: (1) the private interest the official action will affect; (2) the risk of depriving that interest erroneously through the procedures used, and the value, if any, of further safeguards; and (3) the burden on the government additional procedures would entail." *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 395 Fed. App'x 887, 891-92 (10th Cir. 2010).   In the Tenth Circuit, "a municipality has an interest in maintaining its ability to act quickly to bring a halt to construction work that poses a threat to the public or the environment."   *Id.* at 893.   Given this, post-deprivation procedures can be sufficient under the circumstances.   *Id.*

### i.      The Notice Given Was More than Sufficient

As for Plaintiffs' claim that Federal Heights violated due process by not providing sufficient notice, it is their burden to prove that the notice was insufficient.   *Delgado*, 153 F.3d at 726.   They allege that since the IPMC requires certain information included

in a notice, failure to do so is a due process violation.  Fourth Am. Comp. ¶ 63, Doc. 78.

Even if the City were to accept that the IPMC requirements apply despite the Notice

being issued under the IRC, since the provisions of the codes and municipal law are

readily available to the general public, an individualized notice of the appeals process

available is not required under the Constitution.  ***City of West Covina v. Perkins***, 525

U.S. 234, 242 (1999).    Rather, municipalities are required to list the available

procedures for appeal only when "those procedures are arcane and are not set forth in

documents accessible to the public." ***Id.***  Overall, there is not "a general rule that notice

of remedies and procedures is required" in dealings with municipal governments.  ***Id***.

     In 2015, a federal court examined this rule as it applies to the IPMC.  There, after

receiving an Order to Repair or Demolish, a party was evicted from his home that was

later condemned and razed.  ***Kennard v. City of Ashland, Ken.***, 2015 WL 5194090,

*1-*2 (E.D.Ken. Sept. 2, 2015).   Plaintiff asserted that he did not receive adequate

notice of the IPMC's appeals process, thereby violating due process.  ***Id.*** at *4.   The

Court, relying on ***City of W. Covina***, ruled that "[g]iven the widespread access to the

provisions of Section 111 of the IPMC" individualized notice of the IPMC's appeal

procedures was not required.  ***Id.*** at *5.  The Court reasoned that since the notice cited

the provisions of the Code violated, copies of the Code are published in book form, the

Code is available in libraries or the City building, and "[t]he provisions of the Code are

accessible   to   all   on   the   internet   simply   by   "googling"   "International   Property

Maintenance Code," the appeals procedures were readily available to Plaintiff and

individualized Notice of the appeals process was not required.  ***Id.*** at *4-*5.

Here, provisions of the IPMC are available to the public online.   *See*

*http://codes.iccsafe.org/app/book/toc/2015/I-Codes/2015_IPMC_HTML/index.html*.   In

fact, Mr. Shriver's attorney found the provisions of the IPMC through general research

and without assistance from Federal Heights *and actually asked Mr. Shriver if Federal*

*Heights had told him about his right to appeal*.  Movants' Appx. p. X –Nimtz 42:4 – 44:8.

Federal Heights' website includes a link to all codes adopted by the City and its

complete municipal code is also generally available through an internet search.  See*e*

*http://www.fedheights.org/index.asp?SEC=E0D5E6BC-02A8-4AEF-88A1-*

*9093297C3662&Type=B_BASIC*.  Therefore, even if the IPMC applied in this case, and

the City did not follow it, an individualized notice of the procedures set out by the code is

not sufficient to sustain a *constitutional* violation of the due process clause.

### ii.    Each Plaintiff chose not to appeal.

To succeed in their claims, Plaintiffs must also prove that the procedures

available to them were not sufficient to protect against erroneous deprivations of their

due process rights.  ***Rocky Mountain Rogues, Inc.***, 395 at 892-94.  Federal Heights

has a Board of Adjustment in place that has "the power to hear and decide appeals from

the rulings of the administrative official where it is alleged there is an error in any order,

requirements, decision or determination made by the administrative official in

enforcement of" building or zoning codes.  Fed. Hts. Muni. Code § 70-56.  A party need

only file an appeal noting the alleged error with the official and the Board, and the

official will send all documents to the Board for the record.  ***Id.***  There is no set time limit

for the appeal.  ***Id.***  If the applicant objects to the Board's decision, they are allowed to

appeal the ruling to District Court  Id. at § 70-60.

Here, the Plaintiffs never appealed the Notice and Order for Removal. *See* Facts, 43, 47, 61. This is despite the fact that they are still allowed to make such an appeal. Therefore, the Plaintiffs have a two-tier appeals process available to them to which they have not availed themselves. Given this, the process available to Plaintiffs is sufficient as a matter of law.

### f. Substantive Due Process

#### i. Riverside Storage and Kimberly Hills Cannot Prove a Violation of their Substantive Due Process Rights

Riverside Storage and Kimberly Hills cite ongoing animosity with Ken Ekross and staff at Federal Heights for the basis of their substantive due process claims. Plaintiffs are unable to present a triable issue of arbitrary and capricious conduct by the City, nor present a claim that shocks the conscience. The City has also articulated a rational reason for its decision that is related to the public health, safety, and wellness. *See* Facts 24 – 40. Additionally, a substantive due process claim would be merely duplicative of the procedural due process claim under these circumstances. Therefore, Riverside Storage and Kimberly Hills cannot sustain a substantive due process claim.

#### ii. The Lenders Cannot Prove a Violation of their Substantive Due Process Rights

The Lenders face the same hurdles as the other Plaintiffs but have even less connection to the process. The Lenders' claims therefore fail.

### CONCLUSION

Therefore, the Defendants respectfully request this Court grant summary judgment in their favor as to all claims, award them reasonable costs and attorneys' fees, and grant such other and further relief as the Court deems appropriate.

Respectfully submitted this 2nd day of August, 2017.


s/ J. Andrew Nathan
J. Andrew Nathan
Brenden Desmond
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO  80237-2776
Phone Number: (303) 691-3737
Fax: (303) 757-5106
anathan@ndm-law.com
bdesmond@ndm-law.com
Attorneys for Federal Heights Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of August, 2017, I electronically filed the foregoing **DEFENDANT'S RENEWED MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT** via CF/ECM to the following:

Aimee M. Bove
Bove Law Offices, P.C.
1325 S. Colorado Blvd., #503
Denver, CO 80222
above@bovelaw.onmicrosoft.com
Attorney for Plaintiffs

_s/ J. Andrew Nathan_
J. Andrew Nathan
NATHAN DUMM & MAYER P.C.