**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02325-CMA-NYW

**RIVERSIDE STORAGE AND RECYCLING CENTER**, a Colorado Limited Liability Corporation;
**CRAIG SHRIVER**, individually;
**KEVIN COX**, individually;
**JOHN HOOD**, individually; and
**KIMBERLY HILLS**, a Foreign Limited Liability Company

Plaintiffs,

v.

**CITY OF FEDERAL HEIGHTS**, a Colorado Municipal Corporation;

Defendant.

**DEFENDANT'S MOTION PURSUANT TO RULE 702 AND 403 TO PRECLUDE STEPHEN THOMAS, KEN ESSEX, AND CRAIG SHRIVER**

Defendant City of Federal Heights submits the following Motion pursuant to Rule 702 to Preclude Stephen Thomas, Ken Essex, and Craig Shriver from Testifying or Offering Opinions as follows:

**CERTIFICATION PURSUANT TO D.C.COLO.LCivr. 7.1**

The undersigned confirms that he conferred with Plaintiffs' counsel on the matter. Plaintiffs oppose the requested relief.

**INTRODUCTION**

As this Court is aware, this is an action in which Plaintiffs assert that the Defendants have violated their Due Process rights for which Plaintiffs are seeking monetary damages. [Doc. No. 78]. Plaintiffs allege that the City relied on the wrong

building code (the legal standards that the homes must meet) when the City issued its Notices and Orders for Removal. In support of this contention, Plaintiffs intend to call Stephen Thomas to opine that the legally correct code on which the City should have relied was the International Property Maintenance Code ("IPMC"), and not the International Residential Code ("IRC") which the City followed. These opinions—what legal standards apply—are legal opinions that invade the province of the Court to instruct the jury on the law. Therefore, Mr. Thomas should be excluded from testifying.

Secondly, most of Plaintiffs' damages allegedly arise from the profit they would obtain from placing flood-damaged mobile homes in the City of Federal Heights, despite the fact that only Shriver owned a single home. This profit would purportedly be determined based on the revenues received minus expenses, including rehabbing the damaged homes. In support of their contentions, Plaintiffs disclosed two experts as non-retained witnesses in rebuttal: Ken Essex and Craig Shriver.

However, as shown below, Mr. Essex's and Mr. Shriver's opinions do not meet the minimum requirements under Rule 702, and are not proper rebuttal opinions, and thus they should be precluded.

**MATERIAL FACTS**

1. Plaintiffs, Riverside Storage and Recycling Center and Craig Shriver originally brought this claim against the City of Federal Heights and a number of current and former Federal Heights' employees. New Plaintiffs have been added, Defendants have been dismissed, and the Complaint has been amended a number of times, most recently the Fourth Amended Complaint on October 21,

    2016.  [Doc No. 78].

2. The Plaintiffs agreed to dismiss the remaining three individual Defendants, leaving City of Federal Heights as the only Defendant.  [Doc. No. 140].  As a result, the interlocutory appeal based on qualified immunity was voluntarily dismissed by Defendants.

3. In their Complaint, Plaintiffs allege that the City of Federal Heights violated their due process rights by not allowing mobile homes that were damaged in the City of Evans September 2013 flooding to be placed in the City.  [Doc No. 78]. Plaintiffs allege that such violation caused monetary damages.  [Id.].

4. Plaintiffs also allege that the City relied on the incorrect legal standards in issuing Notices and Orders for Removal of the flood-damaged homes.  [Id.].  Plaintiffs believe that the correct legal code under which to issue the Notices is the International Property Maintenance Code, ("IPMC") and not the International Residential Code ("IRC").

5. In support of their allegations, Plaintiffs submitted Rule 26(a)(2) Expert Disclosures on September 16, 2016.  [Plaintiffs' Initial Expert Disclosures, Ex. A].

6. To bolster their legal opinions, Plaintiffs designated Stephen Thomas, a building code consultant.

7. In his opinion, Mr. Thomas opines that the initial notice issued by the City did not comply with the IPMC or Federal Heights' Municipal Code.  [Ex. B, Thomas Report, p. 4].

8. Mr. Thomas further opines that the second Notice did not accurately apply a

section of the IRC. [Id.].

9. Similarly, Mr. Thomas opines that since the IPMC includes Notice for the Right to Appeal while the IRC does not, that the IPMC should have been utilized. [Id. at p. 7]. That is, Mr. Thomas opines that the City applied the incorrect law in developing the Notices and Orders for Removal. [Id.]. To support this conclusion, Mr. Thomas researched the law regarding building codes and asserts that the City should have followed Chapter 16 of the book <u>Building Department Administration</u>, which "covers the legal aspects of code administration and enforcement." [Id.]. Mr. Thomas then opines that the City did not follow the section of the book entitled "Legal Due Process." [Id.].

10. Next, Mr. Thomas asserts that the City did not follow the legal requirements of inspections as required by the IRC. He specifically cites the book "Legal Aspects of Code Administration," to bolster his opinion. [Id. p. 8].

11. Similarly, Mr. Thomas opines that the City should have provided more training to the building inspector Ken Ekross on "the legal aspects of building department administration." [Id.]. In quoting an author discussing building administration, Mr. Thomas states that building administration is "governed by a broad spectrum of legal maneuvers, restrictions, prohibitions and mandates. Omitting or ignoring any required legal step dilutes the intent and effectiveness of law…" [Id.]. Mr. Thomas then opines that because of lack of training, Mr. Ekross violated these laws. [Id., p. 9].

12. Along with Mr. Thomas, Plaintiffs also designated Plaintiff Craig Shriver as a non-

retained expert, and provided a summary of Mr. Shriver's opinions.

13. This opinion included the following statement: "Mr. Shriver will testify that once a building permit is signed off and a CO issued, the house is safe for occupancy."

14. On October 14, 2016, Defendants disclosed their own experts and provided their reports as required by the rules. [Defendants' Expert Disclosures, Ex. C].

15. Plaintiffs then submitted their "Rule 26(a)(2) Expert Rebuttal Disclosures," on October 24, 2016. [Plaintiffs' Rebuttal Disclosures, Ex. D].

16. In these Disclosures, Plaintiffs identify two non-retained experts, Ken Essex and Plaintiff Craig Shriver, again, and provided summaries of Mr. Essex's and Mr. Shriver's opinions. It is unclear what prior relationship, if any Mr. Essex had with Plaintiffs or the case so as to be properly designated as a non-retained expert.

17. Despite being designated as "rebuttal" experts and testimony, these summaries of testimony only include four sentences remarking on Defendants' expert testimony:

> Mr. Shriver will testify that the standard in the industry is not the remediation protocol provided in Defendants' expert report. Furthermore Mr. Shriver will testify that the labor rates reflected in Defendants' expert report do not reflect the actual labor wages paid by himself or Mr. Shriver [sic] when remediating/remodeling used manufactured homes. Instead labor is hired between 10-20 dollars per hour. Also Mr. Shriver will testify that he personally performs a large amount of work at no additional cost."

18. Save for the name being changed, Mr. Essex's opinions in "rebuttal" are exactly the same as Mr. Shriver's.

19. Similarly, a majority of Mr. Shriver's remaining rebuttal opinion is exactly the same as the testimony outlined in his initial expert disclosure. The only

difference is 9 lines regarding remediation practice in the industry and "his own baseline standard protocol in remediating Category 3 water affected homes." [Ex. D; Rebuttal Disclosure Attachment, Ex. E]. This protocol is an undated photograph of a one-page, handwritten note (also undated). This does not rebut any testimony from Defendants' experts.

20. Mr. Essex's other opinions presented in the rebuttal disclosures, on the other hand, are exactly the same as the testimony presented as Mr. Shriver's in Plaintiff's Initial Expert Disclosures. [Compare Ex. D and Ex. A].

## LEGAL ANALYSIS

### *A.  Applicable Legal Standard*

As is well established, the admission of expert testimony is governed by Fed. R. Evid. 702. In order to testify as an expert, the Court must find that 1) the expert's opinion is based upon sufficient facts or data; 2) the opinion is the product of reliable principles and methods; and 3) the expert has applied the principles and methods reliably to the facts of the case. Fed.R.Evid. 702. In ***Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579, 597 (1993), the Supreme Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." The objective of the "gatekeeping" requirement of ***Daubert*** and Rule 702 is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." ***Kumho Tire Co. v. Carmichael,*** 526 U.S. 137, 152 (1999).

The party offering the expert's opinion "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements." **Goebel v. The Denver and Rio Grande W. R.R. Co.**, 346 F.3d 987, 991 (10th Cir. 2003). If any step of the analysis renders an expert's testimony unreliable, then the testimony must be excluded. **Mitchell v. Gencorp, Inc.**, 165 F.3d 778, 783-84 (10th Cir. 1999).

Further, even if the Court finds the testimony to be reliable, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; **Eller v. Trans Union, LLC**, 739 F.3d 467, 475 (10th Cir. 2013); *see also* **Marsee v. United States Tobacco Co.**, 866 F.2d 319, 324 (10th Cir.1989) (holding that trial court has discretion to exclude repetitive and cumulative expert testimony).

### *B.     Stephen Thomas's Testimony Attempts to Instruct the Jury on the Law*

Federal Heights first moves that the Court prohibit Plaintiffs' expert Stephen Thomas from testifying as to whether Federal Heights should have followed the International Property Maintenance Code instead of the International Residential Code and that the City violated the Notice provision of the IPMC. Such testimony attempts to invade the province of the court to instruct the jury on the law. It is the sole authority of the trial court "to instruct the jury on the applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability." **Specht v. Jensen**, 853 F.2d 805, 807 (10th Cir. 1988). "Testimony which articulates and applies the relevant law circumvents

7

the fact-finder's decision making process by dictating how to decide the case or what result to reach." **Smith v. Colorado Interstate Gas Co.**, 794 F.Supp. 1035, 1044 (D.Colo. 1992).

Here, Plaintiffs have retained Mr. Thomas to testify that the City of Federal Heights was incorrect in following the standards of the International Residential Code, and should have followed the IPMC. [Ex. B, p. 6-7]. Mr. Thomas will further testify that given this, Federal Heights' Notices and Orders for Removal failed to meet the legal standards regarding Notice of an Appeal set out under the IPMC. These opinions are a clear attempt to instruct the jury that the IPMC applies, that the City violated the IPMC, and therefore, the jury should find against the City. Such testimony is irrelevant under F.R.E. 702 because building codes do not set constitutional standards. Similarly, by attempting to present an alleged violation of a code set as "illegal," Mr. Thomas's testimony will likely lead to a confusion of the issues in violation of F.R.E. 403.

In analyzing these issues, a helpful case is **United States Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, LTD**, 582 F.3d 1131, 1149-51 (10th Cir. 2009). In a portion of that case, involving whether a "Pilot Operating Handbook" complied with Federal Aviation Regulations, the trial court allowed an expert to testify that the handbook should have included instructions on how to restart the engine in flight. **Id.** at 1150. The expert further testified that the Regulations required that there should be a procedure so that the engine could be restarted in flight. **Id.** During appellate review, the Tenth Circuit ruled that the trial court abused its discretion in allowing the testimony. **Id.** at 1151. The Court stated that "the regulation was written in

straightforward language and was quoted verbatim in" a jury instruction. *Id.* at 1150. The Court therefore reasoned that "such testimony invades the province of the court to instruct the jury on the law," and that "nothing about the regulation suggests explanation by an expert was required, and such testimony also violates the rule against experts testifying as to the law governing the jury's deliberations." *Id.* at 1151.

Here, nothing about the differences between the IRC and the IPMC suggests that an explanation by an expert is required. Both codes have clear language regarding how they apply and what is required of them. Rather, like the expert in *Pilatus*, Mr. Thomas will attempt to tell the jury what the IPMC required to the City to include in the Notices and Orders for Removal. In support of his contentions, Mr. Thomas researched and specifically cites sources such as "Legal Due Process" and "Legal Aspects of Code Enforcement," thereby invading the province of the court in instructing the jury on legal standards. Furthermore, exclusion of Mr. Thomas will make it unnecessary for the City to call its code expert, Gil Rossmiller. This would eliminate two expert witnesses from a cramped trial schedule, thereby saving time, and avoiding confusion for the jury. Therefore, the Court should exclude Mr. Thomas from testifying.

**C.   Mr. Shriver's Opinions are Unreliable and Include an Improper Legal Opinion**

Since Mr. Shriver is identified as a non-retained expert, he is not required to provide a report, but the disclosure must include "a summary of the facts and opinions to which the witness is expected to testify." **Fed. R. Civ. P. Rule 26(a)(2)(C).** In Plaintiffs' Initial Expert Disclosure, a number of these opinions are listed, including such

opinions as "Mr. Shriver will testify that once a building permit is signed off on and a [Certificate of Occupancy] issued, the house is safe for occupancy." However, Plaintiff provides no basis for this opinion and such a blanket statement seems to disregard such issues with regards to Certificate of Occupancy like mistake or fraud. Is it Mr. Shriver's opinion that if a building official mistakenly over looked a potentially dangerous condition in a home, that the Certificate of Occupancy made it safe? We do not know because no basis for his opinions is included. Without the provision of the basis of his opinions, this opinion is per se unreliable.

Similarly, the opinion is also a legal opinion as it states the legal effect of a certificate of occupancy. Shriver has no legal expertise to allow him to give legal opinions, and such legal opinions invade the province of the Court to instruct the jury on the law.

Finally, in these opinions, and throughout the litigation, Plaintiffs make allegations regarding building permits and certificates of occupancy. Yet, no building permits were issued in this case; only set permits were issued. Rather, Plaintiffs (and Mr. Shriver here) attempt to use sleight-of-hand to confuse the jury into thinking set permits, building permits, and certificates of occupancy were issued for each flood-damaged home. They were not. Rather, including this information is an attempt to confuse the jury into thinking they homes were safe.

Plaintiffs also include opinions of Mr. Shriver regarding the remodeling or refurbishing of homes given Mr. Shriver's "vast experience in refurbishing and remodeling mobile homes," including "over 250 manufactured home remodels." This

would be relevant if the facts of this case involved traditional mobile homes. Rather, this case involves homes that were involved in historic flooding, that may have been contaminated by wastewater and oil debris, and that were determined to be unsafe Tier 1 Debris by the City of Evans and ICC inspectors. Nothing in Plaintiffs' disclosures state that Mr. Shriver has any experience in remediating such homes. Furthermore, Plaintiffs provide no evidence that such experience makes Mr. Shriver's opinion reliable, that such previous experience was done in a safe and competent manner or how the experience applies to this case. Therefore, Plaintiffs cannot show that Mr. Shriver's opinions are "based on sufficient facts and data" or "the product of reliable principles and methods." For these reasons, Mr. Shriver's above "expert" opinions are per se unreliable.

### *D.     Mr. Shriver's Opinions are Improper "Rebuttal" Opinions and Should Have Been Included in Plaintiffs' Initial Expert Disclosures*

"A witness designated as a rebuttal expert witness, is a witness intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." ***Carroll v. Allstate Fire & Cas. Ins. Co.***, No. 12-CV-00007-WJM-KLM, 2013 WL 3810864, at *5 (D. Colo. July 22, 2013) (summarizing holdings from various jurisdictions) (internal citations and quotation marks omitted).

In addition to including a summary of Mr. Shriver's opinions in Plaintiffs' Initial Expert Disclosures, Plaintiffs also disclose Mr. Shriver in their Rebuttal Disclosure and summarize his opinions. Only one paragraph of these opinions, however, is different from Mr. Shriver's opinions listed in Plaintiffs' Initial Disclosures. [Ex. D, unmarked p. 6].

11

Furthermore, as part of their rebuttal, only four sentences even mention Defense expert opinions and these are limited to the proper cost of labor. The remaining portions of the paragraph discuss a document that was part of Plaintiffs' Initial Expert Disclosure, and a "baseline standard protocol in remediating Category 3 water affected homes."

These opinions, however, are clearly not rebutting or contradicting Defendants' experts. Rather, they are opinions that should have been disclosed as part of Plaintiffs' Initial Expert Disclosures. The first opinion discusses the estimated costs from one of Plaintiffs' initial experts, Mr. Knolls. The other opinion is designated as Mr. Shriver's standard protocol, which if true means that the protocol was around long before any expert disclosures in this case. If Plaintiffs wished to use it at trial, it should have been included in Plaintiffs' Initial Expert Disclosures. As it was not, Mr. Shriver should be precluded from testifying to the opinions outlined in Plaintiffs' Rebuttal Disclosures.

### E. Mr. Essex's Opinions are also Improper "Rebuttal" Opinions and should have been included in Plaintiffs' Initial Expert Disclosures

In addition to disclosing Mr. Shriver in their Rebuttal Disclosure, Plaintiffs' also designate Ken Essex as a non-retained rebuttal expert. Like with Mr. Shriver, Plaintiffs summarize Mr. Essex's rebuttal opinions in this Disclosure. And like the summary of Mr. Shriver's testimony, only four sentences of Mr. Essex's opinions are in direct response to Defendants' Experts. These, in fact, are the exact same opinions that are included in Mr. Shriver's rebuttal opinion. The remaining opinions, however, are the same opinions that were included as Mr. Shriver's opinions in Plaintiffs' Initial Expert Disclosures. Therefore, like with Mr. Shriver, Mr. Essex's opinions are not proper

rebuttal opinions, but rather opinions that should have been included in Plaintiffs' Initial Expert Disclosures.  Since Plaintiffs failed to include these opinions in their Initial Expert Disclosures, Mr. Essex should be precluded from testifying to them.

### *F.      Mr. Essex's Opinions are Cumulative and should be Precluded*

Finally, as Mr. Essex's opinions are identical to those of Mr. Shriver, Mr. Essex's testimony is per se cumulative.  Furthermore, as the opinions are the exact same, the probative value of such testimony is outweighed by the cumulative nature of his and Mr. Shriver's testimony.  For these reasons, Mr. Essex should be precluded from testifying at trial.

### *G.      Federal Heights Does Not Request an Evidentiary Hearing*

As its requested preclusion of Mr. Thomas, Mr. Essex, and Mr. Shriver is based largely on the subject matter of the testimony, and the failure to comply with disclosure requirements, not on the witness's qualifications, the City believes that an evidentiary hearing is not necessary to resolve the issues presented in this Motion.

### CONCLUSION

**WHEREFORE,** Defendant respectfully request that Mr. Thomas and Mr. Essex be precluded from testifying at trial.  Defendant further requests that Mr. Shriver be precluded from testifying as to his "standard remediation protocol" and Mr. Knoll's repair costs.  Mr. Shriver should further be precluded from testifying regarding the legal significance of a certificate of occupancy.

Respectfully submitted this 14TH day of August 2017.

*s/ J. Andrew Nathan*
J. Andrew Nathan
Brenden Desmond
*Nathan Dumm & Mayer P.C.*
7900 E. Union Avenue, Suite 600
Denver, CO 80237
Phone: (303) 691-3737
Email: bdesmond@nbdmlaw.com,
anathan@nbdmlaw.com
*For Defendant Federal Heights, et. al.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14TH day of August, 2017, I electronically filed the foregoing **DEFENDANTS' MOTION PURSUANT TO RULE 702 AND 403 TO PRECLUDE STEPHEN THOMAS, KEN ESSEX, AND CRAIG SHRIVER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses:.

Aimee M. Bove, #36915
Bove Law Offices, P.C.
1325 S. Colorado Blvd., Ste. 503
Denver, Colorado 80222
Phone: (303) 918-4355
Fax: (303) 320-8578
Email: above@bovelaw.onmicrosoft.com
*ATTORNEY FOR PLAINTIFFS RIVERSIDE STORAGE AND RECYCLING CENTER, CRAIG SHRIVER, KEVIN COX, JOHN HOOD, AND KIMBERLY HILLS*


*s/ J. Andrew Nathan*
J. Andrew Nathan