

# Colorado Code Consulting, LLC

**EXHIBIT B**

| Main Office | Southern Office | Mountain Office |
|---|---|---|
| 4610 S Ulster, Ste. 150 | 17890 Woodhaven Dr. | 152 Larson Lane |
| Denver, CO 80237 | Colorado Springs, CO 80908 | PO Box 1261 |
| (303) 400-6564 | 303-895-9988 | Frisco, CO 80443 |
| Fax: (303) 693-0630 | | (303) 591-9258 |

September 15, 2016

Ms. Aimee M. Bove
BKN Murray, LLP
6795 E. Tennessee Avenue, Suite 330
Denver, Colorado 80224

Re: Riverside Storage, et al v. City of Federal Heights, et al
US District Court, Colorado 1:15-cv-02325-CMA-NYW
Expert Opinion

Dear Ms. Bove:

I have reviewed the information that you provided to me regarding the above lawsuit and developed this expert report as you requested. I have also conducted my own research on the application of the building codes by the City of Federal Heights in this case. I will provide my opinion on the way that the City acted and the enforcement of the applicable codes.

A copy of my CV providing a summary of my education, training and experience is attached with this report. It also includes publications that I have authored and a summary of my deposition and trial testimony.

In order to formulate this report, I reviewed the following documents.

- 2012 International Residential Code, published by the International Code Council
- 2012 International Property Maintenance Code, published by the International Code Council
- Legal Aspects of Code Administration, 2002 Edition, Ninth Printing, August 2007
- Building Department Administration, 4 Edition, First Printing, September 2012
- Building Permit File for 2311 W 92nd Ave., Space 387, Federal Heights, CO
- Building Permit File for 9400 Elm Ct., Space 516, Federal Heights, CO
- Notice and Order for Removal dated September 3, 2014.
- Notice and Order for Removal for 9400 Elm Ct, Space 516, Federal Heights, CO dated September 19, 2014
- Notice and Order for Removal for 2311 W 92nd, Space 387, Federal Heights, CO dated September 19, 2014
- State of Colorado Department of Public Health and Environment, 2013 Floods – Guidance: Management and Disposal of Flood Debris, dated September 19, 2013

- Letter from N. Zach Ratkai, City of Evans Building and Development Manager to Aden Hogan, City of Evans City Manager regarding Teir I Debris Designation, dated November 25, 2013
- City of Federal Heights Used Manufactured Home Set Inspection Policy.
- Deposition of Mr. Kenneth Ekross – August 9, 2016
- Deposition of Mr. Steven Durian – July 18, 2016
- State of Colorado, Department of Housing, Manufactured Homes and Factory Built Housing, Installation Handbook
- Federal Heights, Timeline: Flood Damaged Mobile Home #CLW017405TX, dated 5/13/2015
- Building Department Field Inspection Report, for Permit Number 14-023, 2311 West 92nd Avenue, #387, dated 8/1/14
- Building Department Field Inspection Report, for Permit Number 14-032, 9400 Elm Court, #516, dated 8/1/14
- Copies of building permit files for the "Legacy Homes" set by Almighty Construction.
- ATC-20 Rapid Evaluation Safety Assessment Forms from Bella Vista Mobile Home Park in Evans, Colorado
- Appendix A of ATC-20, "Guidance for Owners and Occupants of Damaged Buildings"

## Background

In September, 2013 a flood occurred across Colorado including the City of Evans, Colorado. During that flood, several manufactured homes were damaged. Mr. N. Zach Ratkai, Building and Development Manager for the City of Evans summarily declared 208 homes located in three mobile home parks as "Tier 1 Debris" under the Colorado Department of Public Health and Environment "2013 Floods – Guidance: Management and Disposal of Flood Debris. This determination was made based on inspections conducted by the Colorado Chapter of the International Code Council Damage Assessment Team. These inspections were a rapid assessment of damage to the structures. An inspector only spends a few minutes looking at the building when they do a rapid assessment under this program. They do not do a thorough investigation of the building. No testing was done on the materials in the buildings at that time. The intent of the rapid assessment is to quickly determine whether a building can be occupied or not in its current condition.

26 of the flood affected homes in Evans were moved to the City of Federal Heights in late Spring and Summer of 2014. Nine of the homes (Legacy Homes) were repaired and moved into the City by Almighty Construction. Set permits were issued for each of these homes and the installations were approved by Mr. Tim Williams with City of Federal Heights. Approval insignias required by the state were placed on some of these homes.

Mobile Set permits were also issued by the City for two addresses, 2311 West 92nd Avenue, Space 387 and 9400 Elm Court, Space 516. These homes were also moved from Evans. Mr. Kenneth Ekross, building official for the City of Federal Heights was aware that these homes were flood damaged homes. Mr. Ekross actually conducted a courtesy inspection in each of these two units. The inspection occurred on August 1, 2014 to provide direction to Mr. Craig Shriver, the installer of the manufactured homes with information regarding flooded home repairs. The inspections were done under the Mobile Home Set permits issued by the City. The purpose of the inspection was to give Mr. Shriver information on what repairs were needed for the flood damaged units. The inspections lasted one to two hours each in duration. Mr. Shriver was also provided with a Federal Heights document titled "Used Manufactured Home Set Inspection Policy". This lead Mr. Shriver to believe that he could repair the units and reoccupy

Riverside Storage v. Federal Heights 9/15/2016

them. Mr. Shriver at that time was not notified that the units were considered Tier 1 Debris and that could not be placed in Federal Heights.

In June, 2014 Steven Durian, Community Services Director was contacted by 9 News, a local television outlet. They were investigating the installation of the flood damaged homes from the City of Evans within the City of Federal Heights. They interviewed Mr. Durian about these installations. At some point during this investigation, Mr. Durian was advised that the units had been designated as Tier 1 Debris by the City of Evans. Once he found out about these designations, he went back to the "Legacy Homes" and removed some of the State insignias that were previously applied.

Mr. Ekross issued a Notice and Order on September 3, 2014 to the mobile home parks. This notice was issued for 23 homes. This notice designated the flood damaged homes as a nuisance under Section 30-105 of the Federal Heights Municipal Code.

Based on this new information regarding the Tier 1 Debris, Mr. Ekross issued a "Notice and Order for Removal" on September 19, 2014 for all of the manufactured homes that were moved into the City of Federal Heights from Evans. The removal order was based on Section R105.6 of the 2012 International Residential Code. This section permits the building official to revoke a building permit based on incorrect or inaccurate information. Mr. Ekross has testified during his deposition that the applications only stated that the units were flood damaged and did not state that they were Tier 1 debris. That was the reason for the revocation. These notices were sent to Mr. Shriver of Riverside Storage, Mobile Home Pros and other owners of the flood damaged homes that had been located for future setting. Permits had not been obtained for these homes.

It is my understanding that all of the homes have since been removed from the City of Federal Heights.

## Code Reference
The codes used for this report include the 2012 International Residential Code (IRC) and the 2012 International Property Maintenance Code (IPMC). Each of these codes were adopted by the City of Federal Heights by reference.

## Observations and Findings
This portion of the report outlines my observations of the actions taken by the City in having the manufactured homes removed from Federal Heights. It primarily focuses on the administrative actions of the City as well as some technical decisions made by the City.

### Notice to Removal Based on Nuisance
Mr. Ekross issued an initial Notice and Order for Removal on September 3, 2014. This notice stated that the homes had been designated as Tier 1 Debris. They further stated that 23 homes were required to be removed from the city. The notice was sent to the mobile home parks in Federal Heights where they thought the flood damaged homes were located.

The notice stated that the homes were being declared a nuisance in accordance with Section 30-105 of the Federal Heights Municipal Code. I have reviewed that section of the Municipal Code. It lists eight specific nuisances regulated by Chapter 30, Article IV of the Municipal Code. Those eight items include the following.

3 | Page

**Colorado Code Consulting, LLC**

Riverside Storage v. Federal Heights 9/15/2016

   a. Graffiti
   b. Fertilizer
   c. Blowing dust
   d. Stagnant pond
   e. Noxious liquids
   f. General property standards
   g. Garbage, trash or junk
   h. Snow and Ice Removal

None of these items list Tier 1 Debris. The only item that could possibly been used is item f, General Property Standards. This item refers to the IPMC violations. The City has continuously testified that the IPMC was not applicable in this case. So, even that item would not be applicable if that was the case. Therefore, I cannot find any evidence that the flooded homes met any of the criteria of a nuisance under Section 30-105 of the Municipal Code.

In addition, the notice and order was not addressed to any specific person. It was a general notice delivered to the mobile home parks. Section 30-106(a) of the Municipal Code states, "Except as otherwise specified within this article, in all cases where a nuisance shall be found to exist, notice of the nuisance together with a demand directing the removal or discontinuance of the nuisance, shall be served by the city upon any and all persons responsible for causing, permitting, maintaining or abating the nuisance". The City did not follow this provision of the code by just doing a general notice to the parks.

It is my opinion that the City issued the September 3rd Notices improperly. They did not find that that the homes met any of the eight items in the Municipal Code section they referenced in the notice. They did not follow the requirement of their own Municipal Code in the issuance of these notices.

Revocation of Permits Based on Inaccurate Information
A new notice and order was issued on September 19, 2014 by Mr. Ekross. This Notice and Order for Removal was based on Section R105.6 of the IRC. This section states the following.

> "The building official is authorized to suspend or revoke a permit issued under the provisions of this code wherever the permit is issued in error or on the basis of incorrect, inaccurate or incomplete information, or in violation of any ordinance or regulation or any of the provisions of this code".

The City has stated that the information on the permits were not complete. They admit that the applications stated that the homes were flood damaged. However, they further state that the applications should have stated "Tier 1 Debris". However, prior to the investigation by 9News, no one in the City, nor the owner of the homes had ever heard of this designation. This designation is not included in the IRC. It is a term developed by the State of Colorado and included in the State document "2013 Floods – Guidance: Management and Disposal of Flood Debris". This document was developed in response to the 2013 floods. It provided guidance and regulatory relief for the management and disposal of damaged and destroyed structures and other debris.

Section C of the Guidance document covers structures that are damaged and destroyed. It permits the structures to be managed by the property owner or their contractor. There is no language in this section that discusses Tier 1 Debris. The term Tier 1 Building Materials is included in the Asbestos section of the document. It states that for the purpose of this section on Asbestos, Tier 1 Debris is defined as,

4 | Page

**Colorado Code Consulting, LLC**

SHRIVER 02994

Riverside Storage v. Federal Heights					9/15/2016

> "Any and all building materials that have been displaced or dislodged as a result of the heavy rains and flooding. This includes, for example debris from demolished homes that may have washed away".

This definition does not include anything regarding the entire structure. It refers to the building materials that have been displaced or dislodged. The document then goes on to describe the procedure for the disposal of this displaced material. I have seen no evidence that any of the homes in question had asbestos in them.

I have reviewed the ATC-20 forms provided by the City of Evans for the manufactured homes in the Bella Vista Mobile Home Park. They have not provided the reports for the Eastwood Village Park. These reports are developed by the Applied Technology Council. The purpose of these evaluations is to conduct a quick review of a building and determine if it is safe to occupy. The actual reports revealed several discrepancies in my opinion. Several of them do not indicate who did the inspections. Some indicate the City of Greeley, but no specific person. If you review the time lines of the reports. Some of them were only one to two minutes apart from another. This creates suspicion as to the quality of the inspection. There is also no indication that the homes would be designated as Tier 1 Debris.

ATC-20 Evaluations are designed for earthquake events. They are not designed for flood damaged buildings. The proper form for flood damaged buildings is ATC-45. The forms are similar in format but contain much clearer information for each event.

The Appendix A of the ATC forms discusses the purpose of these evaluations. It states, "The first safety evaluation team to arrive will likely be conducting what is called a Rapid Evaluation. They will spend 15 to 60 minutes inspecting the property, depending on its size, complexity, and extent of damage. Their responsibility is to quickly determine if a building is safe enough to occupy, and if not, to decide what restrictions to place on its use or entry". I would expect that the inspections of a manufactured home would be in the range of 15 minutes.

It also discusses the purpose of the "red tag" Unsafe to Occupy placard that was placed on the homes in Evans. It states, "It is very important to understand that the "red tag" Unsafe posting does not automatically mean that the property has been condemned or will require demolition". It goes onto say, "Local officials normally will contact and involve the building owner and the owner's engineer or contractor in the process of making any demolition decisions and allowing for belongings removal". There is no language in the appendix regarding Tier 1 Debris.

It is typical that after an event the local building official will require a structural engineer to inspect the home to determine the structural adequacy of the building. They would also require that the home be tested for hazardous materials. Neither of these actions were taken by the City of Evans. Mr. Ekross never asked for the ATC-20 forms to determine the status of the buildings. He took the word of Mr. Ratkai at the City of Evans that the structures were Tier 1 Debris.

Mr. Ekross has testified in his deposition that "Tier 1 Debris is contaminated material that's not safe for human contact". He also stated that the designation is included in the Colorado State Statutes. A search of the Colorado Revised Statutes online provided by LexisNexis resulted in no documents containing the term "Tier 1 Debris". He also stated that there were other definitions. However, I was unable to find any other definitions.

The City made the determination that the units were Tier 1 Debris based on a spreadsheet that was provided by the City of Evans and discussion with Mr. Ratkai with the City of Evans. They never did an inspection to confirm that the homes met the definition of Tier 1 Debris. Mr. Ekross

5 | Page

**Colorado Code Consulting, LLC**

SHRIVER 02995

never requested a copy of any type of documentation or notices from the City of Evans designating the homes as Tier 1 Debris. The building official has a duty to conduct an inspection to enforce the applicable codes. He also has a duty to research what inspections and proper designations are made by other agencies. Mr. Ekross actually conducted a courtesy inspection for Mr. Shriver on two of the homes to discuss what actions needed to take place to repair the flood damaged units to make them occupiable.

This September 19 notice was in addition to the previously issued notice on September 3. There was no language in the newer notice regarding the earlier notice replacing or voiding the prior notice. This creates confusion for the plaintiffs as to which regulation applies to the homes in question. They would not know what their options were in dealing with these two notices.

It is my opinion that the manufactured homes did not meet the definition of Tier 1 Debris as outlined in the Guidance document. There was no evidence that the homes contained asbestos. Therefore, the revocation of the permit was improper based on the incorrect designation of the homes as Tier 1 Debris. Basing a decision on a spreadsheet provided by another jurisdiction is not the proper way of making a decision to remove homes. In addition, the City created confusion by issuing two separate notices and not clarifying what actions were intended.

### Revocation of Permits That Did Not Exist

There were a total of 26 units that were ordered to be removed based on the revocation of the permits. However, it appears that there were 15 manufactured homes that had been moved into the City of Federal Heights but the installation contractor had not applied for a permit yet. They essentially parked the units on the lot so that they could eventually repair the units and set them in accordance with the code. In addition, 50 homes owned by Mr. Shriver that were not yet moved into Federals were prohibited from being brought into the City pursuant to the same Notice and Order for Removal. Therefore, the September 19th Notice and Order for Removal revoked permits that did not exist.

The IRC does not contain language for the removal of a non-permitted building that has not been permitted. The proper code for this would be the IPMC. The IPMC applies to all existing premises and constitute minimum requirements and standards for those premises. The definition of premises in the IPMC is "A lot, plot or parcel of land, easement or public way, including any structures thereon". If the City felt that the units that had not received a permit were a danger to the public, they should have used the IPMC to abate the condition. They did not do that.

The September 19th notice and order should have outlined why the unpermitted units were unsafe according to the IPMC. This code provides specific language outlining what unsafe conditions are and how to abate the hazard(s). The IPMC does not discuss Tier 1 Debris. In addition, this code has specific requirements of how a notice and order is required to be written. The Notice and Order for Removal did not follow these requirements. It also requires that a notice and order contain language stating that the decision of the building official may be appealed to the Building Board of Appeals.

Therefore, since the units were never issued a building permit, it is my opinion that the September 19th Notice and Orders for these units were improper. You cannot revoke a permit that does not exist. The notices also did not follow the requirements for a proper notice and order.

**Colorado Code Consulting, LLC**

Riverside Storage v. Federal Heights                                    9/15/2016

### Lack of Notice of Right to Appeal

Neither of the Notice and Orders for Removal did not state that the owner or contractor for the condemned homes had the right to appeal the decision of the building official. Section R112 of the IRC covers the right of an applicant to appeal an order, decision or determination made by the building official. I agree with Mr. Ekross' deposition testimony that the IRC does not specifically require that the notice and order contain language that notifies the applicant that they have the right to appeal the decision.

However, it is the standard practice in the area of building code enforcement that a notice and order contain language regarding the option to appeal the decision. The City withheld this information from the Plaintiffs. The revocation of the permits is not just a small building code violation. It is a major event and the Plaintiffs should have been made aware of their rights. Since the IRC does not include any guidelines or requirements on what a notice and order should entail, the IPMC should be used to develop the notice.

The IPMC has specific language on how a notice and order must be written. Mr. Ekross was familiar with this code and should have used it as a basis for writing the notice and order. For the units that were never issued a building permit the owners should have been given a notice and order in strict compliance with the IPMC. Section 107.2, of the IPMC lists 6 items that are required to be included in a notice. Item 5 states, "Inform the property owner of the right to appeal". It is standard practice that a code official uses similar guidelines for writing a notice and order. The City included the other items in that section, but omitted the notice of appeal for some reason.

The *Building Department Administration* book is a comprehensive resource for the successful management and operation of building departments. It is the handbook for building officials to do their jobs. Chapter 16 of this book covers the legal aspects of code administration and enforcement. There is a section on Legal Due Process. It covers procedural due process as it relates to building code enforcement. It states, "The term procedural due process means that parties whose rights are to be effected are entitled to be heard and therefore must be notified". It goes onto say "For example, if a builder has his or her occupancy permit revoked, the builder must be heard prior to the time the revocation would take effect". Chapter 18 of the same book covers Code Enforcement Inspection Programs. There is a section on Forms and Form Letters. It lists several different types of forms and form letters. Item 6 discusses violation notices. This item states, "The notice must advise the violator of his or her right to a hearing". Neither of these directions were followed when Mr. Ekross authored the two Notices and Order for Removal.

It is my opinion that the City did not follow the standard practice in the writing of the notice and orders. They did not include language outlining the option to appeal the building official's determination. The IPMC was available to Mr. Ekross and should have been used as a guide for writing the notice and orders. The book, Building Department Administration noted in this section was available to the City employees and should have been followed.

### Right of Entry

In at least three occasions, City employees entered the home or lot without notifying the owner that they were going to inspect the manufactured homes. Mr. Durian entered the lot in September, 2014 to remove the State approval insignias that City had previously posted on the homes. He did not notify the owners that he was going to enter the lot, nor did he notify anyone that the insignias were removed.

Mr. Ekross entered the property in July, 2014 to confirm the VIN numbers on the homes. The VIN numbers are stamped onto the under framing of the homes. In order to see these numbers,

**Colorado Code Consulting, LLC**

SHRIVER 02997

Riverside Storage v. Federal Heights                                      9/15/2016

you must closely examine the home and look at the frame. An inspector would need to be very close to the frame to observe the numbers. In order to do this, they would have to be on the lot to adequately see the numbers. Mr. Ekross admitted in his deposition that he needed to wet down the numbers in order to read them. He could not have done this without entering the lot. He also entered Unit 516 to take photographs of the home's interior in the fall of 2014. He did not notify the owners of the homes or park that he would be entering them in either case.

Section R104.6 of the IRC covers right of entry. It outlines the procedures that must be followed when it is necessary to make an inspection to enforce the provisions of the code. The section states, "If such structure or premises is unoccupied, the building official shall first make a reasonable effort to locate the owner or other person having charge or control of the structure or premises and request entry". This section is designed to protect the owner from illegal searches. It is standard practice to notify the owner and request permission to conduct an inspection. This was not done prior to Mr. Ekross entering the properties.

Mr. Ekross testified in his deposition that he felt that he did not need the permission of the owner to enter the lots and closely examine the homes to get the VIN numbers. He also stated that he could walk around the building without permission. The book *Legal Aspects of Code Administration* discusses right of entry. It discusses the plain view doctrine as an exception to the Fourth Amendment to the Constitution. It states, "this doctrine holds that if an inspector observes a violation while at a location where he or she is legally entitled to be, no violation of the Fourth Amendment results". It goes on to say, "An official may discover a number of code violations merely by standing on the sidewalk or other public right-of-way and observing the exterior of a building". I like to use the sales person rule in describing this exception. An inspector can go anywhere a sales person may go to inspect a building. That does not include crawling under the home, applying a wetting agent to the home, entering the home or going into the back yard of the lot.

It is my opinion that Mr. Ekross violated the Right of Entry provisions of the IRC. He entered the lot and homes without first notifying the owner that he was conducting an inspection.

Staff Education
The revocation of a permit is a very serious matter in the building code. It has the potential of affecting an owner's rights in a major way. Declaring a building as unsafe is equally as serious. It is imperative that the building official and their supervisors be educated on the legal aspects of code administration. Mr. Robert O'Bannon, original author of *Building Code Administration* stated the following.

> "The legal aspects of building department administration are composed of two major components – enforcement and prosecution. The mechanics of administering, carrying out or invoking either are governed by a broad spectrum of legal maneuvers, restrictions, prohibitions and mandates. Omitting or ignoring any required legal step dilutes the intent and effectiveness of law and raises serious questions of the integrity or intelligence of the individual who is responsible."

There is no evidence that the proper education was provided to the building official, Mr. Ekross or his supervisors, Steven Durian and Tim Williams. If such education would have been provided, the process that was used would most likely have been correct. Education on the legal aspects of code enforcement are available from several sources. The Colorado Chapter of the International Code Council provides an annual week long institute where this subject has been presented each year. The International Code Council also provides seminars and webinars on building code administration. All of these sources were available to the City staff.

8 | Page

**Colorado Code Consulting, LLC**

SHRIVER 02998

Mr. Ekross is not a Certified Building Official certified by the International Code Council. This certification requires testing in the area of legal aspects of code administration, management and technical areas. Individuals having this certification would be aware of the legal issues discussed in this report. They understand that that owners have the right to appeal their decision and that they should be notified of this option. They would also understand the right of entry restrictions and requirement to notify the owner. The City would should have hired someone with this certification or require Mr. Ekross to obtain such certification.

It is my opinion that the City of Federal Heights did not provide the required education to Mr. Ekross and his supervisors to properly enforce the administrative provisions of the adopted codes. They should have required Mr. Ekross to obtain his Certified Building Official Certification when they hired him as building official.

## Summary

In my opinion, several mistakes were made by the City in enforcing the administrative provisions of the adopted codes. The City failed to follow their own codes and standards when they ordered the removal of the homes from Federal Heights. The following is a summary of those failures.

- The City Improperly issued a Notice and Order for Removal based on the Municipal Code for Nuisances.
- The City of Federal Heights revoked the building permits for 11 manufactured homes moved into the City based on the incorrect designations of the homes as Tier 1 Debris.
- The City revoked permits on 15 homes that had never had permits issued. The notice and orders for these homes should have been based on the International Property Maintenance Code.
- The City did not notify the Plaintiffs of their right to appeal the notice and order to remove the homes from the City. They did not follow the standard practice of writing a notice and order outlined in several different documents.
- Ken Ekross and Steven Durian entered the properties and building without first notifying and requesting permission from the Plaintiffs to conduct an inspection. This violated the right of entry provisions of the International Residential Code.
- Mr. Ekross and his supervisors did not receive the appropriate education for the enforcement of the administrative provisions of the International Residential Code or International Property Maintenance Code. Mr. Ekross is not a Certified Building Official.

## Experience

I have been involved in building code review and inspection of buildings for more than 35 years. I served as the building official for the City of Glendale, Colorado for 18 years. I have also served as the contract building official for the City of Cherry Hills Village, Colorado since 1989. I have been involved with the development of the Uniform and International family of Codes for more than 30 years as well. I have also served on the statewide and national committees responsible for reviewing changes to these different codes. I have written several notices and orders during my time as a building official.

All opinions in this report are based on the information provided. I do not accept any responsibility for any condition that was not known at the time of this report. I reserve the right to amend this report if additional information is received. This report is a summary of substantial research and document review, which cannot be duplicated as part of this report. Copies of the documents referenced in this report are available for examination in my job file. Thank you for

**Colorado Code Consulting, LLC**

Riverside Storage v. Federal Heights				9/15/2016

the opportunity to be of assistance and provide my opinions regarding this case. If you need additional information or have any questions, please do not hesitate to call me.

Respectfully Submitted,

*[signature]*

Stephen L. Thomas, CBO
Colorado Code Consulting, LLC