## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02325-CMA-NYW

**RIVERSIDE STORAGE AND RECYCLING CENTER**, a Colorado Limited Liability
Corporation; and
**CRAIG SHRIVER,** individually; and
**KEVIN COX**, individually; and
**JOHN HOOD**, individually; and
**KIMBERLY HILLS**, a Foreign Limited Liability Company,

Plaintiffs,

 v.

**CITY OF FEDERAL HEIGHTS**, a Colorado Municipal Corporation;

Defendant.

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT

---

**COME NOW**, Riverside Storage and Recycling Center ("Riverside"), Craig

Shriver ("Shriver"), Kevin Cox ("Cox"), John Hood ("Hood") and Kimberly Hills, by and

through their undersigned attorneys, and file this Response in Opposition to

Defendant's Renewed Motion for Summary Judgment.

## RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS ("DSDF")

Plaintiffs Admit the following DSDF: 1-4, 6-7; 9-18; 20-28; 31-33; 35-37; 39-42;

44-45; 47-55; 57-58; 60-68. Plaintiffs Deny the following DSDF: 5 Deny (Respondents'

Appx., pp. 142-45 – Ratkai Dep., 94:1-8, 107:5-23; *id.*, pp. 101-22 – Ekross Dep.,

42:19-43); 8 Deny (ASMF #24); 19 Deny (ASMF #24); 29 Deny (ASMF ##32-33); 30

Deny (ASMF ##29, 33-34, 37); 34 Deny (ASMF #37); 38 Deny (Respondents' Appx.,

pp. 182-90 - Thomas Report p.7); 40 Deny (ASMF #42); 43 Deny (Respondents' Appx.,

pp. 249-50, Nimtz Dep.); 46 Deny (ASMF #15 ); 56 Deny (ASMF #53); 59 (ASMF #77).

## <u>ADDITIONAL STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS ("ASMF")</u>

### *Plaintiffs' Investment In Flood Homes*

1.      A year after the historic 2013 floods, Shriver, the owner of Riverside, contracted

with City of Evans Parks Bella Vista and Eastwood Village to remove select mobile

homes. (Respondents' Appx., pp. 56-77 - Shriver/Cowan contracts.)

2.      Shriver selected homes not forced off their foundation and structurally intact. (*Id.*,

pp. 78-79 - Shriver Affidavit.)

3.      Plaintiffs Cox and Hood contracted and paid $63,000.00 for a 1st draw to Mobile

Home Pros to purchase nine City of Evans mobile homes from Shriver to be placed in

Federal Heights.  (*Id.*, p. 81 - April 16, 2014 Mobile Home Pros Purchase Agreement.)

4.      Mobile Home Pros contracted with Kimberly Hills, a mobile home park, to place

the nine flood homes. (*Id.*, pp. 83-92 - MidSpace Agreements.)

5.      Riverside and Kimberly Hills contracted for Riverside to bring fifty homes by

December 2014; Kimberly Hills would provide a $6,000.00 incentive fee per space. (*Id.*,

p. 82 - Riverside/Kimberly Hills Agreement.)

6.      Kimberly Hills prepped, including utility hookups, each lot for the delivery and

placement of contracted flood homes. (*Id.* p. 251 - T. Wiebold Dep., p.161:13-24.)

### *Initial Permitting and Inspection*

7.     On July 9, 2014, Shriver applied for a set permit from Federal Heights to set flood homes in Kimberly Hills Spaces #387 and #516.  (*Id.*, pp. 241-244 – Federal Heights Timeline; *id.* pp. 22-30 - Shriver Dep., 72:16-73:9; 209:25-210:19.)

8.     Shriver disclosed to Federal Heights the homes were flood damaged and Federal Heights was aware these homes were from the City of Evans. (*Id.*, pp. 241-244 – Federal Heights Timeline; *id.*, pp. 22-30 - Shriver Dep., 72:16-73:9; 209:25-210:19.)

9.     Federal Heights issued set permits for Cox and Hood's investment homes to be placed in Kimberly Hills.  (*Id.*, p. 253 – Willson Dep., 152:18-23.)

10.     Plaintiffs relied on the permits issued by City of Federal Heights to place City of Evans flood homes in Federal Heights.  (*Id.*, pp. 13-15 - Cox Dep., 54:5-23; *id.*, pp. 22-30 – Shriver Dep. Vol I, 111:19-24; *id.*, pp. 16-20 - Hood Dep., 117:18-118:21; *id.*, pp. 31-36 - Kimberly Hills Dep., 146:16-147:3.)

11.     By August 2014, two of Cox and Hoods' flood-affected homes received state occupancy insignias. (*Id.*, pp. 43-55 – Durian Dep., 28:3-11.)   To receive a state occupancy insignia a manufactured home must meet all standards of the Colorado Division of Housings Installation Handbook.  (*Id.*, pp. 43-55 – Durian Dep., 28:3-11.)

12.     On August 2, 2014, Federal Heights' Building Official, Mr. Ken Ekross  ("Ekross"), conducted a one-hour site inspection on unit #516. (*Id.*, p. 99 – Unit #516 Field Inspection Report.)   Ekross, knowing unit #516 was from the City of Evans flood, provided instructions to obtain a certificate of occupancy, including "all water damage replaced." (*Id.*)

13.     Ekross also inspected unit #387. Ekross spent two hours on this field inspection

and provided instructions, including "open all interior walls to the floodline." (*Id.*, p. 100 – Unit #387 Field Inspection Report.)

14.     Ekross did not find either unit a danger or nuisance during these three hours of inspections. (*Id.*, p. 126 - Shriver/Ekross walkthrough recording; *id.*, p. 100 – Unit #387 Field Inspection Report; *id.*, p. 99 – Unit #516 Field Inspection Report.)

***Initial Government Response to Flood Homes***

15.     November 25, 2013, mere weeks after the flooding, N. Zach Ratkai ("Ratkai"), City of Evans Building and Development Manager drafted an Interoffice Letter stating, "I have determined that the mobile home damage located on the above described properties to be designate as Tier 1 Material consistent with the CDPHE's guidance … ." (*Id.*, pp. 11-12 - November 25, 2013 Interoffice Letter.)

16.     Colorado Department of Public Health and Environment Flood Guidance contains the definition for Tier 1 Debris: "Tier 1 Building Materials:  Any and all building materials that have been <u>displaced or dislodged</u> as a result of heavy rains and flooding. This includes, for example debris from demolished homes that may have <u>washed away</u>." (*Id.*, pp. 1-10 – September 19, 2013 CDPHE Flood Guidance.)

17.     Plaintiffs were not aware of Ratkai's Tier 1 Debris interoffice letter. (*Id.*, pp. 13-15 – Cox Dep. 52:16-18; *id.*, pp. 16-20, Hood Dep., 33:25-34:16; *id.,* pp. 21-30 – Shriver Dep. Vol. II, 374:1-19; *id.,* pp. 31-36 – Wiebold Dep. 41:10-20.)

18.     On June 17, 2014, in response to the influx of remediated flood homes, the Colorado Division of Housing issued a letter declaring:

> The local jurisdiction chief building official has full authority to deny the placement of used mobile and manufactured homes in the jurisdiction

based on an <u>individual inspection of the home for structural and/or other flood related damage.</u>

(*Id.*, p. 93 – June 17, 2014 letter.)

19.    The June 17, 2014 letter, "Flood Damaged and Mobile and Manufactured Homes", stated: "Mobile home and manufactured home inspectors and installers <u>are reminded of their responsibility to inspect each home for all damage, including flood damage, prior to installation of the home.</u>"  (*Id.*, p. 93 – MHIP June 17, 2014 letter [emphasis added].)

20.    The standard for setting flood-affected homes is the Colorado State's mobile home setting program.  (*Id.*, pp. 43-55 – Durian Dep., 170:21-171:2.)

21.    On July 24, 2014, Federal Heights provided specific details for setting flood homes: "Over the last several weeks there has been an influx of flood-damaged manufactured homes brought into the city." (*Id.*, p. 95 - July 24, 2014 Federal Heights Letter.)   Attached was Federal Heights' "Used Manufactured Home Set Inspection Policy." This policy made no distinction between flood homes vs. Tier 1 Debris. (*Id.*, p. 96 - Used Manufactured Home Policy.)

22.    No party, including Federal Heights, knew of the term "Tier 1 Debris," or that the homes had been so designated, when permits were issued. (*Id.*, pp. 22-30 – Shriver Dep., 47:19-25; *id.*, pp. 37-41 – Halbrunt Dep. 69:2-5; *id.*, p. 255 - Thomas Report p.3.)

### *Reaction to 9News Expose*

23.    In her Deposition, the Federal Heights City Manager, Jacqueline Halburnt, described Federal Heights' reaction to the 9News investigation:

A. . . you know, that we had a call from 9News; that we had

VIN numbers that identified mobiles as being flash flood damaged; and that we needed to take action, to do something.

(*Id.*, pp. 37-41, 43 – Halburnt Dep., 23-44:8.)

24.   Federal Heights Community Services Director Steve Durian ("Durian") rehired Ekross. "I was rehired to come back to work July 21. . . and on my arrival, I was notified of flood-damaged homes being brought into the city, that Channel 9 report had pointed it out to us … ." (*Id.*, pp. 101-22 – Ekross Dep., 15:22-16:2.)

25.   On August 19, 2014, for the first time Federal Heights becomes aware of the term "Tier 1 Debris." (*Id.*, pp. 101-22 – Ekross Dep., 16:18-25.)  Ekross contacted the City of Evans to look into the Tier 1 Debris designation and visit the City of Evans almost a year after the historic flooding.  Ekross was unable to determine if the flood homes were Tier 1 Debris but did receive a copy of the November 23, 2014 interoffice letter and an ACT – 20 list summarizing the condition of each home immediately following the flood. (*Id.*, pp. 101-22 – Ekross Dep., 41:12-23.)

26.   Ekross saw no need to verify the accuracy of the November 23, 2014 interoffice letter or ACT – 20 summary. (*Id.*, pp. 101-22 – Ekross Dep., 18:7-19:12.) The ACT – 20 summary did <u>not</u> say homes were unrepairable and must be destroyed. (*Id.*, pp. 101-22 – Ekross Dep., 20:15-21-5.)

27.   In August 2014, 9News reporter Melissa Blasuis published "The City of Federal Heights is changing building inspection rules in response to 9Wants to Know Investigation, which exposed the safety concerns when flooded mobile homes are resold to unsuspecting families." (*Id.*, pp. 127-36 – 9Wants to Know Investigation Report August 28, 2014.)

***Initial Order for Removal of Flood Homes and Removal of Insignias***

28.     Upon returning from Evans, Ekross, with the help of Durian, issued the September 3, 2014 Notice and Order ("September 3 Removal Order") for Removal for all City of Evans' flood-affected homes <u>effective immediately</u> declaring them nuisances under Federal Heights' Municipal Code section 30-105.   (*Id.*, p. 154 – September 3, 2014 Order and Notice of Removal.)

29.     The September 3 Removal Order stated "Federal Heights has identified . . . [mobile homes] have been listed with the Colorado Division of Housing as qualifying as a Tier 1 Debris. Because the City of Federal Heights is not designated as Tier 1 Debris disposal facility. . . you are hereby notified that these 23 homes are designated by the Building Official as nuisances according to Section 30-105." (*Id.*, pp. 154-55 – September 3, 2014 Order and Notice of Removal.)

30.     Federal Heights did not inspect the homes to determine they were nuisances. (*Id.* pp. 101-22 – Ekross Dep., 24:3-17.)   He located the VIN numbers, but did not inspect the interior or underbelly of the homes. (*Id.*, pp. 182-91 – Thomas Report p. 7-8.)

31.     The September 3, 2014 Removal Order did not provide for any procedure to contest the immediate removal of the homes.   (*Id.*, pp. 154-55 – September 3, 2014 Order and Notice of Removal.)

32.     Durian decided he would also remove insignias from remediated City of Evans flood homes, "[b]ecause we had no inspection record of the interior of the homes . . . and they were on the list provided by 9news." (*Id.*, pp. 43-55 – Durian Dep., 206:19-207:3, 207:18-20, 210:14-19.)

33.   Conversely, Durian told the City Manager that the insignias were removed because:

> [t]he flood damaged homes in questions [sic] were not in compliance with requirements of electrical and plumbing and therefore cannot be given insignias.  Insignias mistakenly placed on homes were removed to comply with State regulations.

(*Id.*, pp. 146-148 – Durian September 5, 2016 email to Halburnt.)

34.   Federal Heights did not provide the owners with notice of the alleged inspection failures, opportunity to request additional inspections or challenge the City's determination before the insignia's were removed. (*Id.*, pp. 43-55 – Durian Dep., 207:18-24; 216:5-9.)

### *Second Order of Removal and Plaintiff's Attempt To Challenge Removal*

35.   On September 5, 2014, Federal Heights placed Durian on temporary leave to investigate the insignia issue. (*Id.* pp. 43-55 – Durian Dep. 235:14-18.)

36.   September 10, 2014, Shriver's attorney wrote to Federal Heights questioning the validity of the Notice and Order pursuant to the nuisance statute. (*Id.*, p. 162 – Nimtz letter to Ekross.)

37.   Federal Heights responded not with procedural information but a new September 19, 2014 Notice and Order ("September 19 Order").  The September 19 Order required immediate removal based upon incomplete permit applications. (*Id.*, pp. 163-81 – September 19 Order.) The September 19 Order did not contain appeal information. (*Id.*)

38.   Mobile Home Pros on behalf of Cox and Hood were in continual contact with Federal Heights but never informed of appeal procedures. (*Id.* p. 194 – Wilson letter, February 5, 2015; *Id.*, pp. 195-208 – Wilson  Dep., 61:12-21.)

39.     Federal Heights and specifically Ekross notified other Federal Heights' homeowners, as compared to Plaintiffs, of their right to appeal a Notice and Order. (*Id.*, pp. 192-93 – December 13, 2013 Notice and Order.)

40.     On August 10, 2015, Shriver was provided a criminal citation for failure to obey the September 19 Order in violation of Municipal Court for R113.2.  (*Id.*, pp. 209-15 - Shriver Code Citation.)

41.     In preparation for Shriver's trial, Ekross broke into unit #516 to take photographs. In violation of R104.6, Ekross did not notify the owner of the home before entering the property. (*Id.*, pp. 101-22 – Ekross Dep. 133:2-139:15.)

42.     Shriver challenged the legality of the Notice and Order and the Court agreed, holding:

> There was no enclosed documentation given to him that says that a documented Tier-1 debris designation from the City of Evans and the State's Division of Housing and Tier-1 debris information.  And since that wasn't included with the Notice and Order, and that's a significant basis for the Order, the Court finds that the, the Notice was defective on its face. So, that being an essential element, the Court finds Shriver not guilty.

(*Id.*, pp. 216-221 - Reporter's Transcript Case No. C01070, 180:1-8.)

***Government Animus Toward Kimberly Hills***

43.     Federal Heights' Mayor, Daniel Dick, called Kimberly Hills "blight" at city council meetings. (*Id.*, pp. 37-41 – Halburnt Dep., 74:4-24.)

44.     Federal Heights used its official power to damage Kimberly Hills through the improper issuance of code violations.  Federal Heights email to Marci Rusin:

> HIT KIMBERLY HILLS WITH CODE ISSUES/
> COUTESY [sic] NOTICES
> . . .

> Focus on rental spaces of KH [Kimberly Hills] which are KH owned.
> . . .
> If I were you, I would focus on KH and nothing else this weekend.
> He basically expects the Courtesy Notices to be stacked full.
> But you do what you want. . .

 (*Id.*, p. 42 - Federal Heights Interoffice email.)

45.     Federal Heights continued to target Kimberly Hills.  "Vallero [Federal Heights' police chief] wants myself and Marci to use this map to focus on "Code" issues KH management must address immediately." (*Id.*, p. 80 – Straits April 18, 2014 email to Williams.) "Vallero really wants those maps and wants Code to start nailing rentals, which falls back on Management." (*Id.*)

46.      On July 15, 2014, Patti Lowell of Federal Heights emailed the City Manager advising, "Kell is ready to write citations for 300 violations in Kimberly Hills." (*Id.*, p. 94 - Lowell email to Halburnt.)

47.     Tanya Wiebold ("Wiebold"), manager of Kimberly Hills, was criminally cited and criminally convicted with one-year probation for "Failure to Prune". (*Id.,* pp. 222-25 - Adams County Appeal Order, p. 1.)

48.     Wiebold appealed. The Court overturned her conviction and remanded the matter. (*Id.* pp. 222-25 - Adam's County Appeal Order, p. 4.)

***Government Animus Toward Shriver***

49.     Ekross worked for the City of Thornton for many years prior to working for Federal Heights. (*Id.*, pp. 101-22 – Ekross Dep., 155:9-12.)  Shriver dealt with Ekross when his company, Riverside, installed and rented mobile homes in the City of Thornton.  (*Id.*)

50.    Ekross and Shriver developed a history of antagonistic interactions that resulted in Shriver hiring Mr. Ken Essex to interact with Ekross. (*Id.*, pp. 78-79 - Shiver Affidavit; *Id.*, pp. 245-246 - Essex Affidavit.)

51.    Federal Heights Director of Community Services recalled Ekross and Shriver had "disputes and disagreements." (*Id.*, pp. 43-55 - Durian Dep., 245:17-24.)

**Fully Remediated and Occupied Flood Homes**

52.    Ratkai, the author of the November 2013 "Tier 1 designation" letter, testified he would have accepted applications to reset Tier 1 designated homes and entertain documentation establishing the home safe for occupancy for placement in the City of Evans. (*Id.*, pp. 142-45 - Ratkai Dep., 98:19-24.)

53.    Four mobile homes that were removed by Shriver from Eastwood Village and Bella Vista mobile have been installed and received certificates of occupancy. They are in the City of Thornton in Friendly Village of the Rockies mobile home park units #353 and #81 and Redwood Estates Mobile Home Park units # 192. (*Id.*, pp. 78-79 - Shriver Affidavit.)

## ARGUMENT

**I.    Procedural Due Process**

   **A. Plaintiffs Have A Valid Property Interest.**

      1.    Plaintiffs Have A Property Interest In Permits.

Property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of*

*Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

> Colorado courts have recognized vested rights in the context of building permits. The supreme court has held that "[a] city permit can provide the foundation for a vested right, and thus be constitutionally protected from impairment by subsequent legislation, if the permit holder takes steps in reliance upon the permit."

*Eason v. Board of County Com'rs of County of Boulder*, 70 P.3d 600, 605 (2003) (citing *P-W Investments, Inc. v. City of Westminster*, 655 P.2d 1365, 1371 (Colo.1982)); *Cline v. Boulder*, 450 P.2d 335, 338 (Colo.1969) ("The majority rule in the United States is that the owner must take some steps in reliance on the permit before his rights vest thereunder.").

In reliance on Federal Heights' issuance of permits each Plaintiff invested large amounts of money and physical resources.  (ASMF ##1-6.)  After obtaining permits to set the flood homes, Shriver hired a crew, paid dumpster fees and used his heavy-duty equipment to clean and prepare City of Evans homes for transport to Kimberly Hills. (Respondent's Appx., pp.78-79 – Shriver Affidavit.)  Before Federal Heights arbitrarily revoked the permits, Cox and Hood had invested $63,000.00 with Mobile Home Pros expressly to place nine flood homes in Kimberly Hills.  (ASMF #3.)  The homes had obtained permits, been repaired, and received occupancy insignia from the State of Colorado. (ASMF #11.)  Kimberly Hills reserved lot spaces, paid out incentive money and expended substantial monies to prepare the mobile home lots for delivery of the Evans homes. (ASMF ##5-6.) These significant expenditures were lost as Federal Heights revoked the permits by issuing the Orders for Removal and removing insignias.

Federal Heights admits a property interest is a creature of state law, but ignores

Colorado precedent. Federal Heights cites Wyoming case *Schanzenback v. Town of La Barge*, 706 F.3d 1277 (10th Cir. 2013), to argue Plaintiffs have no vested property interest in the permits. As indicated above, Plaintiffs obtain their property interest under Colorado law, not Wyoming law.  But even under Wyoming's precedent, Plaintiffs have a vested property interest. The Court in *Schanzenback* held "in Wyoming the holder of a building permit or the like has no property right in the permitted use until he has relied to his detriment on the permit." 706 F.3d at 1284.  Unlike the current Plaintiffs, the Court in *Schanzenback* found that "[plaintiff] has presented no evidence of detrimental reliance on expenditures on the property, made no improvement to the property, and entered into no contracts related to the property.  Hence, he acquired no vested property interest in the permit before the town council revoked it.*" Id.*  By contrast, Plaintiffs here made substantial expenditures, entered contracts and made improvements to property in reliance on the Federal Heights permits. (ASMF ##1-10.)

Federal Heights then cites Kansas case *Gunkel v. City of Emporia, Kansas*, 835 F.2d 1302 (10th Cir. 1987), to support its argument the permits did not vest because Plaintiffs did not include the then-unknown term "Tier 1 Debris."  Like above, *Gunkel* is not controlling because it pertains to Kansas, not Colorado, law on property interests. Nevertheless, even under the law discussed in *Gunkel*, Plaintiffs can claim a vested property interest.  *Gunkel* provides a permit can be a property right if issued with "mutually explicit understanding". *Id.* at 1304. In *Gunkel*, the City did not know when it issued the permit that the permit violated a specific set-back ordinance. The Court found "Gunkels were unable to show . . . that the permit was issued pursuant to a mutual

understanding. . . exempting them from this requirement." Id. at 1305.   Unlike the

plaintiffs in *Gunkel*, the current Plaintiffs' permits were issued with a "mutually explicit

understanding".   Federal Heights knew that the permits were being requested for flood

homes and knew the exact manufactured home related to each permit. (ASMF #7.)   It

knew the intended lot for the homes.   (*Id.*)   Federal Heights examined the homes and

gave instructions on required repairs.   (ASMF #11-13.)   In short, the absence of the

term "Tier 1 Debris," that was not known by any party at the time of the permit

applications  (ASMF ##17, 22), did not prevent a mutual understanding.

### 2.   Plaintiffs Also Have A Contractual Property Interest.

In addition to the permits, Plaintiffs' respective contracts were valid property

interests under state law that required due process to extinguish.  (ASMF ##1, 3-5.)

"The right to contract is a property right, protected by the due process clause of the

constitution, Const. art. 2, § 25, and cannot be abridged by legislative enactment."  *Olin

Mathieson Chem. Corp. v. Francis*, 301 P.2d 139, 147 (Colo. 1956); *Nichols v. Board of

County Com'rs of County of La Plata*, Colorado, 506 F.3d 962 (Cir. 2007) ("We have

explained further that 'constitutionally protected property interests are created and

defined by statute, ordinance, contract, implied contract and rules and understandings

developed by state officials.'") (citing *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir.

2003)). Specifically, Kimberly Hills', and Cox and Hood's claim to a constitutionally-

protected property interest is supported by the Supreme Court's holding in *Pierce v.

Society of Sisters*, 268 U.S. 510 (2017). In *Pierce*, the Supreme Court held

that a private schools' due process rights were violated by the indirect harm caused by

the challenged law's invasion of rights belonging to parents and pupils.  Similarly, Kimberly Hills' and Cox and Hood's due process rights were violated by the direct and indirect harm caused when the City issued its Removal Orders and removed insignias.

### 3.  Issuance And Revocation Was Not At Federal Heights' Discretion.

Federal Heights cites *Nichols* for its claim that a property interest could not vest because officials had discretion to grant, deny, or revoke the permits.  The *Nichols* Court determined that, since the issuance was discretionary, there was no creation of a property interest.  However, *Nichols* also stands for the proposition that "a property interest exists if discretion is limited. . .  whether the procedures, if followed, require a particular outcome." 506 F.3d at 970.  It is this latter rule that is applicable in this case.

Had Federal Heights followed its codes and procedures, it would have necessarily granted the permits.  The standard for setting flood-affected homes is the Colorado State's mobile home setting program and the Used Manufactured Home Set Inspection Policy. (ASMF ##20-21.)  The Building Official must follow these codes and procedures when granting or denying permits.

Moreover, contrary to what Federal Heights claims, the revocation of permits is also not discretionary.  Federal Heights' Nuisance code (the basis for the September 3 Notice and Order of Removal) requires the City to find each home meets one of the eight items in the Municipal Code. (Respondents' Appx., pp. 257-59; Thomas Report, p. 4.)  Federal Heights also points to the I.R.C.'s allowance for revoking a permit based on incorrect, inaccurate, or incomplete information.  As discussed above, Plaintiffs provided accurate information and disclosed the fact that these homes were from the City of

Evans flood.  (ASMF ##8, 12.)  The failure to designate the homes Tier 1 Debris—a fact that no Plaintiff or the City knew at the time—did not give Federal Heights discretion to revoke the permits.

## B. Federal Heights Did Not Provide Procedural Due Process.

### 1.   There Was No Pre-Deprivation Notice Or Hearing.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "Generally, to prevent 'substantively unfair or mistaken deprivations,' individuals must receive notice and an opportunity to be heard <u>before</u> the government deprives them of property." *Continental Coal, Inc. v. Cunningham*, 511 F.Supp.2d 1065, 1079-80 (D. Kan. 2007) (emphasis added) (and cases cited); *see also Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (describing the "root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing <u>before</u> he is deprived of any significant property interest") (emphasis added)).

It is undisputed that Plaintiffs received no notice and opportunity for a hearing <u>before</u> Federal Heights issued the first Removal Order and removed occupancy insignias. (ASMF #28.)  A pre-deprivation notice and opportunity for hearing would have allowed Plaintiffs to dispute the Tier 1 Debris designation, the designation's effect on the permit applications and provide remediation protocol and testing to ensure safe occupancy.  Plaintiffs also were afforded no informal opportunity to cure violations or contest the Orders of Removal. *Cf. Rocky Mountain Rogues, Inc. v. Town of Alpine,* 375

Fed.Appx. 887, 892-94 (10th Cir. 2010) (holding that notice was adequate when a party was aware before revocation that it was a possibility and had an opportunity to share its perspective with the municipality) (and cases cited).  Here, Plaintiffs did not have any advance knowledge of the Removal Order and removal of insignias and had no opportunity, even informally, to discuss the revocation with Federal Heights officials.

2. Post-Deprivation Process Was Not Sufficient.

Federal Heights does not address the requirement of pre-deprivation process and instead relies on the provision of a post-deprivation appeal procedure.  There are only two exceptions to the requirement of pre-deprivation process: (1) random, unauthorized acts of government employees, *Cunningham*, 511 F.Supp.2d at 1080 n.5 (and cases cited); and (2) protection of public health or safety emergency, *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006).

The first exception is not applicable, and Federal Heights makes no argument that the revocation was a random, unauthorized act of government employees.  Rather, taking of permits was department policy and practice at the time. (ASMF## 23-33.) *Accord Watson v. City of Kansas City, Kansas*, 80 F.Supp.2d 1175 (D. Kan. 1999) (internal citation omitted) ("Post-deprivation remedies, however, do not cure official conduct pursuant to an established or de facto policy, procedure or custom.").

The second exception is also not applicable.  Federal Heights argues no notice was required because the flood homes posed a threat to the public or the environment.  That may well have been the case for pre-deprivation process had there been a threat to public health and safety.  *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1220

17

(10th Cir. 2006) ("In matters of public health and safety, the Supreme Court has long recognized that the government must act quickly. Quick action may turn out to be wrongful action, but due process requires only a postdeprivation opportunity to establish the error.") But in this case, there was no need for quick action. By August 2014, the historic 2013 flood waters had receded, and the flood-affected homes were gutted, cleaned, secured and <u>vacant</u>. (ASMF ##11-14, 53.) Defendant was not acting to protect the public; they were acting to protect public relations.

3. <u>Notice Of Appeal Was Not Sufficient.</u>

Finally, <u>even if</u> Federal Heights was only required to provide <u>post-</u>deprivation protections, the notice and process it provided was insufficient. Federal Heights relies on *Kennard v. City of Ashland, Ken.*, 2015 WL 5194090 (E.D. Ken. Sept. 2, 2015), to argue that because the IPMC appeal procedure was publically available, Plaintiffs had sufficient notice of the post-deprivation procedure. *Kennard* can be distinguished. In *Kennard*, the district court focused on whether the City's notice of the IPMC appeals process was sufficient because that was the narrow question the Sixth Circuit had certified to lower court. As the *Kennard* Court discussed, the plaintiff received extensive notice <u>prior</u> to deprivation of his property and had multiple opportunities to correct the alleged violations under municipal code that led to his eviction and removal (and eventual euthanasia) of his pets from the abandoned property. The City was forthcoming and open about the process for contesting citations.

As discussed above, unlike the Plaintiff in *Kennard*, Plaintiffs did not receive <u>pre-</u>deprivation notice or opportunities to cure alleged violations. In fact, prior

communication by Federal Heights officials had indicated approval of the Plaintiffs' homes.  (ASMF ## 9,11-14.)  Moreover, Federal Heights intentionally failed to inform Plaintiffs of their appeal rights.   (ASMF ##36-39.)   Mr. Nimtz, Shriver's attorney, contacted Federal Heights questioning the legality of the September 3 Notice, but Ekross did not inform him of the right to appeal. (ASMF ##36-37.)  Ekross knew how to properly provide notice of appeal, as demonstrated by times when he provided such notice, but he did not do so for Plaintiffs. (ASMF #39.)  In addition, Federal Heights did not even follow IPMC procedure.  IPMC has a specific procedure for how a notice and order must be drafted under section 107.2.  IPMC 107.2 lists six items that are required in a notice, and item five states, "inform the property owner of the right to appeal."

## II.   Substantive Due Process

"Substantive due process asks the question of whether the government's deprivation of a person's life, liberty or property is justified by a sufficient purpose." Erwin Chemerinsky, *Substantive Due Process*, 15 Tuoro L. Rev. 1501, 1501 (1999). There was no emergency in this case; instead Federal Heights acted to impede Plaintiffs' property and business interests as part of a pattern and practice of targeting Plaintiffs.  These actions were arbitrary, capricious and shock the conscience.  *See Green v. County of Pueblo*, 574 F.3d 1294, 1304 n.9 (10th Cir.) (whether actions "shock the conscience" requires an assessment of the "totality of the circumstances.")

Federal Heights issued permits with the knowledge the homes had been in the City of Evans flood. (ASMF ##7-9, 12.)  Once 9News knocked on the door with its investigative reporter, Federal Heights disregarded appropriate process and

procedures. (ASMF ##21, 23, 26, 29-30, 32-35.)   Durian removed state occupancy insignias, with complete disregard for the inspection and notice requirements.  (ASMF ##32-35.)   The Notices and Orders were made without individual inspections or acquiring supporting documentation on alleged Tier 1 status. (ASMF ##11-14, 26, 29-30.)  Federal heights also intentionally disregarded its own Building Official's inspections for units #387 and #516 (*Id.*) (Respondents' Appx., pp. 185 – Expert Thomas Report, p.4 ("It is my opinion that the City Issued the September Notice improperly. They did not follow the requirements of their own Municipal Code in the issuance of these notices.").) Federal Heights' arbitrary and capricious actions disregarded Plaintiffs' rights. *See Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 410 (1997) ("'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious risk of constitutional injury.")

These violations were part of the pattern and practice of Federal Heights intentionally targeting Plaintiffs (ASMF#43-51.)   This animus was no secret.   For example, the Mayor of Federal Heights proclaimed Kimberly Hills a "blight" during a city council meeting (ASMF #43),  City employees worked together to target Kimberly Hills for an inordinate number of code violations (ASMF ##44-46), and Ekross and Shriver had a contentious relationship strained to the point where Shriver hired Mr. Essex to handle communications with Ekross at the City of Thornton (ASMF ##50-51).

## CONCLUSION

WHEREFORE, for all of these reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted this 16th day of August, 2017.

By:  */s/ Aimee M. Bove*
Aimee M. Bove, #36915
Bove Law Offices, P.C.
1325 S. Colorado Blvd., Ste. 503
Denver, Colorado 80222
Phone: (303) 918-4355
Fax: (303) 320-8578
Email:
above@bovelaw.onmicrosoft.com
ATTORNEY FOR PLAINTIFFS
RIVERSIDE STORAGE AND
RECYCLING CENTER, CRAIG
SHRIVER, KEVIN COX, JOHN HOOD,
AND KIMBERLY HILLS

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on 16th day of August, 2017, a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT** was served via email on all parties of record, as follows:

J. Andrew Nathan
Brenden Desmond
Nathan Dumm & Mayer P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
anathan@ndm-law.com


*/s/ Aimee M. Bove*
Aimee M. Bove, #36915
Bove Law Offices, P.C.