**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15-cv-02325-CMA-NYW

RIVERSIDE STORAGE AND RECYCLING CENTER, a Colorado Limited Liability
Corporation,
CRAIG SHRIVER,
KEVIN COX,
JOHN HOOD, and
KIMBERLY HILLS, foreign limited liability company,

      Plaintiffs,

v.

THE CITY OF FEDERAL HEIGHTS, a Colorado Municipal Corporation,

      Defendant.

_____

## ORDER ON DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT
_____

      This matter is before the Court on Defendant's August 2, 2017 Renewed Motion

for Summary Judgment (Doc. # 150) in which it seeks the dismissal of Plaintiffs' due

process claims against it.  On August 16, 2017, Plaintiffs filed a Response (Doc. # 153),

and on August 23, 2017, Defendants filed a reply.  (Doc. # 156.)

      Upon review of the parties' briefing and the evidence referenced therein, the

Court grants in part and denies in part Defendant's Renewed Motion for Summary

Judgment as to Plaintiffs Riverside Storage and Recycling Center, Craig Shriver, and

Kimberly Hills; and grants Defendant's Renewed Motion for Summary Judgment as to

Plaintiffs Kevin Cox and John Hood.

# I.     BACKGROUND[1]

In September 2013, the City of Evans ("Evans") experienced flooding which impacted some mobile home parks.  The mobile homes in these parks sat in flood-water for at least six days.  Evans then brought in inspectors to determine the extent of the flood damage.  These outside inspectors surveyed the damage to the homes and determined that they were unsafe.

In a November 25, 2013 memorandum addressed to the Evans city manager, Evans' de facto Building Official, Zach Ratkai ("Mr. Ratkai"), declared the mobile homes in Eastwood Village Mobile Home Park and in Bella Vista Mobile Home Park to be "Tier 1 debris" and a danger to public health, under authority of the Colorado Department of Public Health and Environment (CDPHE).[2]  In its September 19, 2013 Flood Guidance, CDPHE defined Tier 1 debris as follows:

> Tier 1 Building Materials: Any and all building materials that have been displaced or dislodged as a result of heavy rains and flooding. This includes, for example debris from demolished homes that may have washed away.

Mr. Ratkai also declared the homes uninhabitable and unsafe, presumably to both the owners and the mobile home management, and advised that the homes were dangerous and in need of destruction.  Evans created a list of the VIN numbers of these homes which it distributed to Colorado state agencies.  However, subsequently in his deposition, Mr. Ratkai testified that, upon receiving a request to reset a Tier 1

---

[1] The factual background consists of facts alleged by Defendant City of Federal Heights ("Defendant") that Plaintiffs admitted, or allegations that the Court confirmed in the attachments to the pleadings.
[2] Mr. Ratkai's memorandum remained internal to the City of Evans.

designated mobile home in Evans, "… [Evans] would have entertained documentation that it was safe."

Plaintiff Craig Shriver ("Plaintiff Shriver") owns and manages Plaintiff Riverside Storage and Recycling Center ("Plaintiff Riverside").  On February 1, 2014, Plaintiff Riverside contracted with Plaintiff Kimberly Hills to bring in 50 homes to Kimberly Hills' park in return for a $6000 incentive payment per home.  In the Spring of 2014, Eastwood Village Mobile Home Park, also located in Evans, hired Plaintiff Riverside to clean up the park.  During the same time, Bella Vista Mobile Home Park allowed Plaintiff Shriver to take possession of mobile homes from that park.  Of the mobile homes that had been identified by Evans to be destroyed, Plaintiff Shriver destroyed some but removed others that he rehabilitated by fixing the damaged and unsafe portions of the homes.

After rehabilitating the homes, Plaintiff Shriver applied for set permits[3] so that he could move the homes into the City of Federal Heights ("City") at Plaintiff Kimberly Hills' park.  Although Plaintiff Shriver disclosed to the Defendant City that the homes had been affected by a flood, he did not know of and hence did not disclose their Tier 1 designation by Evans.  Defendant City issued the set permits, but was unaware of the Tier 1 designation by Evans at the time it did so.

On July 24, 2014, after having inspected the homes for which set permits had been issued, Defendant City wrote a letter to the mobile home parks and setters stating

---

[3] Defendant issues set permits to allow the placement of the home in the City, which Defendant then inspects to determine any requisite repairs and it then orders their completion within a time limit.  On July 9, 2014, Plaintiff Shriver owned only one of these homes, but he applied for two permits for himself and also for others who purchased the Evans' homes.

that it had come to its attention that certain flood-affected mobile homes were being brought into the City.  Defendant attached its "Used Manufactured Home Set Inspection Policy" which states the requirements for "setters of flood-damaged homes."[4]  The requirements included disclosure of all known conditions of the homes requiring repairs, the repair of various mobile home components, and an inspection/test of the repairs.

About a month later, around August 19th, Defendant City learned of Mr. Ratkai's Tier 1 designation of the Evans' homes through the VIN number lists kept by a Colorado state agency.  Thereafter, without notice to the owners, Defendant City removed from two Evans' homes a state issued insignia indicating that these homes had met the standards of the Colorado Division of Housing.  Defendant's building inspector then discussed this Tier 1 designation of the homes with Mr. Ratkai but in that discussion did not view or verify the ACT – 20 forms, the data on which Evans premised its designation.  On September 3, 2014, Defendant City issued a Notice and Order for Removal for all of Evans' flood-affected homes, declaring them nuisances under Defendant's Municipal Code.  Defendant City did not inspect the homes to determine whether or not they were nuisances or met its Policy or the state standards.  It merely relied on Evans' prior Tier 1 designation.

On September 10, 2014, Plaintiff Shriver's counsel wrote Defendant, contesting the nuisance declaration and requesting any underlying documentation regarding the Tier 1 designation.  Defendant ignored counsel's challenge and request and instead issued a new September 19, 2014 Notice and Order for Removal.  The September 19

---

[4] This policy does not reference a Tier 1 designation.

Order required immediate removal of the homes now based upon Plaintiffs' incomplete permit applications, that is, their omission of the prior Tier 1 designation.

Defendant did not identify in its Removal Orders any procedure to contest or appeal the order requiring the immediate removal of the homes.  By contrast, on December 13, 2013, Defendant had notified other homeowners of their right to appeal a Notice and Order to Vacate that it had issued to them.  No Plaintiff appealed Defendant's Removal Orders.

Plaintiff Shriver left one home in the City, for which Defendant cited him criminally.  Plaintiff Shriver successfully challenged this citation in the municipal court based on Defendant's defective notice to him.  Despite prevailing in municipal court, Plaintiff Shriver removed his home from Kimberly Hills.

Plaintiff Kimberly Hills makes its income from charging lot rent to residents for their mobile homes.  It did not own any of the homes that were removed.  It alleges that Defendant had previously directed its police power on Plaintiff Kimberly Hills.  For example, in April 18, 2014 emails, Defendant's employee Kell Straits directed another employee, "HIT KIMBERLY HILLS WITH CODE ISSUES/ COUTESY [sic] NOTICES

> He specifically wants YOU to go through KH and issues LOTS of notices and put each address into CAD.  Focus on rental spaces of KH which are KH owned.
> … If I were you, I would focus on KH and nothing else this weekend.
> He basically expects the Courtesy Notices to be stacked full.
> But you do what you want. …" ;

In a July 15, 2014 email, Defendant's City Clerk stated to its City Manager that, "Kell is ready to write citations for 300 violations in Kimberly Hills."

Defendant cited and criminally prosecuted Plaintiff Kimberly Hills' manager Tanya Wiebold for Failure to Prune Trees within the park.  Ms. Wiebold was convicted and sentenced to a one-year probation.  On June 23, 2015, the Adams County District Court reversed the conviction in part because Defendant erred in prosecuting Ms. Wiebold criminally and remanded the case to be heard as a civil case.

Plaintiffs Kevin Cox and John Hood are lenders who did not do not have manufactured home dealer's licenses or own any of these homes when they were set into the City.  Rather, their borrower purchased Evans' homes through Plaintiff Shriver's efforts and had moved several homes into the City.  Upon receiving the Removal Notices, the borrower removed the Evans' homes from the City.  The borrower did not appeal the Orders for Removal of the homes.

In a June 17, 2014 letter, Colorado's Division of Housing took the position that some of the homes may be capable of being rebuilt, but that allowing the placement of the homes is under the ultimate jurisdiction of the local authority, stating that:

> Mobile home and manufactured home inspectors and installers are reminded of their responsibility to inspect each home for all damage, including flood damage, prior to installation of the home. …
> The local jurisdiction chief building official has full authority to deny the placement of used mobile and manufactured homes in the jurisdiction based on an individual inspection of the home for structural and/or other flood related damage.

Defendant has in the past had its building decisions appealed to the Board of Adjustment ("Board"), which has the authority to review such decisions and which has overturned some of them.

The Municipal Code of Federal Heights and other building codes, including the IRC and the IPMC, are available on line and at City Hall upon request.

## II.     STANDARD OF REVIEW

### A. Summary Judgment

"…   Summary judgment is proper if the movant shows 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c). 'When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'  *Simms*, 165 F.3d at 1326.

The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. …

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."

*Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000).

## II.     DISCUSSION

As a result of Defendant's actions, Plaintiffs allege procedural and substantive due process violations by Defendant in violation of 42 U.S.C. § 1983.  Plaintiffs claim that Defendant improperly deprived: 1) Plaintiff Riverside of revenue from its inability to place 50 homes in the Plaintiff Kimberly Hills' park, 2) Plaintiff Shriver financially as his business Plaintiff Riverside lost a business opportunity, he had to relocate his home and defend himself against improper criminal charges, 3) Plaintiffs Cox and Hood of their opportunity to continue to make loans to their borrower for the purchase of homes to be set in the City, and 4) Plaintiff Riverside financially due to lost financing incentives, preparing to receive homes which were subsequently not allowed into the park, uncollected rent, and having to defend its manager against improper criminal charges.

Defendant moves for summary judgment against all Plaintiffs on their procedural and substantive due process claims, asserting that they cannot prove the requisite property interest or that it failed to provide appropriate due process when it issued its Removal Orders for the Evans' homes from the City.

**B. Due Process**

The Due Process Clause of the Fourteenth Amendment "'prohibits the state from … depriving any person of property without due process of law.' U.S. Const. amend. XIV, § 1.  Due process has two components: procedural and substantive. Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."  *Hyde Park Co v Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)

**1.  Procedural Due Process Claims**

Although subject to the proper exercise of police power, the property interest of a person may not be deprived without the Fourteenth Amendment's requirement of due process of law.  *Eason v. Board of County Com'rs of County of Boulder*, 70 P.3d 600, 605 (Colo.App. 2003).  "To 'assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'  (citation omitted) … 'An essential principle of due process is that a deprivation of life, liberty or property 'be

8

preceded by notice and opportunity for hearing appropriate to the nature of the case.'

(citation omitted)." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009).  "In

matters of public health and safety, the Supreme Court has long recognized that the

government must act quickly. Quick action may turn out to be wrongful action, but due

process requires only a postdeprivation opportunity to establish the error."  *Camuglia v.*

*City of Albuquerque*, 448 F.3d 1214, 1220 (Cir. 2006).

### 2.  Substantive Due Process

"The 'ultimate' standard for determining whether there has been a substantive

due process violation is 'whether the challenged government action shocks the

conscience of federal judges.'" (citation omitted).  *Moore v. Guthrie*, 438 F.3d 1036,

1040 (10th Cir. 2006).  "When analyzing executive action, 'only the most egregious

official conduct can be said to be arbitrary in the constitutional sense.' *Cty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)

(internal quotation marks omitted). Intentionally or recklessly causing injury through the

abuse or misuse of governmental power is not enough.  *See Klen v. City of Loveland,*

*Colo.*, 661 F.3d 498, 513 (10th Cir. 2011). The actions 'must demonstrate a degree of

outrageousness and a magnitude of potential or actual harm that is truly conscience

shocking.' *Id.* (internal quotation marks omitted)."  *Onyx Properties LLC v. Board of*

*County Commissioners of Elbert County*, 838 F.3d 1039, 1048-9 (10th Cir. 2016).

Defendant argues that Plaintiffs cannot prove any property interest in the permits

that it issued to set mobile homes in its jurisdiction because it has the unfettered

discretion to revoke the permits.  Defendant argues that this unfettered discretion

precludes Plaintiffs from perfecting any property interest in the permits.  Defendant

issued the permits to set the mobile homes without knowledge that Evans had

designated them Tier 1 debris.  Defendant argues that its Removal Orders[5] for the

homes from the City premised on this omission constituted an appropriate exercise of

its discretion.

Defendant also argues that Plaintiffs cannot prove any due process violation

because they are not entitled to any due process pre-deprivation and the due process

available to them post-deprivation suffices.  Defendant ordered the homes removed

without any prior notice to Plaintiffs on an alleged emergency basis, to eliminate an

immediate danger to the public.  It argues that Plaintiffs' ability to appeal this summary

revocation suffices to satisfy their due process rights.

## A.  Property Interest

The court concludes that some of the Plaintiffs herein can indeed perfect a property

interest in the set permits that Defendant issued.  Property interests "are created and

their dimensions are defined by existing rules or understandings that stem from an

independent source such as state law".  *Board of Regents of State Colleges v. Roth*,

408 U.S. 564, 577 (1972).  "Colorado courts have recognized vested rights in the

context of building permits. The [S]upreme [C]ourt has held that '[a] city permit can

provide the foundation for a vested right, and thus be constitutionally protected from

impairment by subsequent legislation, if the permit holder takes steps in reliance upon

---

[5] Defendant does not specify whether it revoked its first Removal Order and replaced it with the second Order, whether the second Order supplements the first, or whether it to proceeds against Plaintiffs on both Orders. The Court therefore addresses both Orders in its discussion below.

the permit.' (internal citations omitted)" *Eason*, *supra* at 605.  *Cline v. City of Boulder*, 450 P.2d 335, 338 (Colo. 1969) had reached a similar conclusion, citing to the general rule from 8 McQuillin, Municipal Corporations § 25.156 (3d ed. 1965):

> The general rule is that permits for buildings and businesses are not per se protected against revocation in effect by subsequent enactment or amendment of zoning laws prohibiting the building, business or use for which they have been issued. That is to say, a municipality may revoke a permit where zoning is enacted or changed to prohibit the use and where the permitee has not materially changed his position in reliance on the permit. * * *

A municipality's discretion over a permit affects the determination of whether said permit constitutes a property interest.  "'A property interest exists if discretion is limited by the procedures in question, that is, whether the procedures, if followed, require a particular outcome.' (internal citations omitted)  On the other hand, 'where the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue, no property interest is implicated.'"  *Nichols v. Board of County Com'rs of County of La Plata, Colorado*, 506 F.3d 962, 970 (10th Cir. 2007).

The Court concludes from both *Eason* and *Cline, supra* that beneficiaries of "set" permits can acquire a property interest in them if they take steps in reliance on them. Based on *Eason* and *Cline*, the Court rejects Defendant's argument that property rights may vest only in "building" permits but not in "set" permits.  The Court notes that Plaintiffs invested in the relocation of the homes to the City in reliance on the set permits that Defendant had issued.

Defendant did not have the unfettered discretion that it claims regarding the permits that it issued.  On July 24, 2014, Defendant announced its Used Manufactured

Home Set Inspection Policy in determining to issue or deny the permits.  This policy's requirements for "setters of flood-damaged homes" generally include disclosure of all known conditions of the homes requiring repairs, the repair of various types of mobile home components, and the implementation of inspection and testing procedures to determine compliance.  Implicit in this Policy is the premise that Defendant accepts flood-damaged homes in the City if they are properly repaired and tested.  In addition, the Colorado Division of Housing's June 17, 2014 memorandum regarding Flood Damaged Mobile and Manufactured Homes, from which Defendant derives its authority, incorporates this premise.  It states:

> The local jurisdiction chief building official has full authority to deny the placement of used mobile and manufactured homes in the jurisdiction *based on an individual inspection of the home for structural and/or other flood related damage.* (*emphasis added*).

These authorities define the dimensions of the property rights that may be created by Defendant's set permits, acquired when the permit holder/permittee takes steps in reliance on said permits.  Plaintiffs allege that they would have met the requirements of Defendant's authorities regarding flood-damaged homes if allowed to proceed.  If so, they would have been able to utilize the homes in the City.  Defendant did not purport to revoke its permits based on any results of its own investigations and it ignored its own authorities regarding flood-damaged homes.  Defendant's authorities do not vest it with absolute discretion to withhold or to revoke permits.  As such, Defendant's limited discretion cannot prevent Plaintiffs from perfecting a property interest in its permits.

The Court concludes that Defendant fails to make a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law regarding a property interest in the permits by Plaintiffs River Storage and Recycling Center, Craig Shriver, and Kimberly Hills.

### 2. Plaintiffs River Storage and Recycling Center, Craig Shriver, and Kimberly Hills

The Court concludes that there is a genuine issue of material fact regarding whether Plaintiffs River Storage and Recycling Center, Craig Shriver, and Kimberly Hills acquired a property interest in the set permits that Defendant issued. These Plaintiffs are the home owners, permit applicants and recipients, and permittees of the right to have the homes placed on premises of Plaintiff Kimberly Hills. Defendant itself concedes that Plaintiffs have standing to appeal its revocation of the permits. Based on the discussion above, these Plaintiffs may have acquired a property interest in the set permits issued by Defendant upon making their investments in reliance on them.

### 3. Plaintiffs Kevin Cox and John Hood

Conversely, the Court concludes that there is no genuine issue of material fact that Plaintiffs Kevin Cox and John Hood did not acquire any property interest in the set permits that Defendant issued. The set permits issued by Defendant do not implicate Plaintiffs Cox and Hood. These Plaintiffs argue that they have a property right in their "right to contract." However, this right is not dependent on the set permits issued by Defendant, nor do these Plaintiffs so claim. They do not allege that the permits gave them authority to enter into contracts to make loans or that they obtained any ownership

interest in the permits through their loans, either of which Defendant deprived from them through its revocation of the permits.

Plaintiffs Cox and Hood also argue that *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), vests them with property rights that are protected against the indirect impact of the Defendant's actions. *Pierce* affirmed the issuance of a preliminary injunction against a state statute that would unlawfully interfere with the appellees' patrons and destroy their businesses and property, their private religious schools. The statute would have effectively prohibited private religious schools. The Court declines to apply *Pierce* to the instant case because no such far reaching impact is present in this case.

The Court concludes that no genuine issue remains regarding the failure of Plaintiffs Cox and Hood to acquire a property interest in the set permits issued by Defendant. Accordingly, the Court grants Defendant's Renewed Motion for Summary Judgment as to Plaintiffs Kevin Cox and John Hood.

### B. Procedural Due Process

### 1. Defendant's Summary Revocation of the Permits

On September 3, 2014, without any prior notice to Plaintiffs, Defendant revoked, the set permits on the basis that the homes had been designated Tier 1 (by Evans). Although Defendant has the authority to proceed against Plaintiffs for an abatement of a nuisance, it must follow its normal procedure[6] and provide meaningful notice, including

---

[6] When the nuisance constitutes an "immediate and serious danger to the public health, safety or welfare", Defendant can proceed with a summary abatement order. However, Defendant's authorities regarding nuisances and flood-damaged homes do not authorize a summary abatement based on a Tier 1 designation.

specification of the applicable nuisance for each of the homes for which it revoked the set permit.

Moreover, whether Defendant could properly rely on Evans' subjective Tier 1 designation to allege that Plaintiffs created a dangerous nuisance and issue a Removal Order without any due process is in dispute.  Evans lacked objective information on which it based its Tier 1 designation of the homes.  Evans did not possess the ACT - 20 List for each of the homes that could have identified them as unrepairable or in need of destruction.  Further, In Evans, a home can be rehabilitated out of a Tier 1 designation. Evans indicated that it would have accepted applications for the placement within its jurisdiction of flood-damaged homes that had been previously designated Tier 1.

On September 19, 2014, Defendant again revoked the set permits on a claimed violation of its application process, without any prior notice to Plaintiffs. Defendant did so on the basis that  Plaintiffs omitted from the permit applications the former Tier 1 designation of the homes.

A jury could find that a Tier 1 designation in and of itself would not have affected Defendant's implementation of its stated policy of identifying conditions in homes that need to be repaired and implementing appropriate inspection and testing to confirm that the homes are properly repaired.  In reality, the fact that the Evans gave these homes a Tier 1 designation appears inconsequential to Defendant's execution of its policies regarding homes.  Thus, whether the omission of a Tier 1 designation can render a permit application incomplete is in dispute.  More importantly, whether this omission can

justify a summary abatement/permit revocation for a home, without pre-deprivation due process is also in dispute.

The Court concludes that Defendant fails to make a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law regarding its allegations that: 1) the homes constituted a nuisance, 2) Plaintiffs submitted permit applications with incomplete information, 3) the Tier 1 designation is determinative of its allegations, and 4) it acted to protect the public health from immediate danger.  These are matters for the jury to determine based on the evidence presented at trial.

### 2.  The Adequacy of any Post-Revocation Appeal

Defendant next argues that the post-revocation procedure available to Plaintiffs, an appeal to the Board, constitutes adequate due process.[7]  Defendant asserts that, pursuant to Fed. Hts. Muni. Code § 70-56, an aggrieved party need only appeal to the Board, noting the alleged error, and the official will send all documents to the Board for the record. Unfortunately, however, the Defendant selectively withheld from Plaintiffs any notice of their right to appeal.  Moreover, this purported remedy is inadequate for an absence of pre-deprivation process where there is no imminent danger to the public.

Without any pre-deprivation hearing, Plaintiffs were unable to present their evidence to Defendant of its alleged errors.  Thus, the record would not contain Plaintiffs' evidence regarding whether: 1) the Tier 1 designation was actually warranted, 2) the Tier 1 designation was material or immaterial, 3) their alleged repairs complied

---

[7] Defendant argues, without providing any convincing authority, that Plaintiffs cannot pursue their claims because they did not appeal the Removal Orders.  For the reasons stated herein, the Court disagrees.

with Defendant's authorities so as to allow the use of the homes in the City, and 4) the homes constituted any serious and immediate danger to the public.  Hence the Board would review only Defendant's conclusory allegations on appeal.  The adequacy of this procedure is in significant dispute.

The Court concludes that Defendant fails to make a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law regarding the adequacy of the procedural due process that it accorded to Plaintiffs in proceeding against them in summary fashion.

### C. Substantive Due Process

Plaintiffs allege a substantive due process claim against Defendant based on various actions that it took against Plaintiffs collectively after it had issued the set permits and they had placed homes on the premises of Plaintiff Kimberly Hills.  Plaintiffs allege that Defendant did so to curry favor with a news outlet that merely confirmed what Defendant already knew, that Plaintiffs moved flood-damaged homes from Evans into the City.  Plaintiffs' allegations include that Defendant: 1) trespassed into the homes to improperly removed insignias documenting remediation of the homes; 2) issued a September 3, 2014 Removal Order for the homes on the false allegation that they were a nuisance; 3) retaliated against Plaintiffs for objecting to the September 3 Removal Order by issuing a September 19, 2014 Removal Order on the pretext of incomplete information in the permit applications; 4) selectively omitted any notice of any appellate procedure to Plaintiffs from its Removal Orders; 5) failed to allow the home owners the opportunity to prove to Defendant its erroneous allegations for its Removal Orders; and

6) vindictively and selectively issued numerous citations against Plaintiff Kimberly Hills, its manager, and Plaintiff Shriver.

The Court finds instructive the guidance from *Klen v. City of Loveland, Colorado*, 661 F.3d 498 (10th Cir. 2011), regarding whether Defendant's actions herein met the "shock the conscience of the Court" threshold to proceed on a substantive due process claim. Therein, the Tenth Circuit Court of Appeals affirmed a district court's grant of summary judgment where the allegations against the municipality included: 1) unjustified delay in issuing a building permit; 2) overcharging for and illegally collecting fees; 3) an unprecedented issuance of criminal citations after municipal officials had induced plaintiffs to engage in the conduct charged; 4) demands for unnecessary documentation and obstruction of normal avenues for resolution of a plat issue; 5) forgery of the plaintiffs' building application; 6) submission of a fraudulent affidavit during the prosecution of a plaintiff; and 7) trespass on a plaintiff's property. *Klen, supra* at 512.

Plaintiffs' allegations herein are substantially similar to those alleged by the plaintiffs in *Klen*. Yet the Tenth Circuit Court of Appeals in *Klen* held that Plaintiffs' allegations therein failed to demonstrate a degree of outrageousness and a magnitude of potential or actual harm so as to rise to the level of conscience-shocking behavior. *Klen, supra* at 513. The Court concludes that Plaintiffs' allegations in this case are sufficiently similar to those in *Klen* such that they do not rise above the threshold necessary to constitute a substantive due process claim.

Thus the Court concludes that Defendant has shown that there is no genuine issue as to any material fact regarding the substantive due process claims and that it is entitled to a judgment as a matter of law thereon.

## CONCLUSION

Accordingly, as to Plaintiffs River Storage and Recycling Center, Craig Shriver, and Kimberly Hills, the Court denies Defendant's Renewed Motion for Summary Judgment as to their procedural due process claims but grants Defendant's Renewed Motion for Summary Judgment as to their substantive due process claims.  The Court grants Defendant's Renewed Motion for Summary Judgment as to Plaintiffs Kevin Cox and John Hood on all claims.  As to the claims dismissed, each party will bear its own attorneys' fees and costs.  The Court reserves ruling on all other claims regarding attorneys' fees and costs.

In light of this Order, Counsel for both parties shall contact the Court Chambers via email arguello_chambers@cod.uscourt.gov no later than 10/06/2017 in order to set a status conference in this case, as soon as reasonably available.

DATED: October 2, 2017

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge