IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 15-cv-02325-CMA-NYW

RIVERSIDE STORAGE AND RECYCLING CENTER, a Colorado Limited Liability Corporation,
CRAIG SHRIVER,
KEVIN COX,
JOHN HOOD, and
KIMBERLY HILLS, foreign limited liability company,

    Plaintiffs,

v.

THE CITY OF FEDERAL HEIGHTS, a Colorado Municipal Corporation,

    Defendant.

───────────────────────────────────────────────────────────

## ORDER ON PRETRIAL MOTIONS TO EXCLUDE EXPERTS
───────────────────────────────────────────────────────────

This matter is before the Court on two motions: (1) Defendant's Motion to Exclude Plaintiffs' Experts Stephen Thomas, Craig Shriver, and Ken Essex Pursuant to Rule 702 (Doc. # 152), and (2) Plaintiffs' Motion to Exclude Defendant's Experts Chris Tremaine and Kelly Spence Pursuant to Rule 702 (Doc. # 159). For the reasons outlined below, the Court denies in part and grants in part Defendant's motion and denies in full Plaintiffs' motion.

### I. BACKGROUND

In September 2013, the City of Evans experienced significant floods, which devastated mobile home parks in the city. The mobile homes in these parks were flooded for at least six days. After contracted inspectors surveyed the damaged homes,

pursuant to the authority of the Colorado Department of Public Health and Environment[1], Evans' building official declared the homes to be "Tier 1 debris," dangerous, and in need to be destroyed.

Plaintiffs are individuals and entities active in the mobile home industry. Plaintiff Craig Shriver ("Plaintiff Shriver") owns and manages Plaintiff Riverside Storage and Recycling Center ("Plaintiff Riverside"). In the spring of 2015, Plaintiff Shriver and Plaintiff Riverside contracted with two mobile home parks in Evans to clean up and take possession of mobile homes impacted by the flooding. Of the mobile homes that had been identified by Evans to be destroyed, Plaintiff Shriver removed and destroyed some but removed and rehabilitated others. Also in early 2015, Plaintiff Riverside contracted with Plaintiff Kimberly Hills to bring fifty mobile homes to Kimberly Hills' mobile home park in the City of Federal Heights ("Defendant City") in return for a $6,000 per home incentive payment.

Plaintiff Shriver applied for set permits[2] so that he could move the rehabilitated mobile homes into the Defendant City at Plaintiff Kimberly Hills' mobile home park. Although Plaintiff Shriver disclosed to the Defendant City that the homes had been affected by a flood, he did not disclose their Tier 1 designation by Evans. Unaware of

---

[1] The Colorado Department of Public Health and Environment defines Tier 1 building materials as "[a]ny and all building materials that have been displaced or dislodged as a result of heavy rains and flooding. This includes, for example debris from demolished homes that may have washed away."

[2] Defendant City issues set permits to allow the placement of homes in the City, which Defendant City then inspects to determine any requisite repairs. Defendant City then orders completion of the requisite repairs within a time limit. On July 9, 2014, Plaintiff Shriver owned only one of these homes, but he applied for two permits for himself and also for others who purchased homes impacted by the Evans flooding.

the Tier 1 designation by Evans, Defendant City issued the set permits to Plaintiff Shriver.

On July 24, 2014, after having inspected the homes for which set permits had been issued, Defendant City wrote a letter to the mobile home parks and setters stating that it had come to its attention that certain flood-affected mobile homes were being brought into the City. Defendant City attached its "Used Manufactured Home Set Inspection Policy," which requires certain disclosures, repairs, and inspections for flood-damaged homes. On August 19, 2014, Defendant City learned of the Evans's Tier 1 designation of these mobile homes through VIN numbers lists kept by a Colorado state agency.

Plaintiffs allege that Defendant City then voided the mobile home set permits, removed occupancy insignias, and ordered Plaintiffs to remove the homes. (Doc. # 78.) Plaintiffs assert procedural due process violations[3] by Defendant City in violation of 42 U.S.C. § 1983. (*Id.*)

On September 16, 2016, Plaintiffs filed their expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2). (Doc. # 152-1.) Relevant here, Plaintiffs identified retained expert witness Steve Thomas and non-retained expert witness Craig Shriver (Plaintiff Shriver). On October 14, 2016, Defendant City filed its expert disclosures, which included Chris Tremaine and Kelly Spence of Tremaine Enterprises, Inc. as retained expert witnesses.

---

[3] Plaintiffs also asserted substantive due process claims. (Doc. # 78.) The Court granted Defendant City's Renewed Motion for Summary Judge (Doc. # 150) as to the substantive due process claims on October 2, 2017. (Doc. # 166.) Additionally, the Court granted Defendant's Renewed Motion for Summary Judgment (Doc. # 150) as to two initial plaintiffs, Kevin Cox and John Hood. (Doc. # 166.) Thus, the only remaining claims are Plaintiff Riverside's, Plaintiff Shriver's, and Plaintiff Kimberly Hills's procedural due process claims against the Defendant City.

3

(Doc. # 159-13.)  Tremaine and Spence's report (the "TEI Report") was attached.  (Doc. # 159-3–5.)

On October 25, 2016, Plaintiffs filed their expert rebuttal disclosures.  (Doc. # 152-4.)  In addition to previously-identified retained expert witness Thomas and non-retained expert witness Plaintiff Shriver, Plaintiffs also identified a new non-retained rebuttal expert witness, Ken Essex.  (Id.)  Defendant City's expert rebuttal disclosures are not relevant to the instant motions.

Defendant City filed its Motion to Exclude Plaintiffs' Experts Stephen Thomas, Craig Shriver, and Ken Essex Pursuant to Rule 702 on August 14, 2017.  (Doc. # 152.)  Plaintiffs filed their Motion to Exclude Defendant City's Experts Chris Tremaine and Kelly Spence Pursuant to Rule 702 on August 24, 2017.  (Doc. # 159.)  The parties timely filed responses and reply briefs on each motion.  (Doc. ## 161, 162, 164, 165.)

## II.  **LEGAL STANDARD**

Under *Daubert*, the trial court acts as a "gatekeeper" by reviewing a proffered expert opinion for relevance pursuant to F.R.E. 401, and reliability pursuant to F.R.E. 702.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–95 (1993); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).  The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion is admissible.  *United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009; United States v. Crabbe*, F. Supp. 2d 1217, 1220–21 (D. Colo. 2008); F.R.E. 702 advisory comm. notes.  This Court has discretion to evaluate whether an expert is helpful, qualified, and reliable under F.R.E.

702. *See Goebel*, 214 F.3d at 1087; *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702.

In determining whether expert testimony is admissible, the Court generally employs a three-step process. First, it must first determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 124. Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently "relevant to the task at hand," such that it "logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough to ignore what is unhelpful in its deliberations." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

Third, the Court examines whether the expert's opinion "has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Id.* (quoting *Daubert*, 509 U.S.

at 592). In determining reliability, a district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). In making this determination, a court may consider: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has general acceptance." *Norris*, 397 F.3d at 884 (citing *Daubert*, 509 U.S. at 593–94). The Supreme Court has made clear that this list is neither definitive nor exhaustive; accordingly, a trial court has broad discretion to consider other factors. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

The requirement that testimony must be reliable does not mean that the party offering such testimony must prove "that the expert is indisputably correct." *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1233 (10th Cir. 2004) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). Rather, the party need only prove that "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.*

Guided by these principles, this Court has "broad discretion" to evaluate whether an expert is helpful, qualified, and reliable under F.R.E. 702. *Velarde*, 214 F.3d at 1208–09.

### III. ANALYSIS

**A. DEFENDANT CITY'S MOTION**

1. Stephen Thomas

Plaintiffs allege that Defendant City did not correctly apply applicable legal codes, including the International Residential Code ("IRC"), the International Property Maintenance Code ("IPMC"), and its own municipal code. (Doc. # 78.) In support of these allegations, Plaintiffs designated Stephen Thomas of Colorado Code Consulting, LLC, as a retained expert witness. (Doc. # 152-1.) Thomas prepared a ten-page report for Plaintiffs. (Doc. # 152-2.) Thomas opined in his report that the Defendant City failed to follow their own codes and standards, including the IRC and IPMC, which Defendant City had adopted by reference. (*Id.*)

Defendant City moves that the Court preclude Thomas "from testifying as to whether [Defendant City] should have followed the [IPMC] instead of the [IRC] and that the [Defendant City] violated the Notice provision of the IPMC." (Doc. # 152.) According to Defendant City, this testimony "attempts to invade the province of the [C]ourt to instruct the jury on the law." (*Id.*)

The Court disagrees and concludes that Thomas's testimony is admissible. Contrary to Defendant City's characterization, Thomas's primary conclusion is not that Defendant City followed the incorrect code by applying the IRC. In fact, at the outset of his report, Thomas stated that the applicable codes **include the IRC**, the IPMC, and the municipal code. *See* (Doc. # 152-2 at 3.) The specific point that the IPMC, not the IRC, was the correct code was in the context of a single point of analysis—the revocation of permits that did not exist. *See* (*id.* at 6.) The Court agrees with Plaintiffs that Thomas's testimony "does not improperly instruct the jury on the law, but rather applies

[Thomas's] knowledge of what building code applies in any given circumstance to assess [Defendant City's] actions and conclude that it did not follow proper code requirements." (Doc. # 162.) Thomas's opinion in this part of his report is focused on a specific question of fact. *See United States v. Buchanan*, 787 F.2d 477, 483 (10th Cir. 1986). Thomas has not "invade[d] the court's authority by discoursing broadly over the entire range of the applicable law." *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).

A witness "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Id.* Because Thomas's opinion does no more than "aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms," *see id.*, the Court DENIES Defendant City's Motion to Exclude Plaintiffs' Expert Thomas.

2. Craig Shriver

Plaintiffs initially designated Plaintiff Shriver as a non-retained expert witness and summarized his experience and his opinions. (Doc. # 152-1.) Plaintiffs also identified Shriver as a non-retained expert for rebuttal purposes. (Doc. # 152-4.) Plaintiffs' expert rebuttal disclosure was identical to their initial disclosure, save for one four-sentence addition about Shriver's testimony.[4]

Defendants assert that Shriver's opinions are unreliable and include an improper

---

[4] "Mr. Shriver will testify that the standard in the industry is not the remediation protocol provided in Defendants' expert report. Furthermore Mr. Shriver will testify that the labor rates reflected in Defendants' expert report do not reflect the actual labor wages paid by himself or Mr. Shriver when remediating/remodeling used manufactured homes. Instead labor is hired between 10-20 dollars per hour. Also Mr. Shriver will testify that he personally performs a large amount work at no additional cost." (Doc. # 152-4 at 6.)

8

legal opinion.  (Doc. # 152.)  Defendants also argue that Shriver's opinions "are improper 'rebuttal' opinions and should have been included in Plaintiffs' initial expert disclosures."  (*Id.*)

The Court is not persuaded and concludes that Shriver's testimony is admissible.  First, Shriver's opinions meet the reliability requirement of F.R.E. 702.  The text of F.R.E. 702 "expressly contemplates that an expert may be qualified on the basis of experience," and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  F.R.E. 702 advisory comm. notes (2000).  Plaintiffs sufficiently allege that Shriver has a great deal of pertinent experience.[5]  (Doc. # 152-1.)  Any weaknesses in Shriver's testimony from not having worked exclusively with flood-damaged homes go to the weight of his testimony, not its admissibility.  As long as an expert stays within the "reasonable confines of his subject area," "a lack of specialization does not affect the admissibility of [the expert opinion], but only its weight."  *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996), *overruled on other grounds*, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *see also Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).

Second, the Court rejects Defendant City's contention that Shriver's testimony includes an improper legal opinion.  Though Defendant City challenges the entirety of Shriver's testimony, it takes particular issue with the indication that Shriver "will testify

---

[5] "Mr. Shriver has 15 years' experience in set up, construction, refurbishing, remodeling, tear down, demolition, recycling, moving and transport of manufactured/mobile homes. Mr. Shriver has personally moved over 1000 mobile homes. Mr. Shriver also has 25 years' experience in renting, selling and leasing of properties and 18 years specifically with manufactured homes." (Doc. # 152-1.)

that once a building permit is signed off and a [certificate of occupancy ('CO')] issued, the house is safe for occupancy" and characterizes this as an improper legal opinion. (Doc. # 152 at 10 (quoting Doc. # 152-1 at 2.)) Provided that Plaintiffs limit Shriver's opinion as they assert in their response to "the **process** leading up to the final certificate of occupancy and what—based on his experience with the permitting and inspection process—the certificate is meant to convey," Shriver is not opining on the legal effect of a CO. (Doc. # 162 at 10) (emphasis added.)

Third, Shriver's opinions are not improper rebuttal opinions. Defendant City notes that the summary of Shriver's opinions in Plaintiffs' rebuttal disclosures differs by only four sentences from Plaintiffs' initial disclosures. (Doc. # 152.) Defendant City argues that these four additional sentences "are clearly not rebutting or contradicting Defendant's experts" and thus "should have been disclosed as part of Plaintiffs' Initial Expert Disclosures." (*Id.*) The Court disagrees. Defendant City's expert report, the TEI Report, stated that Plaintiffs did not follow the proper remediation protocol and underestimated the costs of remediation, and concluded that Plaintiffs would not have made a profit. (Doc. # 159-3.) Plaintiff's rebuttal disclosures as to Shriver's testimony responded directly the TEI Report. The opinions thus are proper rebuttal opinions pursuant to F.R.E. 702.

For these reasons, the Court DENIES Defendant City's Motion to Exclude Plaintiffs' Expert Shriver.

3.  Ken Essex

When Plaintiffs filed their expert rebuttal disclosures, they identified a new non-

retained rebuttal expert witness, Ken Essex. (Doc. # 152-4.) Plaintiffs' summary of Essex's testimony is **identical** to Plaintiffs' summary of Shriver's testimony. (*Id.*) Plaintiffs merely inserted Essex's name in place of Shriver's name. (*Id.*)

The Court agrees with Defendant City that because the opinions are identical, Essex's testimony is needlessly cumulative. *See* (Doc. # 152.) The cumulative nature of Essex's opinion substantially outweighs any probative value it may have. Pursuant to F.R.E. 403, the Court therefore GRANTS Defendant City's Motion to Exclude Plaintiffs' Expert Essex.

**B.   PLAINTIFFS' MOTION**

1. Chris Tremaine and Kelly Spence, and the TEI Report

Defendant City identified Tremaine and Spence as retained expert witnesses and included their report, the TEI report, in its initial disclosures. (Doc. # 159-13); *see also* (Doc. # 159-3–5.)

Plaintiffs argue that Tremaine and Spence's testimony should be excluded for three reasons: (1) they "are not qualified to opine on the intermediary conclusions in the TEI Report;" (2) their testimony is based on "insufficient review of applicable evidence, [and] improper reliance on inapplicable evidence," and is not based on any "particular or supported methodology;" and (3) their opinions are "unhelpful because they do not address the reality of [Plaintiff] Shriver's planned remediation approach." (Doc. # 159.)

First, the Court concludes that Tremaine and Spence have sufficient knowledge, skill, experience, training, and education to testify as experts. *See* F.R.E. 702. As the Court explained above, "an expert may be qualified on the basis of experience." F.R.E.

11

702 advisory comm. notes (2000).  Defendant City attached to its initial disclosures Tremaine's and Spence's resumes.  (Doc. # 159-7.)  These resumes reflect decades of experience in adjusting property claims, in consulting on claims, and in general contracting and construction.  *See* (*id.*)  In the Court's view, Tremaine and Spence have the "extensive and specialized experience" necessary to opine as experts.  *See Kumho*, 526 U.S. at 156.  Any weaknesses in their testimony concerning interpreting of law, identifying mold from photographs, or opining on the rental market for mobile homes go to the weight to be accorded to their testimony, not its admissibility.  *See Compton*, 82 F.3d at 1520.

Second, the Court rejects Plaintiffs' contention that Tremaine and Spence did not base their opinions on proper evidence.  Plaintiffs imply that to present expert testimony, Tremaine and Spence needed to have first-hand knowledge of the particular mobile homes at issue in this case.  *See* (Doc. # 159.)  However, nothing in the *Daubert-Kumho* line of cases "requires an expert to 'visit the scene,' so to speak, in order to offer or support an opinion on a contested technical issue."  *Rankin v. Union Pacific R. Co.*, No. 04-cv-00372-OES-PAC, 2005 WL 6000492, at *4 (D. Colo. Sept. 29, 2005).  Experts may testify "from the reports, diagrams, depositions, or other evidence that has been gathered in a case."  *Id.*  The Tremaine Report suggests that Tremaine and Spence are doing just that.

Third, the Court is not persuaded that Tremaine and Spence's testimony about the cost of remediation is unhelpful because it "ignores the reality that [Plaintiff Shriver] had a different remediation plan in place."  *See* (Doc. # 159.)  The Court agrees with

Defendant City that this argument goes to the weight of the evidence, not its admissibility. See (Doc. # 161.)

The Court therefore DENIES Plaintiffs' Motion to Exclude Defendant's Experts Chris Tremaine and Kelly Spence.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that:

1. Defendant's Motion to Exclude Plaintiffs' Experts (Doc. # 152) as to Stephen Thomas and Craig Shriver is DENIED;

2. Defendant's Motion to Exclude Plaintiffs' Experts (*id.*) as to Ken Essex is GRANTED; and

3. Plaintiffs' Motion to Exclude Defendant's Experts Chris Tremaine and Kelly Spence (Doc. # 159) is DENIED.

DATED: October 31, 2017

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge